FILED
2012 Apr-12  AM 11:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN  DIVISION

| | | |
|---|---|---|
| **MARCUS BERNARD WILLIAMS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action Number** |
| | ) | **1:07-cv-1276-KOB-TMP** |
| **STATE OF ALABAMA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

This action, filed pursuant to 28 U.S.C. § 2254, seeks  habeas corpus relief with respect to Petitioner Marcus Williams' state court conviction and death sentence on a charge of capital murder.

### Procedural History

On February 24, 1999, following a jury trial, Marcus Williams was convicted of capital murder by intentionally causing the death of Melanie Rowell during a rape or attempted rape that occurred on November 6, 1996, in violation of Alabama Code § 13A-5-40 (1975).  The next day, during the penalty phase of the trial, the jury voted 11 to 1 to recommend a sentence of death.  The trial court conducted a formal sentencing hearing on April 6, 1999, and, in accordance with the jury's recommendation, sentenced the Petitioner to death.  Petitioner was represented at trial by attorneys Erskine Funderburg and Tommie Wilson.

The Alabama Court of Criminal Appeals affirmed Petitioner's conviction and death sentence on December 10, 1999. *See Williams v. State*, 795 So. 2d 753 (Ala. Crim. App. 1999). Rehearing was denied on January 28, 2000. The Supreme Court of Alabama subsequently granted Petitioner's application for *certiorari* and, on January 12, 2001, affirmed his conviction and sentence. *See Ex parte Williams*, 795 So. 2d 785 (2001). Rehearing was denied on March 30, 2001. The United States Supreme Court denied *certiorari* review on October 1, 2001. *See Williams v. Alabama*, 534 U.S. 900 (2001). Petitioner was represented by Joe Morgan, III, in the Alabama Court of Criminal Appeals. Petitioner was represented by Joe Morgan, III and Dennis Rushing on petition for writ of *certiorari* to the Alabama Supreme Court. Petitioner was represented by LaJuana Davis on petition for writ of *certiorari* review to the United States Supreme Court.

On September 20, 2002, Petitioner filed a Rule 32 petition. (Tab R. 43). On October 17, 2003, Williams filed an amended Rule 32 petition. In response to a motion by the State, the trial court dismissed the petitions as untimely on January 14, 2004, pursuant to *Davis v. State*, 890 So. 2d 193 (Ala. Crim. App. 2003). (Tab R. 37, p. 9). On March 4, 2004, the Alabama Court of Criminal Appeals reversed the dismissal of the petitions based on *Ex parte Davis*, 890 So. 2d 199 (Ala. 2004), which overruled *Davis v. State.* (Tab R. 37, p. 11). On remand, the trial court summarily dismissed the Rule 32 petition and amended petition on March 12, 2004, finding them time-barred by the two-year limitations period that Rule 32.2(c) established. (Tab R. 37; pp. 24-25); *see* Ala. R. Crim. P. 32.2(c).

2

On August 10, 2004, Petitioner filed his second amended Rule 32 petition. (Tab R. 40). In response to the state's motion to dismiss (Tab. R. 41), the court denied the petition without an evidentiary hearing on December 13, 2004. (Tab R. 59). The Alabama Court of Criminal Appeals affirmed the denial of Rule 32 relief in an unpublished opinion on December 16, 2006. (Tab R. 60). Rehearing was denied on January 12, 2007, and the Alabama Supreme Court denied *certiorari* on June 29, 2007. (Tab R. 61). The present § 2254 petition was filed on July 6, 2007, with the assistance of Leslie Smith.[1]

## The Offense

The evidence presented at the 1999 trial was summarized by the Alabama Court of Criminal Appeals as follows:

> On November 6th, 1996, the defendant had been out with friends, drinking and smoking marijuana. Upon returning home that evening, the defendant's thoughts turned to a young female neighbor of his, Melanie Dawn Rowell, and his desire to have sexual relations with her.
>
> At approximately 1:00 a.m. that night, Williams attempted to enter Rowell's back door, but the door was locked. He then noticed a kitchen window beside the door. He removed the screen from the window and found that the window was not locked. It was through that window that Williams obtained entrance to the apartment.
>
> Williams proceeded through the kitchen to the stairs leading to the upstairs bedroom. Before exiting the kitchen, Williams removed a knife from a set of knives in a holder on a kitchen countertop. Part way up the stairs, knife in hand,

---

[1] Leslie Smith filed a motion to withdraw as attorney of record on February 22, 2008, (Doc. 18), which was granted on February 23, 2008. Morad Fakhimi entered an appearance on November 6, 2007, (Doc. 9), and subsequently filed a motion to withdraw as an attorney of record on July 10, 2008, (Doc. 23), which was granted on August 15, 2008. Stephen Ganter, James Lawley and Matt Schulz entered appearances in 2008, and all remain as attorneys of record (Docs. 24, 25, and 26).

Williams removed his pants. Upon reaching the upstairs area, Williams crossed over a 'baby gate' which protected Rowell's two children, ages 15 months and 2 years, from the stairs. Williams looked into the children's room and found them both asleep.

Williams then entered the room of Melanie Rowell. He climbed in bed on top of her. When he began removing Rowell's clothes, a struggle ensued. Rowell fought Williams and began screaming despite [his] being armed with a knife. Williams placed his hand over her mouth to silence her and once again attempted to remove her clothes. As Rowell continued to struggle, Williams placed his hands around her neck. Eventually Rowell ceased to struggle as Williams continued to strangle her. When she was motionless, Williams proceeded to have sexual intercourse with her for 15 to 20 minutes. Prior to ejaculation, Williams pulled out and ejaculated on Rowell's stomach. There was a small cut inflicted upon Rowell's throat that was determined to be post-mortem. The cause of death was asphyxia due to strangulation.

As he left Rowell's apartment, Williams took her purse. According to his statement, he threw the purse and the knife into a dumpster outside the apartment, although a search of the dumpster the next day by law enforcement failed to find either.

The defendant was subsequently arrested after being identified by the elderly female victim in a subsequent break-in in the Ashville area. Upon being taken into custody for that offense, the defendant gave a statement admitting his involvement in the death of Melanie Rowell.

*Williams v. State*, 795 So. 2d 753, 761-62 (Ala. Crim. App. 1999) (Tab R. 27 at 105).

## The Claims

The § 2254 petition alleges multiple grounds for granting habeas corpus relief. Listed below are the claims asserted by Petitioner.[2]

_____

[2] The claim numbers as listed correspond with the claim numbers in Williams's amended habeas petition. However, some sub-claims that were not assigned a number in the amended habeas petition have been given a claim number because they were addressed separately by the state courts.

4

I.    The State denied Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution by discriminating in the exercise of peremptory strikes.  (Doc. 5, p. 4).

II.   Trial counsel were ineffective during the guilt phase of Petitioner's trial, thereby depriving Petitioner of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  (Doc. 5, p. 8).

    *i.*    Introductory claim - Trial counsel were ineffective due to inadequate compensation.  (Doc. 5, p. 10).

    A.    Trial counsel prejudiced Petitioner before the first witness took the stand by making numerous unreasonable decisions during *voir dire*.  (Doc. 5, p. 11).

        i.    Trial counsel failed to request individual *voir dire*.  (Doc. 5, p. 12).

        ii.   Trial counsel failed to request *voir dire* on racial attitudes.  (Doc. 5, p. 13).

        iii.  Trial counsel failed to object to the prosecution's discriminatory use of its peremptory strikes.  (Doc. 5, p. 16).

        iv.   Trial counsel failed to pursue questioning about the death penalty attitudes of a juror who signaled an extraordinary willingness to impose death.  (Doc. 5,  p. 18).

    B.    Trial counsel prejudiced Petitioner by failing to put before the jury the fact that a hair not matching Petitioner's was found on Ms. Rowell's shoulder during the crime scene investigation.  (Doc. 5,  p. 19)

    C.    Trial counsel rendered ineffective assistance of counsel by not retaining necessary defense experts.  (Doc. 5, p. 22).

        i.    Trial counsel were ineffective for not retaining DNA experts to rebut the prosecution's evidence about the alleged DNA match found on the victim and to test the State's accuracy regarding the unidentified hair found on Rowell. (Doc. 5,  p. 23)

        ii.   Trial counsel failed to retain a forensic medical expert to testify that Rowell's autopsy revealed no signs of rape. (Doc. 5, p. 23).

      iii.    Trial counsel were ineffective for failing to retain an expert to evaluate combined effects of intoxicating substances used by Williams on the day of the crime. (Doc. 5, p. 23).

D.    Trial counsel prejudiced Petitioner by failing to object to improper testimony and physical evidence presented by the State.  (Doc. 5,  p. 24).

      i.    Trial counsel allowed the State to violate Petitioner's right to due process by admitting and commenting on a highly prejudicial knife block set without requiring the State to lay a legally sufficient evidentiary foundation.  (Doc. 5, p. 24).

      ii.    Trial counsel allowed three State witnesses to indulge in rambling narratives in lieu of testimony.  (Doc. 5, p. 26).

      iii.    Trial counsel were ineffective for not objecting to the prosecutor's using leading questions during the trial.  (Doc. 5, p. 27).

E.    Trial counsel prejudiced Petitioner by failing to object to the State's impermissible closing argument, suggesting that Petitioner had a burden to present evidence that someone else committed the crime.  (Doc. 5, p. 28).

F.    Trial counsel prejudiced Petitioner by presenting the jury with inconsistent and damaging theories of defense during closing argument.  (Doc. 5, p. 30).

G.    Trial counsel were ineffective to abandon plea and defense of mental defect or disease.  (Doc. 5, p. 35).

H.    Trial counsel's many errors resulted in a verdict so unreliable as to violate due process and created a reasonable probability that, but for the errors, the result of Petitioner's guilt-phase trial would have been different.  (Doc. 5, p. 37).

III.    Trial counsel were ineffective during the penalty phase of Petitioner's trial, thereby depriving him of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and resulting in the unjust and unconstitutional imposition of the death penalty.  (Doc. 5, p. 38).

A.    Trial counsel's numerous guilt phase errors prejudiced Petitioner in the penalty phase well before the penalty phase had even started.  (Doc. 5, p. 38).

B.      Trial counsel's failure to investigate Petitioner's background prevented them from being able to present a constitutionally adequate mitigation case during the penalty phase and violated Petitioner's right to counsel under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  (Doc. 5, p. 40).

   i.      Trial counsel were ineffective because they failed to collect documentary evidence and hire a mitigation specialist.  (Doc. 5, p. 40).

   ii.     Trial counsel were ineffective for failing to thoroughly investigate Williams's history.  (Doc. 5, pp. 41, 43-51 ).

   iii.    Trial counsel were ineffective for failing to interview Allister Cook.  (Doc. 5, p. 49).

   iv.     Trial counsel were ineffective for failing to adequately interview and prepare the penalty phase witnesses.  (Doc. 5, pp. 57, 59).

   v.      Trial counsel failed to compile Williams's history of abuse and neglect.  (Doc. 5, pp. 53-57, 60).

   vi.     Trial counsel failed to investigate Williams's history of mental illness.  (Doc. 5, pp. 45, 48, 60, 62).

   vii.    Trial counsel failed to show that Williams's background contributed to his committing capital murder.  (Doc. 5, p. 61).

   viii.   Trial counsel failed to present Williams's redeeming characteristics (Doc. 5, pp. 62-63).

IV.   Appellate counsel rendered ineffective assistance in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, thereby depriving Petitioner of a meaningful appeal.  (Doc. 5, p. 65).

V.    Prosecutor denied Petitioner a fair trial and sentencing determination by engaging in a consistent pattern of gross misconduct.  (Doc. 5, p. 67).

   A. Prosecutor made improper comments regarding aggravating circumstances.

   B. Prosecutor made improper comments regarding the evidence presented.

VI.   The court violated Petitioner's constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments by sentencing him in violation of the United States Constitution by relying on a grossly inadequate pre-sentence report to sentence Petitioner.  (Doc. 5, p. 69).

  A.    Alabama's sentencing scheme is unconstitutional.  (Doc. 5, p. 70).

    i.    Judicial imposition of the death sentence denied Petitioner his Sixth Amendment right to a jury trial.  (Doc. 5, p. 71).

    ii.    The aggravating factors were not charged in Petitioner's indictment. (Doc. 5, p. 74).

    iii.    Any finding that aggravating factors outweighed mitigating factors is invalid because such findings were not subject to the most stringent 'beyond a reasonable doubt' standard as required for conviction of criminal offenses.  (Doc. 5, p. 75).

    iv.    The jury's recommendation of a death sentence is invalid.  (Doc. 5, p. 77).

      a.    The jury members were told they only made a recommendation. (Doc. 5, p. 77).

      b.    The verdict is incapable of review as the jury's verdict form failed to specify which aggravating and mitigating factors were found.  (Doc. 5, p. 78).

VII.   It was a violation of Petitioner's constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments not to allow the Defendant to conduct independent DNA testing of all suspects.  (Doc. 5, p. 78).

VIII.   The trial court violated Petitioner's constitutional rights to a fair trial under the Fifth, Sixth, Eighth, and Fourteenth Amendments by allowing DNA evidence.  (Doc. 5, p. 79).

IX.   The trial court violated Petitioner's constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments by limiting cross examination of an expert witness for the State.  (Doc. 5, p. 80).

X.      Inadequate evidence exists to support Petitioner's capital murder conviction. (Doc. 5, p. 82).

XI.     Petitioner's conviction is in violation of his due process rights under the Fourteenth Amendment to the United States Constitution because no particularized intent exists and thus no capital murder. (Doc. 5, p. 84).

XII.    The trial court violated Petitioner's right to a fair trial under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution by denying a motion for verdict of acquittal. (Doc. 5, p. 86).

XIII.   The manner of execution used by the State of Alabama constitutes cruel and unusual punishment. (Doc. 5, p. 87).

XIV.    The trial court violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments by allowing the State to present argument on an aggravating circumstance not charged. (Doc. 5, p. 88).

XV.     The trial court violated Petitioner's constitutional rights to a fair trial and sentencing by permitting overly emotional testimony at the sentencing hearing. (Doc. 5, p. 89).

XVI.    The trial court's charge on voluntary intoxication violated Petitioner's constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. (Doc. 5, p. 90).

XVII.   The trial court violated Petitioner's constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution by refusing to give a manslaughter charge. (Doc. 5, p. 91).

XVIII.  The trial court violated Petitioner's constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments by allowing his coerced statement into evidence. (Doc. 5, p. 95).

XIX.    The trial court violated Petitioner's constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments by charging the jury regarding an aggravating circumstance not indicted. (Doc. 5, p. 100).

XX.     The trial court violated Petitioner's constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments by giving the jury an improper instruction on the meaning of "reasonable doubt." (Doc. 5, p. 104).

XXI.   Petitioner's right to a fair and impartial jury was violated by jurors' failure to truthfully disclose on *voir dire* and the jurors' consideration of extraneous evidence during deliberations.  (Doc. 5, p. 106).

XXII.   The State failed to comply with its discovery obligations under *Brady v. Maryland*. (Doc. 5, p. 107).

XXIII.The cumulative effect of all the above listed errors entitles Petitioner to habeas relief.  (Doc. 5, p. 108).

## The Scope of Federal Habeas Review

Pursuant to 28 U.S.C. § 2254(a) (2006), a federal district court is prohibited from entertaining a petition for writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court" unless the petitioner alleges "he is in custody in violation of the Constitution or laws or treaties of the United States."  In other words, this court's review of habeas claims is limited to federal constitutional questions.  Claims pertaining solely to "an alleged defect in a [state] collateral proceeding" or to a "state's interpretation of its own laws or rules" does not provide a basis for federal habeas corpus relief under § 2254.  *Alston v. Dep't of Corr., Fla.*, 610 F.3d 1318, 1325-26 (11th Cir. 2010) (citations omitted). Accordingly, unless otherwise expressly stated, use of the word "claim" in this opinion presupposes a claim of federal constitutional proportion.

### A.   Exhaustion and Procedural Default

Prior to seeking relief in federal court from a state court conviction and sentence, a habeas petitioner is first required to present his federal claims to the state court by exhausting all of the state's available procedures.  *See* 28 U.S.C. § 2254(b)(1) (2006).  The purpose of

10

this requirement is to ensure that state courts are afforded the first opportunity to correct

federal questions affecting the validity of state court convictions.  The Supreme Court recently

explained:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism.  These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule.

*Martinez v. Ryan*, 2012 WL 912950 at *6 (U.S. March 20, 2012).

As explained by the Eleventh Circuit:

> In general, a federal court may not grant habeas corpus relief to a state prisoner who has not exhausted his available state remedies.  28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . .").  "When the process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction. . . .  The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited.  Federal courts are not forums in which to relitigate state trials."  *Smith v. Newsome*, 876 F.2d 1461, 1463 (11th Cir. 1989) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887 [1983]).

> Exhaustion of state remedies requires that the state prisoner "fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 [1971]) (internal quotation marks omitted).  The Supreme Court has written these words:

> > [T]hat the federal claim must be fairly presented to

11

> the state courts . . . . it is not sufficient merely that the federal habeas applicant has been through the state courts. . . .  Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies.
>
> *Picard*, 404 U.S. at 275.  *See also Duncan*, 513 U.S. at 365 ("Respondent did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment.").
>
> Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.  "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 5-6 (1982) (citations omitted).

*Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) (alterations in original) (parallel citations omitted); *see also Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2009).

Moreover, if a petitioner fails to raise his federal claim to the state court at the time and in the manner dictated by the state's procedural rules, the state court can decide the claim is not entitled to a review on the merits, *i.e.*, "the petitioner will have *procedurally defaulted* on that claim." *Mason*, 605 F.3d at 1119 (emphasis added).  Usually, if the last state court to examine a claim explicitly finds that the claim is defaulted because the petitioner failed to follow state procedural rules, then federal review of the claim is also precluded pursuant to federal procedural default principles. *Judd v.  Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). As the Eleventh Circuit recently stated:

> "The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). The doctrine of procedural default dictates that "[a] state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). However, a state court's rejection of a federal constitutional claim on procedural grounds may only preclude federal review if the state procedural ruling rests upon "adequate and independent" state grounds. *Marek v. Singletary*, 62 F.3d 1295, 1301 (11th Cir. 1995) (citation omitted).

*Ward v. Hall*, 592 F.3d 1144, 1156-57 (11th Cir. 2010).[3]

The Supreme Court defines an "adequate and independent" state court decision as one which "rests on a state law ground that is *independent* of the federal question and *adequate* to support the judgment." *Lee v. Kemna,* 534 U.S. 362, 375 (2002) (quoting *Coleman v. Thompson,* 501 U.S. 722, 729 (1991)); *see also Martinez*, 2012 WL 912950 at

---

[3] "When the last state court rendering judgment affirms without explanation, [a federal habeas court will] presume that it rests on the reasons given in the last reasoned decision." *Mason*, 605 F.3d at 1118 n. 2. As the Supreme Court has observed:

> The problem we face arises, of course, because many formulary orders are not meant to convey *anything* as to the reason for the decision. Attributing a reason is therefore both difficult and artificial. We think that the attribution necessary for federal habeas purposes can be facilitated, and sound results more often assured, by applying the following presumption: Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. If an earlier opinion "fairly appear[s] to rest primarily upon federal law," we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits. . . .

*Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (internal citations omitted).

*6. Whether a state procedural rule is "adequate and independent" as to have a preclusive effect on federal review of a claim "is itself a federal question." *Lee*, 534 U.S. at 375 (quoting *Douglas v. Alabama*, 380 U.S. 415, 422 (1965)).

The Eleventh Circuit has adopted a three-part test to determine if a state court ruling was based on adequate and independent grounds. *See Judd*, 250 F.3d at 1313. First, "the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim." *Judd*, 250 F.3d at 1313. Second, "the state court's decision must rest entirely on state law grounds and not be intertwined with an interpretation of federal law." *Ward*, 592 F.3d at 1156-57 (citing *Judd*, 250 F.3d at 1313). Third, the state procedural rule must be adequate; that is, "firmly established and regularly followed" and not applied "in an arbitrary or unprecedented fashion." *Judd*, 250 F.3d at 1313 (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984)).

Federal deference to a state court's clear finding of procedural default under its own rules is so strong that

> "[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding.  Through its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."  *Harris*, 489 U.S. at 264 n. 10, 109 S. Ct. 1038 (emphasis in original).  *See also Alderman v. Zant*, 22 F.3d 1541, 1549-51 (11th Cir. 1994) (where a Georgia habeas corpus court found that the petitioner's claims were procedurally barred as successive, but also noted that the claims lack merit based on the evidence, "this ruling in the alternative did not have an effect . . . of blurring the clear determination by the [Georgia

14

habeas corpus] court that the allegations was procedurally barred"), *cert. denied*, 513 U.S. 1061, 115 S. Ct. 673, 130 L. Ed. 2d 606 (1994).

*Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (alterations in original).

Of course, situations also arise where the doctrines of procedural default and exhaustion intertwine. For instance, if a petitioner's federal claim is unexhausted, a district court will traditionally dismiss it without prejudice or stay the cause of action to allow the petitioner to first avail himself of his state remedies. *See Rose v. Lundy*, 455 U.S. 509, 519-20 (1982). But "if it is clear from state law that any future attempts at exhaustion [in state court] would be futile" under the state's own procedural rules, a court can simply find that the claim is "procedurally defaulted, even absent a state court determination to that effect." *Bailey*, 172 F.3d at 1305 (citation omitted).

### B.    Exceptions to the Procedural Default Doctrine

In three situations "an otherwise valid state ground will not bar" a federal habeas court from considering a constitutional claim that is procedurally defaulted:

> (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice"; (2) where the state procedural rule was not "'firmly established and regularly followed'"; and (3) where the prisoner had good "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so.

*Edwards v. Carpenter*, 529 U.S. 446, 455 (2000) (Breyer, J., concurring) (internal citations omitted); *see also Coleman*, 501 U.S. at 749-50 ("[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate

15

that failure to consider the federal claim will result in a fundamental miscarriage of justice.")

(citations and internal quotation marks omitted); *Murray v. Carrier*, 477 U.S. 478, 496 (1986)

("[W]here a constitutional violation has probably resulted in the conviction of one who is

actually innocent, a federal habeas court may grant the writ even in the absence of a showing

of cause for the procedural default.").[4]

### 1.    The "Fundamental Miscarriage of Justice" Standard

In a "rare," "extraordinary,"[5] and "narrow class of cases,"[6] a federal court may consider

a procedurally defaulted claim in the absence of a showing of "cause" for the procedural

default if either:  (1) a fundamental miscarriage of justice "has probably resulted in the

conviction of one who is actually innocent," *Smith v. Murray*, 477 U.S. 527, 537-38 (1986)

---

[4] *See also Herrera v. Collins*, 506 U.S. 390, 417 (1993) (assuming, without deciding, "that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of the defendant unconstitutional," but stating that "the threshold showing for such an assumed right would be extraordinarily high");  *Davis v. Terry*, 465 F.3d 1249, 1252 n. 4 (11th Cir. 2006) ("It would be considered a fundamental miscarriage of justice if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

[5] *Schlup*, 513 U.S. at 321 ("To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the '*extraordinary case*,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, th[e Supreme] Court explicitly tied the miscarriage of justice exception to the petitioner's innocence." (emphasis added)).

[6] *McCleskey*, 499 U.S. at  494 ("Federal courts retain the authority to issue the writ of habeas corpus in a further, *narrow class of cases* despite a petitioner's failure to show cause for a procedural default.   These are *extraordinary* instances when a constitutional violation probably has caused the conviction of one innocent of the crime.   We have described this class of cases as implicating a fundamental miscarriage of justice." (emphasis added) (citing *Carrier*, 477 U.S. at 485)).

16

(quoting *Carrier*, 477 U.S. at 496);[7] or (2) the petitioner shows "by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty." *Schlup*, 513 U.S. at 323-27 & n. 44 (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)); *see also, e.g., Smith v. Murray*, 477 U.S. at 537-38. But even when exhaustion and procedural default are not at issue, federal review of a claim is fairly restricted if the state court decided the issue on the merits.

### 2.      The "Firmly Established and Regularly Followed" Standard

The Supreme Court has held that a ruling on procedural grounds will be inadequate to bar federal habeas review if the procedural rule relied upon has not been firmly established and regularly followed. *See Edwards*, 529 U.S. at 450 (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) ("state procedural default is not an 'independent and adequate state ground' barring subsequent federal review unless the state rule was 'firmly established and regularly followed' at the time it was applied"). A federal court must consider whether the procedural rule has been consistently applied in the courts of that state. In *Ford*, the Court held that the petitioner's habeas claims were not barred from federal review because the state court had applied a procedural rule retroactively. *See Ford*, 498 U.S. at 424-25 ("To apply *Sparks* retroactively to bar consideration of a claim not raised between the jurors' selection and oath would therefore apply a rule unannounced at the time of petitioner's trial and consequently inadequate to serve as an independent state ground within the meaning of *James*."). For a procedural ruling to satisfy the firmly established and regularly followed standard, a defendant

---

[7] Specifically, in *Murray v. Carrier,* the Supreme Court observed that, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." 477 U.S. at 496.

must "have been apprised of" the existence of the procedural rule and the manner in which it was applied. *Id*. at 423.

### 3. The "Cause and Prejudice" Standard

"A federal court may still address the merits of a procedurally defaulted claim if the petitioner can show cause for the default and actual prejudice resulting from the alleged constitutional violation." *Ward*, 592 F.3d at 1157 (citing *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977)). This so-called "cause *and* prejudice" standard is clearly framed in the conjunctive; therefore, a petitioner must affirmatively prove both cause and prejudice. *Cf. id.* (emphasis added).

To show "cause," a petitioner must prove that "some objective factor external to the defense impeded counsel's efforts" to raise the claim previously. *Carrier*, 477 U.S. at 488; *see also Amadeo v. Zant*, 486 U.S. 214, 221-22 (1988).

> Objective factors that constitute cause include "'interference by officials'" that makes compliance with the State's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." In addition, constitutionally "[i]neffective assistance of counsel . . . is cause." Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default.

*McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (citations omitted); *see also Martinez*, 2012 WL 912950 at *5 ("Inadequate assistance of counsel at initial-review collateral proceeding may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."); *Coleman*, 501 U.S. at 754 ("Attorney error that constitutes ineffective assistance of counsel is cause . . . ."). Further, "where a constitutional claim is so novel that its legal

basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." *Reed v. Ross*, 468 U.S. 1, 16 (1984).

Once cause is proved, a habeas petitioner must also prove prejudice. Such a showing must go beyond proof "that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992) (per curiam).

## C.    Rules Governing Habeas Corpus Cases Under § 2254

### 1.    28 U.S.C. § 2254(d) and (e)

By enacting the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[8] Congress significantly limited the circumstances under which a habeas petitioner may obtain relief. Indeed, under the AEDPA, a petitioner is only entitled to relief on a federal claim if he shows that "the state court decision was (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States'; or was (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Boyd v. Allen*, 592 F.3d 1274, 1292 (11th Cir. 2010) (quoting 28 U.S.C. § 2254(d)); *see also Miller-El v. Dretke*, 545 U.S. 231 (2005); *Williams v. Taylor*, 529 U.S. 362, 404 (2000). Moreover, "[a] state court's factual findings are presumed correct

---

[8] *See* Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) (codified as amended in scattered sections of 28 U.S.C.).

unless rebutted by the petitioner with clear and convincing evidence." *Boyd*, 592 F.3d at

1293 (citing § 2254(e)(1)).

A state court's adjudication of a claim will be sustained under § 2254(d)(1) unless

it is "contrary to" clearly established Supreme Court precedent or it is an "unreasonable

application" of that law. These are two different inquiries, not to be confused or

conflated, as the Supreme Court explained in *Williams v. Taylor*:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner
> may obtain federal habeas relief with respect to a claim adjudicated on the
> merits in state court.  Under the statute, a federal court may grant a writ of
> habeas corpus if the relevant state-court decision was either (1) "*contrary to*
> . . . clearly established Federal law, as determined by the Supreme Court of
> the United States," or (2) "*involved an unreasonable application of* . . .
> clearly established Federal law, as determined by the Supreme Court of the
> United States."

529 U.S. at 404-05; *see also Alderman v. Terry*, 468 F.3d 775, 790-91 (11th Cir. 2006)

("[T]he 'contrary to' and 'unreasonable application' clauses are interpreted as

independent statutory modes of analysis." (citation omitted)).  Further, the AEDPA limits

the source of "clearly established Federal law . . . to the holdings, as opposed to the dicta,

of the [Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*.

at 412 (internal quotation marks omitted).[9]

A state-court determination can be "contrary to" clearly established Supreme Court

---

[9] *See also Bowles v. Sec'y, Dep't of Corr.*, 608 F.3d 1313, 1316 (11th Cir. 2010)
("[F]ederal law is 'clearly established' only when it is 'embodied in a holding' of the Supreme
Court.  *Dicta* in Supreme Court opinions is not enough.  Nor can anything in a federal court of
appeals decision, even a holding directly on point, clearly establish federal law for § 2254(d)(1)
purposes." (citations omitted)).

precedent in either of two ways:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.  Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Williams v. Taylor*, 529 U.S. at 405 (citation omitted).

Likewise, a state-court determination can be an "unreasonable application"[10] of clearly established Supreme Court precedent in either of two ways:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id*. at 407 (citation omitted).  Whether a particular application of Supreme Court precedent is "unreasonable" turns not on subjective factors, but on whether the application of Supreme Court precedent at issue was "objectively unreasonable."  *See Putman v. Head*, 268 F.3d 1223, 1241-49 (11th Cir. 2001).  It is important to note, however, that the Supreme "Court has held on numerous occasions that it is not an

---

[10] "[W]hen the federal court is faced with a 'run-of-the-mill state-court decision applying the correct legal rule,' the companion 'unreasonable application' provision of § 2254(d)(1) is the proper statutory lens."  *Alderman v. Terry*, 468 F.3d 775, 791 (11th Cir. 2006) (citation omitted).

unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009) (citations and internal quotation marks omitted).  Therefore, the proper inquiry under the AEDPA "is  not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citation omitted).

Finally, "§ 2254(d)(2) regulates federal court review of state court findings of fact; the section limits the availability of relief to 'decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Alderman v. Terry*, 468 F.3d 775, 791 (11th Cir. 2006) (brackets omitted) (quoting § 2254(d)(2)). Commensurate with the deference accorded to a state court's factual findings, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'"  *Ward*, 592 F.3d at 1155-56 (alterations in original) (quoting § 2254(e)(1)).[11]  "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts."  *Bui v. Haley*, 321 F.3d 1304, 1312 (11th Cir. 2003) (citing *Sumner v. Mata*, 449

---

[11] *See also Schriro v. Landrigan*, 550 U.S. at 473-74 ("AEDPA also *requires* federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" (emphasis added) (quoting  § 2254(e)(1))).

U.S. 539, 547 (1981)).[12]

Having explained the scope of this court's authority to review state court decisions, it is now appropriate to examine the federal procedural rules applicable to the controversy presently before the court.

### 2.    Procedural Rules Governing Habeas Corpus Cases Under § 2254

Because "habeas corpus review exists only to review errors of constitutional dimension," a habeas corpus petition must meet the "heightened pleading requirements [of] 28 U.S.C. § 2254 Rule 2(c)." *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (citation

---

[12] And in the unusual instances where the state trial and appellate courts rely on different legal theories in denying a petitioner's claim on the merits, both holdings are entitled to AEDPA deference. *See Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 752 (11th Cir. 2010). As the Eleventh Circuit explained in the context of an ineffective assistance of counsel claim:

> The state collateral trial court denied this claim based on *Strickland*'s performance element and did not mention the prejudice element. *See Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."). The court determined that: "[Allen] did not give counsel any theory of innocence to investigate prior to the sentencing phase. Thereafter, the theory was put forward as a possibility, not as fact. Under those circumstances, Counsel cannot be deemed ineffective for failure to investigate the Defendant's subsequently disclosed theory of innocence." *Florida v. Allen*, No. 92-30056-CF, slip op. at 44. The Florida Supreme Court denied this claim based on *Strickland*'s prejudice element. *See Allen II*, 854 So.2d at 1258 n. 5 (holding that this claim "lacks merit because Allen was not prejudiced by counsel's performance in the guilt phase"). *Under AEDPA we owe deference to both of those decisions*. *See Hammond*, 586 F.3d at 1331; *see also Cone*, 129 S.Ct. at 1784.

*Id.* (emphasis added); *see also Hammond v. Hall*, 586 F.3d 1289, 1330-32 (11th Cir. 2009) ("The Georgia courts, considered collectively, gave two consistent reasons for deciding against this claim. Each reason is due deference.").

omitted).  "[T]he petition must 'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground.'"  *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (quoting Rule 2(c) of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254).  Accordingly, a "general reference to the transcripts, case records and briefs on appeal patently fails to comply with Rule 2(c)." *Phillips v. Dormire*, 2006 WL 744387 at *1 (E.D. Mo. Mar. 20, 2006) (citing *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990)); *see also Grant v. Georgia*, 358 F.2d 742 (5th Cir. 1966) (per curiam) ("The application fails to allege any facts upon which the trial court could find a deprivation of a constitutional right, or any other basis for collateral attack.  Mere conclusionary allegations will not suffice." (citation omitted)).[13]

The burden of proof is on the habeas petitioner "to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation." *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008).[14]  That is, to carry his  burden, "a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified.  These facts must consist of sufficient detail to

---

[13]  The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[14]  *See also Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) ("If there has been no evidentiary hearing in state court on an issue raised on habeas corpus, one is required if the petitioner alleges facts which, if true, would entitle him to relief."); *Hill v. Linahan*, 697 F.2d 1032, 1036 (11th Cir. 1983) ("The burden of proof in a habeas proceeding is always on the petitioner.").

enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." *Adams*, 897 F.2d at 334; *see also Beard v. Clarke*, 18 Fed. Appx. 530, 531 (9th Cir. 2001) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief. . . . Notice pleading is insufficient; the petitioner must state sufficient facts." (citations omitted)).[15]  Therefore, the mere assertion of a ground for relief, without more factual detail, does not satisfy a petitioner's burden of proof or the requirements of 28 U.S.C. § 2254(e)(2) and Rule 2(c) of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254.  *See Smith v. Wainwright*, 777 F.2d 609, 616 (11th Cir. 1985) (holding that a general allegation of ineffective assistance of counsel is insufficient; a petition must allege specific errors in counsel's performance and facts showing prejudice). The Supreme Court has stated that "[a] prime purpose of Rule 2(c)'s demand that petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to 'show cause why the writ should not be granted,' § 2243, or the petition instead should be summarily dismissed without ordering a responsive pleading." *Mayle*, 545 U.S. at 645 (citing Habeas Corpus Rule 4 pp. 2569-70).

---

[15] *See also* Advisory Committee Note to Rule 4 of the Rules Governing § 2254 Cases in the U.S. District Courts, 28 U.S.C. foll. § 2254 ("[N]otice pleading is not sufficient [in habeas proceedings], for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted) (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

## INTRODUCTION TO THE DISCUSSION OF THE CLAIMS

With these elemental precepts in mind, the court now turns to Petitioner's claims. Claim I is a substantive claim of race discrimination in jury selection, followed by Claim II (A-G), which asserts various sub-claims of ineffective assistance of counsel during the guilt phase of the trial. Claim III (A and B) asserts ineffective assistance of trial counsel at the penalty phase, and Claim IV alleges ineffective assistance of appellate counsel. In addition to these claims, Petitioner also alleges nineteen other claims (Claims V through XXIII) of substantive violations of his constitutional rights. Each of these claims is addressed, first, with respect to whether it is procedurally defaulted, and then whether any merits resolution of the claim by the state courts is entitled to deference in accordance with 28 U.S.C. § 2254(d).

### Discussion

**CLAIM I.    THE STATE DENIED MR. WILLIAMS' RIGHTS UNDER THE FIFTH, SIXTH, EIGHT, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY DISCRIMINATING IN THE EXERCISE OF PEREMPTORY STRIKES.**

In his amended habeas petition, Williams alleges that the State denied him his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution by discriminating in the exercise of peremptory strikes. (Doc. 5, p. 4). Specifically, Williams asserts that he established a *prima facie* claim under *Batson v. Kentucky*, 476 U.S. 79 (1986), because the State's exercise of peremptory strikes demonstrated a clear pattern of discrimination when two of the three African American venire members were excluded

26

from the jury without being questioned by the prosecution.  The third African American was selected to serve on the jury.[16]  *Id*. p. 8.  Williams did not raise this claim at trial, on direct appeal or in his second amended Rule 32 petition, but instead raised it for the first time in his amended habeas petition.

The State responds by asserting that this claim is procedurally defaulted because Williams did not fairly present it as a federal claim in state court.  (Doc. 14, pp. 3-4).  Further, Respondent contends that dismissal to allow Williams to raise the claim in state court would be futile because (1) a Rule 32 petition would be precluded by the statute of limitations, pursuant to Rule 32.2(c), Ala. R. Crim. P.; (2) a Rule 32 petition would be precluded by the bar on successive petitions, pursuant to Rule 32.2(b), Ala. R. Crim. P.; and, (3) the claim would be procedurally barred because it could have been raised at trial and on appeal, pursuant to Rule 32.2(a)(3) and (5), Ala. R. Crim. P.  (Answer p. 4).

A claim is procedurally barred from federal review when it was not raised in state court and cannot now be raised in state court because "any attempt at exhaustion [in state court] would be futile" under the state's own procedural rules.  *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (citing *Picard v. Connor,* 404 U.S. 270, 276 (1971)) and *Snowden v. Singletary*, 135 F.3d 732, 737(11th Cir. 1998)).

In *Collier v. Jones*, 910 F.2d 770, 772 (11th Cir. 1990), the Petitioner filed a habeas petition appealing his conviction, and alleged as grounds for relief, *inter alia*, that his rights

---

[16] According to Williams, a fourth African American venire member was validly excused for cause.  (Doc. 5, p. 6).

were violated because of racial discrimination in the jury venire selection process.  The

Eleventh Circuit explained:

> We find, therefore, that these claims are presented to the federal
> courts in a posture analogous to claims that have never been
> presented to a state court, and which have become procedurally
> barred under state rules.  Under such circumstances this circuit
> has held that *Harris*, 489 U.S. 255, 262 (1989) does not preclude
> a federal court from finding the claims procedurally barred.  *See
> Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1989)(Holding,
> post-*Harris*, that where dismissal to allow exhaustion of un-
> exhausted claims would be futile due to state procedural bar,
> claims are considered procedurally barred in federal court.).
> Following this precedent, we hold Collier's two claims based on
> perjured testimony and racial discrimination in jury venire
> selection are procedurally defaulted.

*Collier*, 910 F.2d at 773.

As in *Collier*, Williams's claim that his constitutional rights were violated by the

State's discriminatory use of peremptory strikes during *voir dire* is procedurally defaulted

from federal review because Williams failed to present this claim in state court, and those

claims have become procedurally barred under state procedural rules.

To counter procedural default, Petitioner alleges ineffective assistance of trial counsel

(Claim II.A.iii - trial counsel failed to file a *Batson* motion to prosecution's discriminatory

peremptory strikes) and appellate counsel (Claim IV) as cause for why this claim was not

raised at trial and on appeal.  (Doc. 21, p. 32).  These arguments are unavailing, however.

In *Murray v. Carrier*, 477 U.S. 478 (1986), the petitioner in a habeas action attempted to

show cause for a procedural default by establishing that his attorney inadvertently failed to

raise the claim on appeal.  In rejecting that argument, the Court explained:

> The mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783(1982).  The question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made.  So long as defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), there is no inequity in requiring him to bear the risk of attorney error that results in procedural default.

*Id*. 478-479.

The Supreme Court also has noted that to constitute "cause" to excuse a procedural default, counsel's ineffectiveness in failing to raise properly the claim in state court "must have been so ineffective as to violate the Federal Constitution."  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  Thus, to serve as "cause," the errors of counsel must not only rise to the level of satisfying the *Strickland* test, but the alleged ineffectiveness must also have been raised and exhausted in state court before it is asserted in the habeas action.  Alleged ineffectiveness that is itself procedurally defaulted cannot be used as "cause" to excuse procedural default.  *Id.* at 452.

Both Claims II.A.iii and IV as to ineffective counsel are procedurally defaulted as is discussed *infra*, and therefore, cannot serve as cause to excuse the procedural default of the *Batson* challenge.

Even assuming no procedural bar, the facts presented fall short of the burden required

to prove a *prima facie Batson* claim.  In *Batson v. Kentucky*, 476 U.S. 79 (1986), the United States Supreme court discussed the relevant factors a defendant could submit in attempting to establish a *prima facie* case of racial discrimination in jury selection.  The Court stated:

> [A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial.  To establish such a case, the defendant first must show that he is a member of a cognizable racial group, *Castaneda v. Partida*, *supra*, 430 U.S. at 494, 97 S.Ct. at 1280, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Avery v. Georgia*, 345 U.S. at 562, 73 S. Ct. at 89. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.
>
> In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances.  For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising *voir dire,* will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

*Batson*, 476 U.S. 79, 96-97 (1986).

The burden of proof rests on the habeas petitioner to establish a factual basis for the relief he seeks.  *Hill v. Linahan*, 697 F.2d 1032, 1034 (11th Cir. 1983); *Corn v. Zant*, 708 F.2d 549, *reh'g denied*, 714 F.2d 159 (11th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984).

The only facts Petitioner offered to establish a factual basis for this claim are that two of the three African Americans that were qualified for jury service were excluded. (Doc. 5, pp. 14, 16). While this "pattern" of strikes against African American jurors might give rise to an inference of discriminatory purpose, Petitioner has identified no other relevant circumstance that would be material to whether the Petitioner established a *prima facie* case of discrimination against African American jurors. These facts, without more, are simply insufficient to establish a pattern of discrimination under *Batson*. Additionally, after careful examination of *voir dire*, this court finds that the prosecution's questions and statements were fair. This claim is due to be denied both as procedurally defaulted and as without merit.

## THE INEFFECTIVE ASSISTANCE CLAIMS

The next category of claims raised by Petitioner asserts forms of ineffective assistance of counsel during the guilt and penalty phase of trial, and one alleging ineffective assistance of appellate counsel. In general terms, these claims allege the following:

> **Claim II.** Williams received ineffective assistance of counsel during the guilt phase of his trial, in violation of his rights guaranteed by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

> **Claim III.** Williams received ineffective assistance of counsel during the penalty phase of trial in violation of his rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

> **Claim IV.** Williams received ineffective assistance of appellate counsel in violation of his rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

These claims are subject to common basic principles applicable to all claims of ineffective

assistance of counsel.  Before the court begins its discussion of Claims II, III, and IV, a prefatory explanation of the general constitutional standard applicable to ineffective assistance of counsel claims is helpful.

### The Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged standard, under the Sixth Amendment, for judging the effectiveness of attorneys who represent criminal defendants at trial or on direct appeal.[17]

---

[17] Ineffective assistance of counsel claims are specifically limited to the performance of attorneys who represented a defendant at trial or on direct appeal from the conviction.  *See* 28 U.S.C. § 2254(i) (2006) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").  The Supreme Court had previously stated in *Coleman v. Thompson*: "There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*, 501 U.S. 722, 752 (1991) (citations omitted).

However, the Supreme Court's recent decision in *Martinez* creates a narrow exception to the Court's holding in *Coleman*. The *Martinez* Court wrote:

> To protect prisoners with a potentially legitimate claim of ineffective assistance of trial counsel, it is necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default. This opinion qualifies *Coleman* by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.

2012 WL 912950 at *5.

The *Martinez* court explained the reason behind announcing this new rule:

> When an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim.  This Court on direct review of the state proceeding could not consider or adjudicate the claim. See, *e.g.*, *Fox Film Corp. v. Muller*, 296 U.S. 207, 56 S. Ct. 183, 80 L .Ed. 158 (1935);

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. *First*, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Second*, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id*. at 687 (emphasis added); *see also Reed v. Sec'y, Fla. Dep't of Corr.*, 593 F.3d 1217, 1239-41 (11th Cir. 2010). Stated differently, "[a] petitioner must show that counsel's

---

> *Murdock v. Memphis*, 20 Wall. 590, 22 L. Ed. 429 (1875); cf. *Coleman, supra*, at 730–731, 111 S. Ct. 2546. And if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims.
>
> The same is not true when counsel errs in other kinds of postconviction proceedings. While counsel's errors in these proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding. *See*, e.g., *Coleman, supra*, at 756, 111 S. Ct. 2546.

*Id*. at *7.

The Court also acknowledged that while § 2254(i) provides the ineffectiveness of counsel during post-conviction proceedings shall not provide a ground for relief, "'[c]ause'. . .is not synonymous with 'a ground for relief.' A finding of cause and prejudice does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." *Id*. at *11.

The Supreme Court did not reach the question, however, of whether there was a constitutional right to post-conviction counsel. *Id*. at *5 ("This is not the case, however, to resolve whether that exception exists as a constitutional matter. The precise question here is whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding.").

33

performance was deficient, and that the deficiency prejudiced his defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citation omitted).

Because *Strickland*'s two-part test is clearly framed in the conjunctive, a petitioner bears the burden of proving *both* "deficient performance" *and* "prejudice" by "a preponderance of competent evidence." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).[18]  Thus, a court is not required to address both aspects of the *Strickland* standard if a habeas petitioner is unable to establish one prong.  *See, e.g., Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

Further, when assessing ineffective assistance of counsel claims

[I]t is important to keep in mind that "in addition to the deference to counsel's performance mandated by *Strickland*, the AEDPA adds another layer of deference—this one to a State court's decision—when we are considering whether to grant federal habeas relief from a State court's decision."  Thus, [a petitioner] not only has to satisfy the elements of the *Strickland* standard, but he must also show that the State "court applied *Strickland* to the facts of his case in an *objectively unreasonable manner*."

---

[18] *See also Kokal v. Sec'y, Dep't of Corr.*, 623 F.3d 1331, 1344 (11th Cir. 2010) ("[A] petitioner's failure to show either deficient performance or prejudice is fatal to a *Strickland* claim . . . ." (citation omitted)); *Williams v. Allen*, 598 F.3d at 789 ("The petitioner bears the burden of proof on the performance prong as well as the prejudice prong of a Strickland claim, and both prongs must be proved to prevail." (citation omitted)).

*Williams v. Allen*, 598 F.3d at 789 (brackets in original omitted) (citations omitted); *see also Porter v. McCollum*, 130 S. Ct. 447, 452 (2009) (per curiam).

## A.   The Performance Prong

When reviewing whether defense counsel's performance was deficient, "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby v. Van Hook*, 130 S. Ct. 13, 17 (2009*)* (per curiam) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000)).   As such, a habeas petitioner must show that counsel's representation fell "'below an objective standard of reasonableness' in light of 'prevailing professional norms'" to establish deficient performance.   *Id.* at 16 (quoting *Strickland*, 466 U.S. at 687-88); *see also Williams v. Taylor*, 529 U.S. at 390-91; *Johnson v. Upton*, 615 F.3d 1318, 1330 (11th Cir. 2010) ("[T]he governing standard is objectively reasonable attorney conduct under prevailing professional norms . . . .").

*Strickland* instructs lower federal courts to be "highly deferential" while engaging in such assessments:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.   A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, *a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance*; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action

might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689 (emphasis added) (citations and quotation marks omitted); *see also Whisenhant v. Allen*, 556 F.3d 1198, 1204 (11th Cir. 2009) (per curiam) ("To counteract the distorting effects of hindsight, the defendant bears the burden of overcoming a strong presumption that the challenged action is sound trial strategy." (citation omitted)).  A habeas petitioner "must establish that no competent counsel would have taken the action that his counsel did take" to overcome the presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *Chandler*, 218 F.3d at 1315 (citation omitted); *see also Stewart v. Sec'y, Dep't of Corr.*, 476 F.3d 1193, 1209 (11th Cir. 2007).

In addition, the reasonableness of counsel's performance is judged from the perspective of the attorney, at the time of the alleged error, and in light of all the circumstances.  *See*, *e.g.*, *Newland v. Hall*, 527 F.3d 1162, 1184 (11th Cir. 2008) ("We review counsel's performance 'from counsel's perspective at the time,' to avoid 'the distorting effects of hindsight.'" (quoting *Strickland*, 466 U.S. at 689)); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) (giving lawyers "the benefit of the doubt for 'heat of the battle' tactical decisions").  As the Eleventh Circuit has stated:

> Under this standard, there are no "absolute rules" dictating what reasonable performance is or what line of defense must be asserted. [*Chandler*, 218 F.3d] at 1317.  Indeed, as we have recognized, "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).

36

*Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005).   "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless [petitioner shows] that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Thus, an attorney's performance will be deemed deficient only if it is objectively unreasonable, *i.e.*, it falls below the wide range of competence demanded of attorneys in criminal cases, and petitioner shows "that no competent attorney would have taken the action that [the petitioner's] counsel did take." *Williams v. Allen*, 598 F.3d at 790 (citation and quotation marks omitted); *see also Stone v. Dugger*, 837 F.2d 1477, 1479 (11th Cir. 1988) ("[E]ven in capital felony cases defendants have no legal right to the very best counsel.").

### B.      The Prejudice Prong

Even when a petitioner proves that counsel performed in a deficient manner, a habeas petitioner must still establish that he or she suffered prejudice as a result of that deficiency. To satisfy this standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Williams v. Taylor*, 529 U.S. at 391.  The Eleventh Circuit has stated: "[t]he prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable." *Rhode v. Hall*, 582 F.3d

1273, 1280 (11th Cir. 2009) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).  And "[w]hen evaluating this probability, 'a court . . . must consider the totality of the evidence before the judge or jury.'"  *Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002) (citation omitted).

Further, a habeas petitioner "must affirmatively prove prejudice, because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.'"  *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (quoting *Strickland*, 466 U.S. at 693).  The fact that counsel's "error had some conceivable effect on the outcome of the proceeding" is insufficient to show prejudice.  *Strickland*, 466 U.S. at 693; *see also Porter*, 130 S. Ct. at 455-56.  Instead, a petitioner must present competent evidence proving "that trial counsel's deficient performance deprived him of 'a trial whose result is reliable.'"  *Brown v. Jones*, 255 F.3d 1272, 1278 (11th Cir. 2001) (citation omitted).  Therefore, "when a petitioner challenges a death sentence, 'the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'"  *Stewart*, 476 F.3d at 1209 (quoting *Strickland*, 466 U.S. at 695).

## C.    Deference to the State Court's Findings

Section 2254  applies in addition to the underlying substantive law. The Supreme Court recently reminded lower federal courts of the highly deferential standard applicable to review of a state court's denial of an ineffective assistance of counsel claim: "Establishing

that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly so.'"  *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citations omitted).  As a result, this "doubly," "highly deferential" standard transforms the *Strickland* inquiry from "whether  counsel's actions were reasonable" into "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* (citations omitted).  In other words, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Id.* at 785.

When the deference due under § 2254 combines with the *Strickland* standard for judging the performance of counsel, the result is double deference.  *Harrington*, 131 S. Ct. at 788.  "Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."  *Johnson v. Secretary*, 643 F.3d 907, 911 (11th Cir. 2011) (finding such a rare case).

Finally, "[i]neffectiveness of counsel is a mixed question of fact and law." *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001) (citation omitted).  "State court findings of historical facts made in the course of evaluating an ineffectiveness claim are subject to a presumption of correctness under 28 U.S.C. § 2254(d)." *Thompson*, 255 F.3d at 1297.

## CLAIM II .   TRIAL COUNSEL WERE INEFFECTIVE DURING THE GUILT PHASE OF MR. WILLIAMS' TRIAL, THEREBY DEPRIVING MR. WILLIAMS OF HIS RIGHTS

UNDER THE FOURTH, FIFTH, SIXTH, EIGHTH, AND FOURTEENTH
AMENDMENTS TO THE UNITED STATES CONSTITUTION

### i. Introductory Claim Regarding Inadequate Defense Compensation

As part of the introduction to his ineffective assistance of counsel claims, Petitioner first contends that Alabama provides inadequate funding and compensation for capital defense attorneys and experts. (Doc. 5, p. 10). This claim is the same claim raised in his Rule 32 petition. (Tab R. 40, p. 199). The Rule 32 court denied this claim because, in *Bui v. State*, 717 So. 2d 6, 15 (Ala. Crim. App. 1997), the Alabama Court of Criminal Appeals rejected the "notion the Alabama statutory scheme of compensating attorneys in capital cases, in and of itself, denies a defendant effective representation." (Tab R. 59, pp. 234-35).

The State asserts that this claim is procedurally defaulted because it was raised in the second amended Rule 32 petition, but then abandoned on appeal. (Doc. 14, p. 6). Indeed, Williams did not present this claim on appeal from the denial of his second amended Rule 32 petition. (*See* Tab R. 40, p. 200.) A federal habeas petitioner is not entitled to relief unless "the applicant has exhausted the remedies available in the court of the State." 28 U.S.C. § 2254(b)(1)(A). Because he did not present this claim on appeal from the denial of the Rule 32 petition, Petitioner failed to exhaust his claim in state court. The one-year limitation for filing Rule 32 petitions defined by Rule 32.2(c) Ala. R. Crim. P., and the prohibition against successive petitions found at Rule 32.2(b) Ala. R. Crim. P., now preclude him from seeking to file a new petition to present this argument to the state courts. *See Collier v. Jones*, 910 F.2d 770 (11th Cir. 1990). For Petitioner to return to state court to seek

exhaustion of this claim would be futile because these two rules preclude its consideration. Accordingly, this court is precluded from federal review of the claim as it is procedurally defaulted, unless Petitioner can show "cause and prejudice" or a "fundamental miscarriage of justice," and he has shown neither.

Alternatively, this court has previously rejected ineffective assistance challenges to convictions grounded on the assertion that inadequate compensation to counsel causes ineffectiveness. Inadequate funding of counsel appointed to represent capital defendants, as unfair as it might be to the attorneys, does not in itself amount to ineffective assistance of counsel *unless* it contributes to actual errors or shortcomings in the performance of counsel. The *Strickland* standard requires an analysis of specific errors or shortcomings by counsel.

> As the Court in *Strickland* wrote:
>
> A convicted defendant making a claim of ineffective assistance must identify *the acts or omissions* of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, *the identified acts or omissions* were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.

*Id.* at 690 (emphasis added).

Thus, the allegation that compensation caps hindered the ability of counsel to represent a capital defendant has meaning only by reference to specific errors or shortcomings purportedly caused by inadequate defense funding. Only by examining specific errors or shortcomings can the court determine, first, whether it was an error outside the

41

broad scope of competence expected of counsel, and second, whether the error caused real prejudice to the defendant. Consequently, as a claim of ineffectiveness divorced from analysis of particular errors or omissions, the assertion that the State of Alabama provides inadequate compensation for capital defense counsel and experts fails to state a basis for *habeas* relief, and it is due to be denied.

### II.A.   Trial counsel prejudiced petitioner by making unreasonable decisions during voir dire.

#### II.A.i. Trial counsel failed to request individual *voir dire* on juror biases related to intoxication

On page 12 of his amended habeas petition, Williams asserts that trial counsel was ineffective for failing to individually question jurors on their potential biases related to intoxication. This claim is identical to its Rule 32 predecessor, with two exceptions. The two exceptions, italicized below, are not contained in the second amended Rule 32 petition:

> Trial counsel were ineffective for failing to make a motion for individual *voir dire* to examine the prospective jurors' views about intoxication. *As the evidence at trial demonstrated, on the night of the crime, Mr. Williams had been out with friends, drinking and smoking marijuana. As a result, Mr. Williams'* intoxication was prominent in trial counsel's theory of defense and was presented to the jury as a basis for negating Mr. Williams' intent. (R. 326; 529-30). The nature of the intoxication defense called for individual *voir dire*. The prevalence of alcohol consumption and abuse in our culture leads many people to have deep convictions, accurate or not, about the effects of alcohol and other drugs and the relationship between intoxication and criminal culpability. Such deep convictions are a form of bias, and courts have recognized that a juror "may be reluctant to admit any bias in front of his peers." *Williams v. Griswald*, 743 F.2d 1533, 1540 n.14 (11th Cir. 1984). *In a post-trial interview, Juror (A.M.) said:* "*That during the trial, Mr. Williams' defense attorneys did not deny their client's guilt and even used the words to the effect of 'we know he committed this crime but he was not in his right mind*

*due to alcohol and drug use.' My personal beliefs are that drug and alcohol do not excuse an individual's actions." Juror A.M. further stated in a post-trial interview, "I am a strong proponent of the death penalty and I will always vote for the death penalty if it is an option available to me."*

The record in this case contains a textbook example of why individual *voir dire* is necessary to determine the rationale underlying prospective jurors' thoughts and opinions. During *voir dire*, defense counsel Erskine Funderburg asked one panel, "[t]he three of you that indicated you wanted to change part of the system, what part of the system is it that you think should be changed?" (R. 138). There was no response. As courts have recognized, this is not surprising. *Williams*, 743 F.2d at 1540 n. 14. Individual *voir dire* would have allowed trial counsel to find out not only what parts of "the system" a few prospective jurors thought needed changing, but also what other relevant attitudes might have affected the prospective jurors' decision-making. Similar biases regarding intoxication also could have been explored and used in striking the jury.

Trial counsel's unreasonable decision not to request individual *voir dire* on intoxication prejudiced Mr. Williams by depriving him of his right to make challenges for cause and informed peremptory challenges during jury selection. This deprivation violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution.

(Doc. 5, pp. 12-13) (Tab R. 41, pp. 16-17).

Again the State invokes the procedural default doctrine. Respondent's answer asserts that the Petitioner's claim is procedurally defaulted because the Rule 32 court held that it failed to comply with the specificity and full factual pleading requirement of Rule 32.6(b), which is an independent and adequate state procedural rule. (Doc. 14, p. 9). Further, Respondent argues that the factual allegation regarding Juror A.M. is undocumented, and was not presented on direct appeal or in the second amended Rule 32 petition and, therefore,

is not properly before this court for review. *Id*.

The Eleventh Circuit recently held in *Borden v. Allen*, 646 F. 3d 785, 816 (11th Cir. 2011) that

> an Alabama court's consideration of the sufficiency of the pleadings concerning a federal constitutional claim contained in an Rule 32 petition necessarily entails a determination on the merits of the underlying claim; we cannot construe such a rule to be a state procedural bar that would preclude our review. We therefore must review the merits determination of the Court of Criminal Appeals under the deferential standards set forth in AEDPA . . . .

The court further stated that, "[e]ven if adjudications under Rule 32.6(b) were not categorically 'on the merits,'" review of the merits of a habeas petitioner's claim by a federal court is not foreclosed where the state court demonstrate that it did consider the merits of the petitioner's claim during the Rule 32 proceedings. *Id*. at 813.

The Rule 32 court in Williams' case held that this particular claim failed to satisfy the pleading requirements of Ala. R. Crim. P. 32.6(b). Because the Eleventh Circuit explicitly held in *Borden* that such rulings constitute decisions on the merits and, therefore, preclude a finding of procedural default, this courts finds that this particular claim of Williams is not procedurally defaulted.

Turning to the merits of Williams' claim, the court first notes that the state court determined that Williams' claim did not meet the specificity and full factual pleading requirements under Ala. R. Crim. P. Rule 32.6(b). Although this court has already determined that this claim has not been procedurally defaulted, the Rule 32 court's ruling on these grounds is significant. The Eleventh Circuit court stated in *Powell v. Allen*,

44

> [The] AEDPA limits our review to whether the state court's determination that [the petitioner] failed to plead sufficient facts in his Rule 32 petition to support a claim of ineffective assistance of counsel was contrary to or an unreasonable application of Supreme Court precedent. Thus, *we look only to the allegations in [the petitioner's] Rule 32 petition and whether those allegations sufficiently state a claim for ineffective assistance of counsel.*

602 F.3d 1263, 1273 (11th Cir. 2010) (footnote omitted)(emphasis added). Therefore, this court will only examine this claim as it was raised in Williams' Rule 32 petition, and whether the state court unreasonably applied Supreme Court precedent in holding that Williams did not sufficiently allege a claim for ineffective assistance of counsel.[19]

In doing so, the court turns to the Rule 32 court's finding. In reaching the conclusion that Petitioner had not adequately pled his claim under the standard required by Rule 32.6(b), the Rule 32 court explained:

> In Part V.A.(I), paragraphs 28-29 on pages 16-17 of Williams' second amended Rule 32 petition, he alleges that his trial counsel were ineffective for "failing to make a motion for individual voir dire to examine the prospective juror's views about intoxication and race." (Second amended petition at p. 16). The Court notes that Williams does not identify any specific juror in Part V.A.(i) that had a particular bias about intoxication or race - he merely contends his trial counsel were ineffective for not making the inquiry.

> In Dobyne v. State, 805 So. 2d 733 (Ala. Crim. App. 2000), the Alabama Court of Criminal Appeals addressed a similar issue. In his Rule 32 petition:

> > Dobyne contend[ed] that his trial counsel failed to conduct a "sufficiently thorough" voir dire of potential jurors on issues[.] . . . Specifically, Dobyne argues that his trial counsel was

---

[19] The court will apply this standard to all similar ineffective assistance of counsel claims and sub-claims that the state courts dismissed on insufficient pleading grounds pursuant to Rule 32.6(b).

ineffective for not conducting an adequate voir dire to inquire
into the prospective jurors' possible racial bias.

Id. at 751.  In affirming the trial court's denial of postconviction relief, the
Court of Criminal Appeals held that:

> Dobyne offers no support for his contention, other that a
> statement that he was entitled to such an inquiry.  While it may
> be true that Dobyne was "entitled" to question the prospective
> jurors about their biases, that fact alone does not establish that
> counsel was ineffective for failing to conduct an inquiry.

Id.  Just like Dobyne, Williams merely makes a general allegation that his trial
counsel were ineffective for not making the inquiry.  Williams fails, however,
to plead any specific facts in his second amended Rule 32 petition that could
have been revealed if trial counsel had requested and received permission to
conduct individual voir dire.  The Court finds that Part V.A.(i) fails to meet the
specificity and full factual pleading requirements of Rule 32.6(b); therefore,
it is summarily dismissed.[20]

(Tab R-59 pp. 235-36).

This court finds that the state court's ruling was reasonable under *Strickland*.

Although Williams's intoxication on the night of the offense was a significant part of the

defense theory, without identifying specifically what facts trial counsel would have

discovered through individual *voir dire* and how those undiscovered facts prejudiced

Williams, the Petitioner is unable to satisfy his burden to prove that trial counsel was

ineffective.  The only facts Petitioner asserts was that individual *voir dire* was needed

---

[20] The court noted that on direct appeal, the Alabama Court of Criminal Appeals found
that "[t]he record does not reflect that the sentence of death was imposed as a result of influence
of passion, prejudice, or any other arbitrary factor." *Williams v. State*, 795 So. 2d 753, 785 (Ala.
Crim. App. 1999).

because a panel of three jurors did not respond when defense counsel asked, "what part of the system is it that you think should be changed?" (Doc. 5, p. 13). However, no facts indicate that the answer to that question posed individually would have elicited any information regarding juror bias, or that Williams was prejudiced by not having the question answered. Petitioner simply makes a factual assertion that is void of any meaningful nexus to a lack of effective assistance of trial counsel.

Additionally, the trial court *did* instruct the jury on the defense of voluntary intoxication. Regardless of whether jurors had personal feelings about intoxication, the jury is obligated to decide the facts and apply the law accordingly. Nothing in the record indicates that the jury did not properly undertake its duty and follow the trial court's instructions. This claim is due to be denied.

### II.A.ii.   Trial counsel failed to request individual voir dire on racial attitudes

Williams alleges that his trial counsel was ineffective for failing to request individual *voir dire* on racial attitudes. Petitioner asserted this same claim at paragraphs 31-34 of his second amended Rule 32 petition in state court, with the exception that the factual allegations italicized below regarding statistics based on the race of the victim were omitted. (Tab R. 41, pp. 202-204). The claim states the following:

> Mr. Williams, who is African-American, was accused — and ultimately convicted of murdering Melanie Rowell, who was Caucasian, while raping or attempting to rape her. Especially in an interracial crime, adequate voir dire is essential to "unearth[ing] such potential prejudice in the jury pool" which could infringe on a defendant's right to a fair and impartial jury. *Jordan v.*

47

*Lippman*, 763 F.2d 1265, 1275 (11th Cir. 1985). The United States Supreme Court has held that "a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias." *Turner v. Murray*, 476 U.S. 28, 36-37 (1986); *Ham v. South Carolina*, 409 U.S. 524 (1973); *Rosales-Lopez v. United States*, 451 U.S.182 (1973). "Once rhetoric is put aside, it is plain that there is some risk of racial prejudice influencing a jury whenever there is a crime involving interracial violence . . . ." *Turner, supra*, 476 U.S. at 36 n.8. Because of the wide discretion entrusted to a capital sentencing jury, there is "unique opportunity for racial prejudice to operate but remain undetected." *Id.* at 35.

*In Alabama, a death sentence is much more likely to result if the victim is white than if the victim is black. Nearly 75% of the people currently under sentence of death have been sentenced for crimes involving white victims although nearly 65% of all homicide victims in Alabama are black. Despite these gross disparities based on the race of the victim in Alabama and growing statistical evidence about the problem of racially biased imposition of the death penalty, Mr. Williams' trial counsel failed to challenge the racially skewed pattern of Alabama's death penalty by asking relevant questions during jury selection.* Trial counsel did not ask a single question aimed at discovering prospective jurors' racial biases. Trial counsel were ineffective for failing to take advantage of the express constitutional rights to question prospective jurors about their racial attitudes.

Trial counsel's failure to request voir dire on racial bias was especially unjustified in light of the accusation that Mr. Williams raped Ms. Rowell. Jurists have long recognized that no crime is more likely to generate discrimination than interracial rape. *See, e.g., Furman v. Georgia*, 408 U.S. 238, 389 n.12 (1972)("[S]tatistics suggest, at least as a historical matter, that [African-Americans] have been sentenced to death with greater frequency than whites in several States, particularly for the crime of interracial rape.")(Burger, C.J., dissenting); *id.* at 449 (discussing "substantial statistical evidence...tending to show a pronounced disproportion in the number of [African-Americans] receiving death sentences for rape in parts of Arkansas and elsewhere in the South")(Powell, J., dissenting).

Unjustified in the abstract, trial counsel's failure to request *voir dire* on racial attitudes becomes constitutionally unreasonable when viewed in the context of what happened at Mr. Williams' trial. During its case-in-chief, the State presented nine witnesses. The State's first exhibit, introduced through its

first witness, established Ms. Rowell's appearance before she died. (R. 192). Although Mr. Williams' counsel never disputed her appearance, in an obvious effort to inflame the jury, four of the State's eight remaining witnesses gratuitously referred to Ms. Rowell during their testimony as a "white female." (R. 203); (R. 218, R. 223); (R. 299); (R. 440). Even the prosecutor asked a question referring to the victim as a "white female." (R. 440). This pattern of reference to race by the State's witnesses — all government employees — dispels any suggestion that race was not an issue at Mr. Williams' trial. The prejudice lies in trial counsel's failure to do anything to account for race when questioning the prospective jurors, and in the impermissible likelihood that race played a role in the jury's deliberation. As it happens, all but one of the jurors who deliberated on Mr. Williams' case were Caucasian. *See Jackson v. Herring*, 42 F.3d 1350, 1362 (11th Cir.1995)(noting that where crime has "particular racial dimensions, which would cast doubt upon a verdict returned by a racially unbalanced, unconstitutionally composed jury" courts must carefully assess Batson prejudice).

(Doc. 5, pp. 13-14) (footnote omitted) (italics added for emphasis).

The Respondent argues that this claim is procedurally defaulted because the Rule 32 court dismissed it pursuant to Rule 32.6(b), which is an adequate and independent state ground.   (Doc. 14, p. 14).   Respondent further asserts that the facts regarding statistics suggesting disparities in Alabama sentencings based on race, which were not included in the second amended Rule 32 petition, are not properly before this court.   *Id.*

As the court discussed above, an Alabama state court decision based on Rule 32.6(b) constitutes a decision on the merits, so this claim has not been procedurally defaulted. Therefore, the court will address the merits of this claim by judging the reasonableness of the state court's decision.

In addressing this claim on collateral review, the Rule 32 court held that the claim failed to meet the pleading requirements of Rule 32.6(b):

49

Williams allegations in Part V.A.(ii) are no more specific than those in Part V.A.(i). Referring to the victim as "a white female" was merely a means of identification and neither the State's witnesses nor the prosecutor placed any emphasis on the victim's or Williams' race during the trial. Further, the Alabama Court of Criminal Appeals specifically held that "[t]he record does not reflect that [Williams'] sentence of death was imposed as a result of the influence of passion, prejudice, or any other arbitrary factor." *Williams v. State*, 795 So. 2d at 784. Williams fails to identify in his second amended petition a single juror that gave any consideration to his or the victim's race when deliberating during the guilt or penalty phase of trial. The Court finds that the allegation Part V.A.(ii) fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, this allegation is summarily dismissed.

(Tab R. 59 p. 237).

This court finds that the state court's decision was a reasonable application of *Strickland*, because Williams has failed to demonstrate prejudicial error. Williams does not cite to facts that even remotely tend to show that racial prejudice was a factor in the jury decision. Instead, he makes sweeping generalization about the *possibility* of race being a discriminatory factor when the perpetrator and victim are of different races. The court also reviewed the testimony that Williams alleges demonstrates that race was an issue.

First, he cites to the direct examination of State's witness Thomas Dixon, Chief Investigator for the St. Clair County Sheriff's Department:

Q [Prosecutor]       Will you describe what you found when you entered that room?

A [Chief Dixon]      When I first walked into that bedroom, you could see a large bed that appeared to be the master bedroom. The headboard of the bed to the wall, which would if you were standing in the doorway facing that bed, the wall would have been to your right - - the headboard would be to your right hand. Over behind that bed, between the bed and the wall beyond where I was standing, laid a body of a white female that

appeared to be deceased.

(R. Tab. 8, pp. 202-203).

Next he cites to the direct examination of State's witness Gerald Wayne Burrow,

former forensic scientist with the Alabama Department of Forensic Science:

Q [Prosecutor]    If you would, can you tell us what you did when you entered and what
                  you found?

A [Mr. Burrow]    . . . We come to the second floor and these are the stairs continuing on
                  up.  We got to the top of the stairs and located almost to the first door,
                  there was a child's gate that was stretched across the hallway to prevent
                  a child from passing through and going down the stairwell.  On the
                  immediate left as you come up, there was a bedroom.  In this bedroom
                  was located a mattress and box springs that was on the floor.  There
                  was clothing and bed articles located just inside the door.  Turning
                  immediately to the left, there were other bed articles lying here.  There
                  was a pair of panties at this point.  On the opposite side to the door,
                  lying on the floor was the body of a white female. . . .

(Tab R. 8, p. 216).

Williams also cites to direct examination of State's witness Randy Wall, investigator

with St. Clair County Sheriff's Department:

Q [Prosecutor]    What did you find in that bedroom?

A [Mr. Wall]      Upon entering that bedroom, I seen a bed the first thing with two
                  mattresses.  On the other side of it, laying in the floor was a white
                  female, known now as Melanie Rowell.

(Tab R. 8, p. 299).

Lastly, Petitioner cites to the direct exam of State's witness Larry Huys, forensic

scientist for the Alabama Department of Forensic Sciences, where both the witness and

prosecutor refer to Ms. Rowell as a white female:

A [Mr. Huys]     As you entered the front door, there was a kitchen directly in front of you, and you walked into a living room or t.v. type area.  There were stairs to your left.  As you went up the stairs, there was a child's gate across the top stair.  As you step across the gate to your left was a bedroom.  The bedding was in disarray and there was a white female on the floor, deceased, in that bedroom.  To your right was a child's bedroom and directly in front of you was more hallway with closet space.

Q [Prosecutor]   At that time, did you observe any stains on the body of the white female?

(R. Tab 8, p. 440).

As the Rule 32 court stated, the record reflects that in all of the above examples the references to the victim as a "white female" were simply a means of identification.  The investigators were recounting what they found at the scene of the crime when they arrived, having no other means of identifying the victim at that time other than by her physical appearance using race and gender.  Nothing in the record indicates that the witnesses or the prosecutor were attempting to inject race as an issue in their descriptions of the crime scene as they discovered it.

Finally, trial counsel made the following statements to potential jurors at the beginning of *voir dire*:

And basically what we are looking for is anything we would consider to be a bias or prejudice.  We are looking for twelve impartial people to sit on the jury in this case, and that is what all these questions are trying to help us do.

(Tab R. 4, p. 78).  While this statement is not a specific question to a specific juror regarding

racial bias, it did serve to put jurors on notice that their jury service required impartiality.

The court finds that this claim is due to be denied.

### II.A.iii.   Trial counsel failed to object to the prosecution's discriminatory peremptory strikes

In his amended habeas petition, Williams alleges for the first time that his trial counsel were ineffective for failing to object to the prosecution's discriminatory peremptory strikes and failing to file file a motion pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). (Doc. 5, p. 16). The Respondent contends that this claim is procedurally barred because (1) it was not fairly presented as a federal claim in state court, (2) dismissal would be futile because of the statute of limitation in Rule 32.2(c), Ala. R. Crim. P., (3) dismissal would be futile because of the ban on successive petitions, pursuant to Rule 32.3(b), Ala. R. Crim. P., and (4) because it could have been but was not raised at trial or on appeal, pursuant to Rule 32.2(a)(3) and (5). This court agrees.

The Supreme Court held that the procedural default rule applies where a claim has never been presented to the state courts. *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989). This claim is procedurally defaulted from federal review because it has not been presented to the state courts. Petitioner has not attempted to show "cause and prejudice" to excuse the default. Further, this claim cannot now be raised in state court because of the running of the one-year statute of limitations of Rule 32.2(c), and the ban on successive petitions, Rule 32.2(b), Alabama Rules of Criminal Procedure.

Even assuming no procedural bar, the facts presented fall short of the burden required

to prove a *prima facie Batson* claim, as discussed, *supra,* in Claim I.  That being the case –

based on the facts presented, that Petitioner has not alleged sufficient facts to state a *Batson*

claim – it could not be said that counsel was ineffective for failing to object to it.  The

Petitioner is not due any relief on this claim because lack of merit as well as the procedural

bar.

<p style="text-align:center">

**II.A.iv.      Trial counsel failed to pursue questioning about the death
penalty attitudes of a juror who signaled an extraordinary
willingness to impose death**

In his amended habeas petition, Williams asserts that "numerous" jurors provided

responses to *voir dire* that indicated that they could not be fair and impartial. (Doc. 5, p. 18).

This claim is similar to the second amended Rule 32 petition, with the exception that the

second amended Rule 32 petition does not contain the first italicized paragraph, which

provides some additional support of his claim:

> "*One touchstone of a fair trial is an impartial trier of fact – 'a jury capable
> and willing to decide the case solely on the evidence before it.*" McDonough
> Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 554 (1984) (citing Smith
> v. Phillips, 455 U.S. 209, 217 (1982)).  Numerous jurors gave responses
> indicating that they could not be fair and impartial to Mr. Williams.  Despite
> this, trial counsel did not challenge them for cause.  "[F]ailure to attempt to
> bar the seating of an obviously biased juror constitute[s] ineffective assistance
> of counsel of a fundamental degree."  Hughes v. United States, 258 F.3d 453,
> 463 (6th Cir. 2001) (quoting Johnson v. Armontrout, 961 F.2d 748 (6th Cir.
> 1992)).  "The question of whether to seat a biased juror is not a discretionary
> or strategic decision.  The seating of a biased juror who should have been
> dismissed for cause requires reversal of the conviction."  Id. at 463 (citing
> United States v. Martinez-Salazar, 528 U.S. 304, 316 (2000)).  By failing to
> challenge these biased jurors for cause, trial counsel's performance was
> deficient and prejudiced Mr. Williams by denying him his constitutional rights
> to due process, a fair trial and to a fair and impartial jury, see Strickland, 466*

<p style="text-align:center">54</p>

*U.S. 686, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.*

During voir dire, the prosecutor asked a prospective juror (M.F.), who [was] identified as Catholic, if that affiliation led her to feel that she could not impose the death penalty under any circumstances. (R. 77). M.F. said that she could do "what needs to be done." Id. At that point, another juror (T.G.) spontaneously volunteered: "I'm Catholic too, and I have no problem with it." Trial counsel asked no questions to explore whether there was a predisposition of some kind that prompted T.G. to be so eager, and T.G. ultimately served on the jury. (CR. 104). Trial counsel's failure to explore more deeply prevented Mr. Williams from making a fully informed use of his challenges and resulted in the jury including a person with demonstrated zeal to be selected and to impose the death penalty. Because the presence of even one biased juror cannot be harmless error, prejudice under *Strickland* is presumed, and a new trial is required. See, e.g., *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991).

(Doc. 5, p. 19) (Italics added for emphasis). The Rule 32 court dismissed this claim on the

merits; it explained:

> Trial counsel was obviously attempting to find out if M.F. opposed capital punishment because of his Catholic faith. Juror T.G. simply indicated that her Catholic faith would not prevent her from imposing death, which was exactly the type of information trial counsel was seeking. The Court finds nothing in T.G.'s response that would indicate any particular willingness to impose death. The Court finds that the allegation in part V.A.(iii) is without merit; therefore, it is denied. Rule 32.7(d), Ala. R. Crim. P.

(Tab R. 59, pp. 238-39).

The State argues that the findings and resolution of this claim on the merits by the

Rule 32 court are entitled to deference under 28 U.S.C. § 2254(d), because that court's

conclusion is neither contrary to, nor an unreasonable application of, existing Supreme Court

precedent. (Doc. 14, p. 15). This court agrees.

Williams has failed to show that the state court's denial of this claim was contrary to

55

or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts in light of the evidence before it. Although Williams contends that "numerous" jurors gave responses that indicated that they could not be fair and impartial, Williams cites to only one example in the record regarding Juror T.G. Juror T.G.'s response that she had no opposition to the death penalty was exactly the information defense counsel sought, and was not indicative of any particular "zeal" to impose death. Further, no indication arises from Juror T.G.'s response that she could not make a fair and unbiased determination based on the evidence presented. Because trial counsel's decision was reasonable under the circumstances, the court does not need to explore the prejudice prong of the *Strickland* standard. This claim is due to be denied.

### II.B.  Trial counsel prejudiced Petitioner by failing to put before the jury the fact that a hair not matching Petitioner's was found on Ms. Rowell's shoulder during the crime scene investigation

At page 20 of Williams's amended habeas petition, he alleges that trial counsel was ineffective for failing to rebut the State's evidence by informing the jury that a hair not matching Williams's hair was found on the victim at the crime scene. (Doc 5, p. 20). Addressing this assertion, the court has compared the allegations made in the second amended Rule 32 petition (Tab R. 41, pp. 205-206), with the expanded legal and factual allegations proffered in support of this claim in the instant amended habeas petition. In applying the proper standards of habeas review, this court must view the state courts' disposition of the claim as it was presented to the state courts in the second amended Rule

32 petition, not as it is more fully fleshed out in the instant amended habeas petition.

Petitioner's second amended Rule 32 petition states:

During a pre-trial hearing held September 9, 1997, the prosecutor disclosed that a hair had been found on the victim's shoulder area, and that "[t]here was a physical examination made that was inconsistent with the defendant in this case." (R. 14). On cross examination of State's witness, Wayne Burrow, trial counsel elicited an admission that the hair found on the victim's shoulder had been left off the physical evidence list admitted into evidence at the trial. (R. 226). Trial counsel then established on cross-examination of Larry Huys, the State's DNA expert, that a hair had been found on the victim's body but had not been tested because there was allegedly not enough DNA extracted from the root. (R. 457-58).

Inexplicably, trial counsel then failed to provide the full picture to the jury. Trial counsel failed to ask Mr. Huys to explain the hair found on the victim's shoulder when the prosecutor already had admitted months earlier that the hair did not match Mr. Williams based on physical evidence. Trial counsel failed to ask Mr. Huys why a piece of physical evidence not matching Mr. Williams was left off the evidence list and lacked enough DNA to be tested when "a very minute amount" of semen and blood sample sufficed to link Mr. Williams with the crime scene. (R. 374). These failures prevented Mr. Williams from adequately confronting the witnesses against him, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution, Article I, § 6 of the Alabama Constitution, and Alabama law.

(Tab R. 41, pp. 205-206).

Denying the claim on the merits, the Rule 32 court wrote:

On direct appeal, the Alabama Court of Criminal Appeals observed that "throughout the trial, [Williams'] defense was that he entered the victim's apartment with the intent to have sex with [the victim], but that he did not intend to kill her." *Williams v. State*, 795 So. 2d 763. Williams' statements to the police were consistent with his trial counsel's theory of defense. The fact that an unidentified hair was found on the victim during an autopsy would not have aided Williams' defense that he lacked the specific intent to murder the victim because he admitted being in her apartment. Further, given the other overwhelming evidence of Williams' guilt presented at trial, asking the

State's DNA expert why he did not indicate on his evidence list that a hair found on the victim did not belong to Williams would have had little, if any, impeachment value.  The Court finds that allegation in Part V.B. of Williams' second amended Rule 32 petition is without merit; therefore, it is denied.  Rule 32.7(d), Ala. R. Crim. P.

(Tab R. 59, pp. 239-40).

The State argues that this claim was denied on the merits by the Rule 32 court, and that Williams has not alleged, and cannot show, that the state court decision was contrary to, or an unreasonable application of, clearly established Federal law, or resulted in and unreasonable determination of the facts in light of the evidence, pursuant to 28 U.S.C. § 2254(d). (Doc. 14, p. 17).

In light of the Rule 32 court's decision of this claim on the merits, this court's review is only to determine if the state court's decision was contrary to *Strickland*, or an unreasonable determination of the facts in light of the evidence.  The court finds that the Rule 32 court's determination was a reasonable determination of the facts in light of the evidence.  Even if trial counsel had inquired further regarding the unidentified hair, no reasonable probability exists that the answers to those questions would negate the wealth of evidence presented by the State that Williams committed the offense.  More importantly, no reasonable probability arises that identifying the hair as not belonging to Williams would have reduced his culpability.  Therefore, this claim is due to be denied.

**II.C.  Trial counsel rendered ineffective assistance of counsel by not retaining necessary defense experts.**

58

Williams's amended habeas petition alleged that trial counsel was ineffective for failing to hire defense experts to identify favorable evidence and to rebut the State's harmful evidence.  Williams has combined several claims that were alleged separately on direct appeal into one claim in the amended habeas petition.  This court will address each allegation separately as it was plead on direct appeal.  Addressing these assertions, the court has compared the allegations made on direct appeal (Tab R. 28, pp. 86-87), with the expanded legal and factual allegations proffered in support of this claim in the instant amended habeas petition.  In applying the proper standards of habeas review, this court must view the state courts' disposition of the claim as it was presented to the state courts on direct appeal, not as it is more fully fleshed out in the instant amended habeas petition.

### II.C.i.  Trial counsel was ineffective for not retaining DNA experts to rebut the prosecution's evidence about the alleged DNA match found on the victim and to test the State's accuracy regarding the unidentified hair found on Rowell

In his amended habeas petition, Williams states that "trial counsel did not retain a DNA expert to challenge the State's conclusions about a match between the DNA found on the victim with Williams' DNA or to test the accuracy of the State's conclusion about the unidentified hair found on the victim."  (Doc. 5, pp. 22-23).  On direct appeal, Williams asserted essentially the same claim, except the direct appeal brief is more fully expanded and does not include the factual allegation regarding the unidentified hair found on Ms. Rowell's body.  The claim on direct appeal states the following:

> The outcome of the trial could have been and in all probability, would

have been different, if Defense Counsel had taken steps to attack the DNA evidence and to effectively impeach the testimony of the State's DNA expert. Defense Counsel did a noteworthy cross examination of the State's expert, but the expert knew more than DNA testing. The State's expert knew how to deny that there has ever been a problem with any DNA test that has ever been run.

Every criminal defense lawyer in Alabama has a booklet or a handout which details the problem with DNA testing. These handouts reveal how test samples were reported as false positives, false negatives, non-human, and unclassified when the test samples were all from the same source. The State's expert knew nothing about these problems. He did not know anything about two civil cases from the Court of Civil Appeals where DNA testing mistakes had been made by the testing laboratory.

A problem was that the knowledgeable Defense Counsel could not testify, and the defense did not have a defense witness who could testify. [T]he trial Court had been reasonable in approving funds for experts, and experts were available in the area.

DNA was half of the evidence in this case. With an expert, this DNA test result could have been suppressed. It was ineffective assistance of counsel to go to trial without a defense expert in the field of DNA testing.

(Tab R. 28, pp. 86-87).

In addressing this claim on direct appeal, the Alabama Court of Criminal Appeals

wrote:

After reviewing the appellant's claims, we conclude that he has not satisfied his burden of proving that his counsel's performance was deficient and that that deficient performance prejudiced him. . . . [C]ounsel thoroughly cross-examined the State's DNA expert, and there is no indication that an additional expert would have aided the defense in this area.

*Williams v. State*, 795 So. 2d at 784, *cert. denied*, Ala. 2001.

The State argues that this claim is due to be denied because it was reviewed and

denied on the merits, and Petitioner cannot show that the state court's denial of the claim was

60

contrary to, or an unreasonable application of Federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence. (Doc. 14, pp. 19-20).

This finding is entitled to a presumption of correctness under 28 U.S.C. § 2254(d). This court concludes that the state court's findings are not contrary to or an unreasonable application of *Strickland*, or an unreasonable determination of the facts in light of the evidence. The state court determined that trial counsel did a reasonable cross examination of the State's DNA expert. (Tab R. 28, p. 86; *Williams*, 795 So. 2d at 784). During the lengthy cross examination of the State's DNA expert, trial counsel asked questions regarding the implications of statistical data regarding the following: the DNA match for the semen taken from Ms. Rowell's body and the blood drawn from Williams (Tab R. 8, 450-464, 467-68); the accreditation of the Alabama Department of Forensic Science (*Id*. at 464-466); and the Forensic Department's procedures regarding the chain of custody, access and storage of items obtained. (*Id*. at 466-67). Trial counsel undertook a rigorous cross examination of the defense DNA witness, and exercised reasonable professional judgment. The Petitioner alleged no facts to demonstrate a reasonable probability that hiring a expert would have changed the outcome. Therefore, this claim is due to be denied.

### II.C.ii.    Trial counsel failed to retain a forensic medical expert to testify that Ms. Rowell's autopsy revealed no signs of rape

Williams' amended habeas petition alleges that trial counsel was ineffective for failing to hire a forensic pathologist or medical doctor to testify about the absence of signs of rape or attempted rape, absence of any obvious cause of death, and to buttress Williams's defense

theory that Ms. Rowell died accidentally before the sexual assault. (Doc. 5, p. 23). Williams asserted a similar claim on direct appeal, but only alleged the need for a forensic expert to present testimony that there were no signs of rape or attempted rape. (Tab R. 28, p. 88). As previously stated, this court must view the state courts' disposition of the claim as it was presented to the state courts on direct appeal, not as it is more fully fleshed out in the instant amended habeas petition.

On direct appeal, the Alabama Court of Criminal Appeals concluded:

Finally, the appellant alleges that an independent forensic expert was necessary to testify that the autopsy of the victim did not show that there had been a rape or an attempted rape. However, the coroner testified that, based on his examination of the victim's body, he could not determine whether anyone had raped or attempted to rape the victim. Thus, although he has made several allegations, the appellant has not shown that his attorneys performed in a deficient manner and that their allegedly deficient performance prejudiced him.

*Williams v. State*, 795 So. 2d at 784, *aff'd*, 795 So. 2d 785 (Ala. 2001), *cert. denied*, 534 U.S. 900 (2001).

Because the state court denied the claim on the merits, the state court's finding is entitled to a presumption of correctness, pursuant to 28 U.S.C. § 2254(d). The state court's decision finds support in the trial testimony. On re-direct of the State's witness, Dr. Joseph Embry, the following testimony was given:

Q[Mr. Willaimsom] Ms. Wilson asked if you examined the internal genitalia of Melanie Rowell.  Is that correct?

A[Dr. Embry]          Yes.

Q[Mr. Williamsom] Did you do that?

A[Dr. Embry]        Yes, sir.

Q[Mr. Williamsom] From that examination, you said you found no injury.  Is that correct?

A[Dr. Embry]        That's correct.

Q[Mr. Williamsom] Does that mean there had not been sexual intercourse, or does it not
                   mean that?  Does it have any bearing on that?

A[Dr. Embry]        That does not rule that out.

Q[Mr. Williamson]  Can a sexually active female have intercourse without receiving injury
                   to her genitalia?

A[Dr. Embry]        Yes.

Q[Mr. Williamsom] Would you be able to tell us whether in fact she had intercourse or had
                   not?

A[Dr. Embry]        No.

(Tab R. 8, pp. 475-76).

Trial counsel was not ineffective for failing to retain an expert to give the *same
testimony* that the medical examiner gave.  Petitioner has made no attempt to show by clear
and convincing evidence that the finding is unreasonable in light of the record evidence.  As
such, § 2254(d) requires this court to presume it to be correct.  Therefore, because the
medical examiner testified in the very same manner that Petitioner alleges trial counsel was
ineffective for not presenting by way of its own expert, this claim is not only meritless, but
close to frivolous.  This claim is due to be denied.

> **II.C.iii.        Trial counsel ineffective for failing to retain expert to**

**evaluate combined effects of intoxicating substances used by Williams on the day of the crime**

This claim, as set out in the amended habeas petition, is virtually the same as its predecessor on direct appeal. *See* (Doc. 5, p. 24) and (Tab R. 28, p. 87).   Petitioner argues that, because Williams's post-arrest statements suggested that Williams had been drinking alcohol and using marijuana and cocaine on the day of the crime,   trial counsel was ineffective for failing to retain an expert to evaluate the combined effects of those substances to suppress Williams's statements or to buttress his voluntary intoxication defense.  (Doc. 5, p. 24).  On direct appeal, the Alabama Court of Criminal Appeals denied the claim on the merits, holding that "[Williams] has not shown what additional evidence an expert could have presented about the effects of alcohol and marijuana, and has not shown that there is a reasonable probability that such evidence would have altered the outcome of his trial." *Williams v. State*, 795 So. 2d at 784,  *aff'd*, 795 So. 2d 785 (Ala. 2001), *cert. denied*, 534 U.S. 900 (2001).

The State argues that the above claim was reviewed and denied on the merits by the Alabama Court of Criminal Appeals and that it is due to be denied because Williams did not allege, and cannot show, that the state court's denial of the claim was contrary to, or an unreasonable application of federal law, or that it was an unreasonable determination of the facts in light of the evidence.  (Doc. 14, pp. 19-20).   This court agrees.

The state court decision is entitled to a presumption of correctness, pursuant to 28 U.S.C. § 2254.  Williams has not provided any evidence that tends to show what information

trial counsel was deficient in not collecting and how that information prejudiced the defendant.  Petitioner has not shown that a reasonable probability that an expert's testimony regarding the combined effects of illegal substances would negate the specific and deliberate act of Petitioner on the night of the crime.  Regardless of testimony an expert could have given, Petitioner's own statements, admitted into evidence, demonstrate that he was lucid enough to seek entrance to Ms. Rowell's home through a window after finding the back door locked, and to arm himself with a knife from Ms. Rowell's kitchen in preparation of committing the offense.  (Tab R. 27, pp. 120, 124, and 126).  Petitioner was also able to recount the events of the evening to the police once he was taken in for questioning, including describing and drawing the floor plan of Rowell's apartment.  No reasonable probability exists that expert testimony could overcome the overwhelming evidence tending to show that Williams retained at least a functional level of cognizance on the night of the offense, regardless of what substances he had ingested.  The state court's denial of this claim was not unreasonable, nor was trial counsel's decision to forego an expert to present testimony regarding Williams's toxicity on the night of the offense.  Therefore, this claim is due to be denied.

**II.D.   Trial counsel prejudiced Petitioner by failing to object to improper testimony and physical evidence presented by the State**

**II.D.i**.         **Trial counsel allowed the State to violate Petitioner's right to due process by admitting and commenting on a highly prejudicial knife block without requiring the State to lay a legally sufficient evidentiary foundation**

This claim is identical to its second amended Rule 32 petition predecessor.  *See* (Doc. 5, p. 24) and (Tab R. 40, p. 206).  The entire claim reads as follows:

During the State's direct examination of Donna Rowell, the victim's mother, the following exchange occurred:

Q:     I show you what is marked for identification as State's Exhibit No. 9.  Would you look at that please?

A:     Yes.

Q:     Do you recognize that?

A.     Yes, sir.

Q:     What is that?

A:     My daughter's steak knives that she kept in her house sitting on her counter.

Q:     Was it in her house, on her counter on November 6, 1996?

A:     Yes, sir.

Q:     Is it the same one that was there?

A:     Yes, sir.

Q:     Was it in this condition?

A:     Yes, sir.

Q:     Were there five knives in there on November 6th?

A:     Yes, sir.

Q:     Did you actually take this and turn if over to the law enforcement people?

A:     Yes, sir, I did.

Q:     That's all.

(R. 192-193).  This testimony failed to lay any foundation for ensuring that State's Exhibit No. 9 was trustworthy and therefore admissible.  A set of steak knives is a common household item, and the testimony given by Ms. Rowell did not establish how she knew that the item marked as State's Exhibit No. 9

66

was the specific item that she claimed to have found in her daughter's apartment. She simply answered "yes" when asked if State's Exhibit No. 9 was the same knife set she found.

The State eventually asked the Court to admit the knife block based on the following direct testimony of Randy Wall:

> Q:    I show you what has been marked here as State's Exhibit No. 9 previously. Do you recognize that?
> A:    Yes, sir.
> Q:    What is that?
> A:    That is the knife block that was given to us that I received.
> Q:    Did you get this from Melanie's mom?
> A:    Yes, sir.
> Q:    Is this the same knife block that is represented in State's Exhibit No. 10 from Melanie's apartment?
> A:    Yes, sir.

(R. 316). The Court then admitted State's Exhibit No. 9, the knife block. (R. 316). Once the exhibit had been admitted, trial counsel objected but failed to point out the obvious lack of foundation (R. 316-17).

Trial counsel's failure to object to the admission of the knife block when no evidentiary foundation had been set out prejudiced Mr. Williams by allowing the jury to consider inadmissible, highly prejudicial physical evidence. The knife block played a main role in the prosecutor's closing arguments:

> He entered her apartment, and the first thing he did when he saw the knives on the kitchen counter, and he grabbed one of them. You heard that. He took one of the knives – this is the knife block that was in Melanie Rowell's apartment. There were six knives at one time, and now there are five. One is missing–one black handled knife. I submit to you the knive [sic] looks like this.

(R. 490-91). The jury's consideration of this inadmissible evidence violated Mr. Williams' rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

67

(Doc. 5, p. 24; Tab R. 40, p. 206).

In examining the claim on collateral review, the Rule 32 court held that the claim was without merit:

> The testimony from the victim's mother quoted on pages 21-22 of Williams' second amended Rule 32 petition establishes the foundation for the admission of the knife block. The victim's mother testified that she recognized the knife block as the one the victim kept on her kitchen counter and stated that it was in the same condition at trial as it was the last time she saw it at the victim's apartment. (R. 191-192) *See Ex parte Works*, 640 So. 2d 1056, 1059 (Ala. 1994)(holding that "because the condition of the knife was not an issue in this case, and its authenticity was established by other means, it was not necessary to establish a chain of custody"). Obviously, trial counsel cannot be ineffective for failing to object to admissible evidence. *See Thomas v. Jones*, 891 F.2d 1500, 1505 (11 Cir. 1989)(holding that "counsel for defendant did not err in failing to object to [] admissible evidence"). Also, as previously stated, Williams did not dispute he entered the victim's home, "his defense was that he entered the victim's apartment with the intent to have sex with her, but that he did not intend to kill her." *Williams v. State*, 795 So. 2d at 763. The Court finds that the allegation in Part V.C.(i) of Williams' second amended Rule 32 petition is without merit; therefore, it is denied. Rule 32.7(d), Ala. R. Crim. P.

(Tab R. 59, pp. 240-41).

Respondent's answer to the habeas petition asserts that Williams has not alleged, and cannot show, that the Rule 32 court's denial of this claim resulted in a decision that was contrary to, or involved an unreasonable application of federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence. (Doc. 14, p. 22). This court agrees.

The Rule 32 court's decision was not objectively unreasonable. As the state court correctly noted, Williams defense at trial was that he intended only to rape her, not to kill her.

In light of that defense, whether the chain-of-custody for admission of the knife block into evidence was scrupulously proven was immaterial.  The link between the knife and the killing was not a substantial issue in dispute.  Additionally, Williams never denied using the knife in commission of the offense.  The Petitioner's own statements admitted into evidence, and his testimony during the sentencing hearing before the trial judge, reflect that he got a black-handled knife from Rowell's kitchen counter in preparation for committing the offense. (Tab R. 27, p. 120; Tab R. 25, p. 613). Even today, the Petitioner makes no assertion that the knife admitted into evidence was tampered with or otherwise tainted in a way harmful to the defense.

Because the State properly laid the foundation for the admission of the knife block, trial counsel cannot be found to have fallen below a reasonable standard by failing to object to admissible evidence.   Trial counsel's failure to object to the admission of the knife block was not unreasonable or ineffective assistance of counsel and that conclusion reached by the Rule 32 court was not contrary to federal law nor unreasonable.   Therefore, this claim is due to be denied.

> **II.D.ii.        Trial counsel allowed three State witnesses to indulge in rambling narratives in lieu of testimony**

Williams alleged that trial counsel's failure to object to prejudicial narratives during the State's examination of three witnesses reflects ineffective assistance. (Doc. 5, p. 27). Williams cited as examples the testimony of Thomas Dixon (R. 210-203), Wayne Burrow (R. 216-18) and Joseph Embry (R. 470-71).  Williams alleged the same claim in his second

amended Rule 32 petition, but in a very abbreviated form.  He cited the same testimony as in the amended habeas petition, and alleged that it violated his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.  (Tab R. 41, p. 209).  In applying the proper standards of habeas review relating to the "adequacy" of the state's procedural rule, this court must view the state court's disposition of the claim as it was presented to the state courts in the second amended Rule 32 petition,  not in its expanded form presented in the instant amended habeas petition.   (Tab R. 41, p. 209; Doc. 5, pp. 26-28).

Respondent contends that this claim is procedurally defaulted because the Rule 32 court denied the claim pursuant to Rule 32.6(b), Ala. R. Crim. P., which is an independent and adequate state law ground.  The State's assertion is incorrect under *Borden*, as was discussed above. Because a decision based on Rule 32.6(b) constitutes a decision on the merits for purposes of federal habeas review, this claim is not procedurally defaulted, and the court will address the reasonableness of the state court's application of *Strickland*.

In denying the claim because it failed to comply with the pleading requirement of Rule 32.6(b), the Rule 32 court held the following:

> The record indicates that the three witnesses listed by Williams testified to facts within their personal knowledge based on their personal observations. Dixon and Burrow testified about the condition of the victim's apartment they observed and Embry testified about the physical condition of the victim's body before he performed the autopsy.  Williams' attempt to support Part V.C.(ii) is to make the general assertion that his trial counsel's failure to object somehow violated his rights under the United States and Alabama Constitutions.  Williams fails, however, to state in his second amended Rule

70

32 petition with any specificity how Dixon's, Burrow's, and Embry's answers caused him to be prejudiced.  *See Stringfellow v. State*, 485 So. 2d 1238, 1243 (Ala. Crim. App. 1986) (holding that "effectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made").  The Court finds that the allegations in Part V.C.(ii) of Williams' second amended Rule 32 petition fails to meet the specificity and full factual pleading requirement of Rule 32.6(b); therefore, it is summarily dismissed.

(Tab R. 59, p. 242).

This court finds that, based on the weakness of Williams' assertion, the decision of the Rule 32 court was reasonable under *Strickland*.  After careful examination of the testimony of Dixon, Burrow and Embry, the court finds that the testimony was accurate in light of the other evidence presented at trial, including Petitioner's own statements. Additionally, Dixon, Burrow and Embry testified only to facts of which they had first hand knowledge. Habeas relief cannot be granted on this claim.

### II.D.iii.        Trial counsel ineffective for not objecting to the prosecutor using leading questions during the trial

Williams presented this allegation in his amended habeas petition as part of Claim II.D.ii., although it was presented separately in his second amended Rule 32 petition.  In this claim, Williams alleges that trial counsel was ineffective because he allowed the prosecutor to repeatedly ask a "barrage of leading questions" on direct examination of the State's witnesses.  (Doc. 5, p. 27).   Williams also contends that "objecting to leading questions would have worked – the three times trial counsel objected to leading questions, the Court sustained the objection."  This is virtually the same claim as presented during the Rule 32

appeal, except in the second amended Rule 32 petition, Williams listed all of the questions that he alleges were leading. (Tab R. 41, p. 24).

Respondent asserts that this claim is defaulted because it was insufficiently plead in state court pursuant to Rule 32.6(b), which is an independent and adequate state procedural default ground. (Doc. 14, p. 24). Respondent also alleges that this claim is a new factual allegation that was not previously plead in state court, and therefore, is not properly before this court. *Id.*

Decisions based on Rule 32.6(b) are decisions on the merits, and do not prompt procedural default. Therefore, the court will address the reasonableness of the Rule 32 court's decision under federal law. The court also rejects the Respondent's argument that this allegation was not presented to the state courts; the Rule 32 court specifically addressed this claim. (*See* Tab R. 58, pp. 242-44).

The Rule 32 court denied this claim because it failed to meet the specificity and full factual pleading requirements of Rule 32.6(b):

> In support of Part V.C.(iii), Williams appears to have searched the record on direct appeal and listed in his second amended Rule 32 petition all the questions asked by the prosecution that could be considered leading because he lists 76 questions that, he contends, where leading and improper.
>
> The Alabama Court of Criminal Appeals has specifically held that:
>
> > "'Effectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made.'" *Stringfellow v. State*, 485 So. 2d 1238, 1243 (Ala.Crim.App. 1986). 'Even though there were several instances where counsel could have objected,

> "that does not automatically mean that the [appellant] did not receive an adequate defense in the context of the constitutional right to counsel.' *O'Neal v. State*, 605 So. 2d 1247, 1250 (Ala. Crim.App. 1992)."

*Thomas v. State*, 766 So. 2d at 876. Further, the Alabama Supreme Court has specifically recognized that "[a] failure to object may suggest that the defense did not consider the comments to be particularly harmful." *Ex parte Payne*, 683 So. 2d 458, 465 (Ala. 1996).

Williams fails to state in his second amended Rule 32 petition with any specificity what "evidence" or information was improperly presented to the jury simply because the State may have asked some leading questions. *See Johnson v. State*, 557 So. 2d 1337, 1339 (Ala.Crim.App. 1990) (holding that "[t]rial counsel's failure to object to a leading question is not itself inadequate representation"); *see also Broadnax v. State*, 825 So. 2d 134, 182 (Ala. Crim.App. 1999) (holding that, "[while] many of the prosecutor's questions were leading, . . . the objectionable questions mainly elicited foundation information and did not result in the introduction of inadmissible evidence.") The Court has reviewed the questions listed in paragraphs 42 of Williams second amended Rule 32 petition and finds that many of the questions were asked simply to lay a foundation or proper predicate for the admission of evidence. Other questions were obviously follow-up questions that were based on a witness's previous answers. Williams' trial counsel were not ineffective simply because they did not object at every possible opportunity. *See O'Neal v. State*, 605 So. 2d 1247, 1250 (Ala.Crim.App. 1992) (quoting *Ex parte Lawleg*, 512 So. 2d 1370, 1373 (Ala. 1987), and holding that "[e]ven though there were several instances where counsel could have objected, 'that does not automatically mean that the [appellant] did not receive an adequate defense in the context of the constitutional right to counsel"). The Court finds that the allegation . . . fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is summarily dismissed.

(Tab R. 58, pp. 242-44).

This court finds the decision of the Rule 32 court reasonable under *Strickland*.

Williams failed to allege any professionally unreasonable error by his trial counsel.

Furthermore, after a careful examination of the record and the questions in context with the

testimony, the questions of the prosecutor did not so infect the "trial with unfairness as to make the resulting conviction [or sentence] a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). This claim is due to be denied.

### II.E.   Trial counsel prejudiced Petitioner by failing to object to the State's impermissible closing argument, suggesting that Petitioner had a burden to present evidence that someone else committed the crime

A petitioner is entitled to habeas relief based on the improper comments of a prosecutor only if the comments "so infected the trial with unfairness as to make the resulting conviction [or sentence] a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In his amended habeas petition, Williams alleged that, "[i]n closing arguments, the prosecutor suggested to the jury that Mr. Williams had an obligation to present evidence of his innocence, and that his decision not to present evidence should be weighed against him."  (Doc. 5, p. 29). Petitioner alleged virtually the same claim in his second amended rule 32 predecessor (Tab R. 41, pp. 215-217), with the exception that the amended habeas petition supported the claim with Fifth and Sixth Circuit precedence.  (Doc. 5, pp. 28-30).

This court must view the state court's disposition of the claim as it was presented to the state courts in the second amended Rule 32 petition.  That petition stated:

> In its closing arguments, the prosecutor suggested to the jury that Mr. Williams had an obligation to present evidence, and that his decision not to present evidence should be weighed against him.  (R. 493)("If Marcus Williams didn't commit this crime, who did?  What evidence is there of any

other person before you that indicates someone else did it? There is none.")
By implying that, in the absence of an alternative, the jury should convict Mr.
Williams, the prosecutor's improper argument "so infected the trial with
unfairness as to make the resulting conviction a denial of due process."
*Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Trial counsel did not object
to this violation of Mr. Williams' rights under the Fifth and Fourteenth
Amendments to the U.S. Constitution.

In this case, with three of Mr. Williams' statements admitted into
evidence, a defense theory of mistaken identity would have required Mr.
Williams to take the stand to deny his prior statements. By pointing out to the
jury that the defense had not put forward evidence to support a theory of
mistaken identity, the prosecutor in effect asked the jury to penalize Mr.
Williams for not testifying. The prosecutor's comments violated Mr.
Williams' rights under federal and state law. The Alabama Supreme Court has
specifically held that "where there is a possibility that a prosecutor's comments
could be understood by the jury as a reference to failure of the defendant to
testify, Article I, § 6 [of the Alabama Constitution] is violated." *Beecher v.
State*, 320 So. 2d 727, 734 (Ala. 1975); *see also Griffin v. California*, 380 U.S.
609 (1965); *Qualls v. State*, 371 So. 2d 949 (Ala. Crim. App. 1979) ("Where
there has been direct comment on the defendant's failure to testify, and the
trial court has not promptly acted to cure such statement, the conviction must
be reversed.") (citation omitted); Ala. Code § 12-21-220 (1975) ("On the trial
of all . . . criminal proceedings, the person on trial shall, at his request, but not
otherwise, be a competent witness, and his failure to make such a request shall
not create any presumption against him *nor be the subject of comment by
counsel*") (italics addded.).

Trial counsel prejudiced Mr. Williams by allowing the prosecutor to
send the jury into deliberations with the constitutionally impermissible idea
that Mr. Williams should be penalized for not testifying. This violated Mr.
Williams' rights under the Fifth, Sixth, and Fourteenth Amendments to the
U.S. Constitution, Article I, § 6 of the Alabama Constitution, and Alabama
law.

( Tab R. 41, pp. 215-217).

Holding that this allegation was without merit, and therefore denied, the Rule 32 court

stated:

In *Price v. State*, 725 So. 2d 1003 (Ala. Crim. App. 1997), the Alabama Court of Criminal Appeals held that "[t]he prosecutor ha[s] a right to comment on the strength of the evidence the State ha[s] presented and to draw any reasonable inferences from it." *See also Broadnax v. State*, 825 So. 2d at 183 (holding that "[i]t is not improper for the prosecutor to refer to the strength of the [S]tate's case." In the context of evidence presented by the State at Williams' trial, including Williams' three statements to police, the Court finds that the prosecutor's comments quoted by Williams were proper arguments concerning the strength of the State's case and not references to Williams' decision not to testify in his own defense. *See Roberts v. State*, 735 So. 2d 1244, 1253 (Ala. Crim. App. 1997)(holding that "[a] prosecutor's closing statement must be viewed in the context of all of the evidence presented and in the contest of the complete closing arguments to the jury"). The Court finds that the allegation in Part V.D. is without merit; therefore, it is denied. Rule 32.7(d), Ala. R. Crim P.

(Tab R. 59, p. 30).

The Respondent argues that this claim is due to be denied because it was reviewed and denied on the merits by the Rule 32 court, and Williams has not alleged, and cannot show, that the Rule 32 court's denial was contrary to, or an unreasonable application of Federal law, or that it resulted in a decision that was an unreasonable determination of the facts in light of the evidence. (Doc. 14, p. 26).

The state court's determination of this claim on the merits is entitled to a presumption of correctness. 28 U.S.C. § 2254(d). The Petitioner has not attempted to show that the state court's decision is an unreasonable determination of the facts in light of the evidence presented. The conclusion by the Rule 32 court that Petitioner's claim was without merit is not objectively unreasonable. Taken in context, the remarks were proper arguments, presenting to the jury a summation of what the prosecution deduced the evidence tended to

76

demonstrate.  The State's pronouncement that there was no evidence that someone other than Petitioner committed the crime did not undermine the fundamental fairness of the guilt phase proceedings and was supported by the evidence.  *See Drake v. Kemp*, 762 F.2d 1449, 1458 (11th Cir. 1985)("Improper argument will only warrant relief if it renders a Petitioner's trial or sentencing 'fundamentally unfair'").  Because the remarks were not improper, counsel's failure to object to them cannot support a claim of ineffective assistance of counsel.

Furthermore, the Supreme Court has stated, "the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California,* 380 U.S. 609, 615 (1965).

The Eleventh Circuit has described the proper manner in which to evaluate a claim under *Griffin*:

> The Fifth Amendment prohibits a prosecutor from commenting directly or indirectly on a defendant's failure to testify.  A prosecutor's statement violates the defendant's right to remain silent if either (1) the statement was manifestly intended to be a comment on the defendant's failure to testify; or (2) the statement was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.  **The question is not whether the jury possibly or even probably would view the remark in this manner, but whether the jury necessarily would have done so.** The defendant bears the burden of establishing the existence of one of the two criteria.  The comment must be examined in context, in order to evaluate the prosecutor's motive and to discern the impact of the statement. . . .
>
> *United States v. Knowles*, 66 F.3d 1146 (11th Cir.1995) (citations, quotations, and footnotes omitted). See also *United*

77

*States v. LeQuire*, 943 F.2d 1554, 1565 (11th Cir.1991) (same); *Solomon v. Kemp*, 735 F.2d 395, 401 (11th Cir.1984).

In applying *Griffin*, we have strictly enforced the requirement that a defendant show that the allegedly offensive comment was either manifestly intended to be a comment on the defendant's silence or that the comment naturally and necessarily related to the defendant's silence. For example, in *Knowles*, the Court considered whether a prosecutor violated *Griffin* when he pointed out problems with the defendant's defense, and then asked, "Did you ever hear an explanation for that?" 66 F.3d at 1162. The Court held that this statement did not necessarily relate to the defendant's silence, because the defendant could have presented other types of evidence to explain the inconsistency. *Id.* at 1163. Therefore, the Court concluded that:

> As such, the remark is not so much a comment on Wright's failure to testify, but rather on Wright's counsel's failure to counter or explain the [damaging evidence]. It is not error to comment on the failure of the defense as opposed to the defendant, to counter or explain the evidence.

*Id.* at 1163 (citations and quotations omitted).

Likewise, in *Solomon v. Kemp*, the prosecutor addressed the fact that the State was not sure which one of two defendants possessed which of two guns found at a crime scene, and stated: "We don't know which defendant had which gun. The only person who can tell us that is [the defendant]." 735 F.2d at 401. We held that this statement was proper under *Griffin*, stating:

> We find the statement to be rather an attempt to explain why the state could not match each defendant with one specific gun and to stress that this fact was not crucial to the state's case. Although the statement was an indirect reference to petitioner's silence, taken in context it is an objective evaluation of the state

78

of the evidence. As such, it is permissible
under *Griffin*.

*Id.*

*Isaacs v. Head*, 300 F.3d 1232, 1270-71 (11th Cir. 2002), *cert. denied*, 538 U.S. 988 (2003)

(emphasis added).

Williams cannot prove his burden that the prosecutor's comments violated *Griffin*.

When the comments are viewed in context, Williams has not established that the prosecutor

intended to comment on Williams's failure to testify; nor has he established that either

statement was of such a character that the jury would necessarily have viewed the statements

to be a comment on Williams's failure to testify.   The comment was an accurate account of

the evidence presented. The state court's adjudication was not contrary to, or an unreasonable

application of *Strickland*.   This claim is due to be denied.

### IIF.   Trial counsel prejudiced Petitioner by presenting the jury with inconsistent and damaging theories of defense during closing argument.

In his amended habeas petition, Williams alleged that trial counsel presented

damaging defense theories in closing arguments during his guilt phase, in violation of

Williams's Fifth, Sixth and Fourteenth Amendment rights.  Specifically, Williams asserts that

trial counsel conceded felony murder and inappropriately commented on the abuse of a

corpse, by stating, "[y]ou know, you can't commit rape on someone already dead." (Doc. 5.

pp. 31-32; Tab R. 41 p. 217).  Petitioner asserts that these errors provided the prosecutor an

opportunity to play on the jury's emotions when he stated:

> He wants you to say it can't be capital murder because she didn't get raped until she was a corpse.  That is the most – the worst thing I can think of for a man to sit down and say he raped her for fifteen or twenty minutes.

*Id*.

This claim is the same as its second amended Rule 32 predecessor, with two significant exceptions.  In the amended habeas petition, Williams argues vigorously that trial counsel failed to provide any evidence that Petitioner did not have the requisite specific intent to kill and that trial counsel was ineffective for conceding that Williams committed rape and murder.  (Doc. 5, pp. 32-34).  However, this court must view the state court's disposition of the claim as it was presented to the state court in the second amended Rule 32 petition,  not in is expanded form as in the instant amended habeas petition.

The Rule 32 court explained:

> The Court must review trial counsel's guilt phase closing arguments in the context of all the evidence presented at Williams' trial and in the context of trial counsel's entire closing argument, not in isolation.  *See Duren v. State*, 590 So. 2d 360, 366 (Ala. Crim. App. 1990) (holding that a reviewing court "must evaluate [trial counsel's statements] in the context of the entire closing argument").  In his guilt phase closing argument, trial counsel stated:

>> I asked you in opening, the question for you to decide in this case was how was [the victim's] life taken.  That is still the question.  The question is: <u>Did this man take her life?  Yeah, he did.  Why was he in there?  You got his statement.  He went in with the intent to rape her.  He was going to rape her but she died</u>.  It is in all three statements.  She dies.  She quit breathing and didn't move.  It is in his statements, but in that third statement, the order somehow reverses or they try to reverse it.  <u>You know, you can't commit rape on someone already dead</u>.  They figured that out.  That is why they went back for that other statement.  If they get in the order it was argued to you, rape and

> then murder, it changes.  But that is not the way it is in those
> first two statements and in the testimony you heard.  It doesn't
> make the situation pleasant.  Don't get me wrong.  If you do the
> job and apply the law and apply the facts, he is guilty of murder
> and attempted rape.  What it is he went in with the intent to rape
> her and she died.  He didn't intend to murder her.

> (R. 502-503) [(emphasis added)].  When read in the proper context, trial
> counsel's guilt phase closing arguments were not inconsistent.  Trial counsel
> was attempting to explain to the jury why law enforcement took Williams'
> third statement - to get the facts right in order to charge him with capital
> murder instead of felony-murder.  In the light of Williams' statements to
> police, trial counsel's closing argument, which attempted to convince to the
> jury to convict Williams of the lesser-included offense of felony-murder
> instead of capital murder, was entirely reasonable and a sound trial strategy.
> *See Strickland v. Washington*, 104 S.Ct. at 2066 (holding that [t]he
> reasonableness of counsel's actions may be determined or substantially
> influenced by the defendant's own statements or actions").  The Court finds
> that the allegation in Part V.E. is without merit and fails to state a claim or
> establish that a material issue of fact or law exists as required by Rule 32.7(d);
> therefore it is denied.

(R. Tab 59, pp. 246-47) (footnote omitted).

The Respondent contends that this claim was reached on the merits and is entitled to

a presumption of correctness, pursuant to 28 U.S.C. 2254(d).  The State is correct.

The state court's decision to deny the claim on the merits was not contrary to or an

unreasonable application of clearly established Supreme Court precedent, nor was it an

unreasonable determination of the facts in light of the evidence.  Counsel made clear

strategic choices not to contest that Williams entered Ms. Rowell's residence with the intent

to rape her.  He further attempted to inject doubt in the minds of the jury regarding the

sequence of events on the night of the offense, to invoke the lesser-included offense of felony

murder, thereby avoiding capital murder.  In light of Petitioner's statements and other evidence presented at trial, trial counsel's defense strategy was reasonable.

Petitioner has not overcome the strong presumption of correctness afforded the state court.  The state court decision was not contrary to, or an unreasonable application of *Strickland*.  Therefore, this claim is due to be denied.

### IIG.   Trial counsel was ineffective for abandoning the plea that Petitioner was suffering from mental defect or disease.

On page 35 of his amended habeas petition, Williams alleged that although he entered pleas of not guilty by reason of insanity, not guilty by reason of mental defect or disease, and not guilty by any combination of above, his trial counsel was ineffective in abandoning those pleas before trial.  (Doc. 5, p. 35).  Williams further alleges that trial counsel should have obtained an independent mental health evaluation.  (Doc. 5, p. 36).  This same claim was presented on direct appeal, asserting essentially the same facts, but the amended habeas petition presents a substantially different and expanded format.  (Tab R. 28, p. 74).  This court must view the state court's disposition of the claim as it was presented to the state courts, not as it is more fully plead in the instant amended habeas petition.

In examining the claim on direct appeal, the Alabama Court of Criminal Appeals denied the claim on the merits, holding that "there is no evidence that [Williams] was suffering from a mental disease or defect." *Williams v. State*, 795 So. 2d at 784, *aff'd*, 795 So. 2d 785 (Ala. 2001), *cert. denied*, 534 U.S. 900 (2001).  Respondent contends that this claim should be denied because it was reviewed and denied on the merits by the Alabama

Court of Criminal Appeals, and Petitioner did not allege and cannot show that the state court's decision is contrary to, or an unreasonable application of Federal law, or that it is an unreasonable determination of the facts in light of the evidence.  This court agrees.

The state court's decision was not an unreasonable determination.  In light of the lack of evidence that would suggest that Williams suffered from a mental disease or illness, it cannot be said that a failure to obtain an independent mental health evaluation would have made any difference in the outcome.  Williams was found competent to stand trial in his pre-trial mental evaluation.  In the sentencing order, the trial court found that "based upon the report of the Department of Mental Health, the Court finds by a preponderance of evidence that defendant was not under [ ] extreme mental or emotional disturbance at the time of the offense."  (Tab R. 55, p. 108).   The record is simply void of any evidence that Williams suffered from mental disease or defect.

Petitioner is not due any relief on this claim.

### IIH.   Trial counsel's many errors resulted in a verdict so unreliable as to violate due process and created a reasonable probability that, but for the errors, the result of Petitioner's guilt-phase trial would have been different

Petitioner's final claim of ineffective assistance of trial counsel is the contention that all of trial counsel's many errors "resulted in an unacceptably 'serious risk of injustice' at Mr. Williams' trial, in violation of [his] rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution." (Petition, p. 37-38).  For the reasons already addressed at length above, none of Petitioner's individual allegations of ineffectiveness casts

doubt on the constitutional adequacy of his trial representation.   Merely combining insufficient allegations of ineffectiveness does not cause the sum to ripen into a genuine claim.  As the Eleventh Circuit recently stated, because the petitioner "has not sufficiently pled facts that would establish prejudice–cumulative or otherwise–we decline to elaborate further on the concept of 'cumulative effect' for fear of issuing an advisory opinion on a hypothetical issue." *Borden*, 646 F.3d at 823.

Without a showing that he suffered prejudice as a result of some professionally unreasonable act or omission of counsel, Petitioner cannot meet the *Strickland* standard.  Nor may Petitioner stitch together questionable acts or omissions by trial counsel that are factually and logically unrelated to any harm to his defense and thereby show some overarching ineffectiveness of counsel.  The two-prong *Strickland* test is very clear:  to prevail, Petitioner must show both a professionally unreasonable act or omission by counsel, and that such act or omission caused sufficient prejudice to the Petitioner's defense to undermine confidence in the outcome of the proceeding.  *Strickland*, 466 U.S. at 687.

Because he has failed to meet that test as to his several individual claims of ineffectiveness, looking at the collection of allegations as a whole adds nothing.  This claim also lacks merit.

84

**CLAIM III.** TRIAL COUNSEL WAS INEFFECTIVE DURING THE PENALTY PHASE OF PETITIONER'S TRIAL, THEREBY DEPRIVING HIM OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND RESULTING IN THE UNJUST AND UNCONSTITUTIONAL IMPOSITION OF THE DEATH PENALTY

**A.    Trial counsel's numerous guilt phase errors prejudiced Petitioner in the penalty phase well before the penalty phase had even started**

Petitioner's next claim, found on page 38 of the amended habeas petition, alleges in vague and conclusory terms that his trial counsel's guilt phase error of failing to question prospective jurors about their racial attitudes during *voir dire* prejudiced him in the penalty phase. This claim is similar to its second amended Rule 32 predecessor. (Tab. R. 41, pp. 219-220). The amended habeas petition and second amended Rule 32 petition differ in that their introductory paragraphs cite different legal authority to support the same contention that Williams's constitutional rights were violated.[21]

The general substance of this claim is identical in both petitions, and states:

> Although capital cases are bifurcated, the guilt phase proceedings set the stage for the penalty phase. An accused whose "opportunity to meet the case of the prosecution," [*Strickland v. Washington*, 466 U.S. 668, 685 (1984)], has been inadequate in the guilt phase due to counsel's deficiencies enters the penalty phase at a substantial disadvantage. Accordingly, trial counsel's actions and inactions during the guilt phase must be considered when evaluating trial counsel's penalty phase performance. Taking an all-encompassing approach to a claim of ineffective assistance of counsel during the mitigation phase is required not only by common sense, but also by governing law. *See e.g., Lockhart v. McCree*, 476 U.S. 162, 181 (1986)(Rehnquist, J.) ("[I]t seems obvious to us that in most, if not all, capital

---

[21] This claim also alleges that trial counsel was ineffective for failing to present and investigate mitigating evidence. This issue will be discussed in Claim IIIB, where most of those facts were pled.

cases much of the evidence adduced at the guilt phase of the trial will also have a bearing on the penalty phase. . . ."); *Tarver v. Hopper*, 169 F.3d 710, 715 (11th Cir. 1999)("A lawyer's time and effort spent in preparing to defend his client in the guilt phase of a capital case continues to count at the sentencing phase."). Under *McCree* and *Tarver*, trial counsel's numerous guilt phase errors, discussed above at ¶¶ 26-48, also prejudiced Mr. Williams in the penalty phase.

In particular, trial counsel's failure to question prospective jurors about their racial attitudes during voir dire also prejudiced Mr. Williams in the penalty phase. Indeed, the U.S. Supreme Court has recognized that the sentencing proceeding is where bias is most likely to manifest itself in a jury asked to decide an interracial capital case. *Turner v. Murray*, 476 U.S. 28 (1986).

(Doc. 5, pp. 38-40; Tab R. 41, pp. 219-220).

Respondent asserts that this claim is barred from federal review because it was procedurally defaulted on independent and adequate state law grounds. (Doc. 14, p. 35). However, under *Borden*, a decision by an Alabama court based on Rule 32.6(b) constitutes a decision on the merits for purposes of federal habeas review. Therefore, this claim is not procedurally defaulted, and the court will now turn to the reasonableness of the decision of the Rule 32 court under federal law.

In examining this claim during the Rule 32 proceedings, the Rule 32 court stated the following:

[Williams] contends that his counsel's alleged guilt phase errors (Part V) caused him to be prejudiced during the penalty phase of his trial. Williams fails, however, to proffer any argument as to how his trial counsel's alleged errors in the guilt phase caused him to be prejudiced in the penalty phase. The only example of alleged prejudice in Part VI.A is Williams' contention that his "trial counsel's failure to question prospective jurors about their racial attitudes during voir dire also prejudiced [him] during the penalty phase." (Amended

86

petition at 34)

> This allegation is no more specific than Williams' previous allegation concerning trial counsel's failure to voir dire the jury concerning racial attitudes. Simply because Williams may have had the right to question prospective jurors about racial attitudes does not mean trial counsel were *per se* ineffective for failing to due so. See Dobyne v. State, 805 So. 2d 751. Williams fails to identify in his second amended Rule 32 petition one specific veniremember or juror whose "racial attitude" adversely affected Williams during voir dire or during the guilt or penalty phase of his trial. The Court finds that the bare allegation in Part VI.A of Williams' amended Rule 32 petition fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is summarily dismissed. See Boyd v. State, 2003 WL 22220330, at *6 (Ala. Crim. App. Sept. 26, 2003)(quoting Lancaster v. State, 638 So. 2d 1370, 1373 (Ala. Crim. App. 1993, and holding that "it is not the pleading of a conclusion 'which, if true, entitles the petitioner to relief.'").

(Tab R. 59, p. 249). This court finds the decision of the Rule 32 court reasonable under *Strickland*, as Williams has failed to demonstrate prejudicial error by his counsel.

Furthermore, Williams attempts to incorporate all of the above ineffective assistance of counsel claims to support this claim. However, those claims were found to be without merit and, therefore, cannot support this claim. Williams offers no federal law or argument in support of the foregoing general and conclusory allegations. This court is under no obligation to "consider unsupported and undeveloped issues." *Moore v. Gibson*, 195 F.3d 1152, 1180 n. 17 (10th Cir. 1999), *cert. denied*, 530 U.S. 1208 (2000). This claim did not contain a sufficient factual basis to support it. Williams's vague assertions and unsupported conclusions are insufficient to show that counsel was deficient or that he was prejudiced. This claim is due to be denied.

**III.B.**     **Trial counsel's failure to investigate Petitioner's background prevented him from being able to present a constitutionally adequate mitigation case during the penalty phase and violated Petitioner's right to counsel under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution**

Williams pleads his most extensive claim of ineffective assistance of counsel on page 40 of his amended habeas petition.  He alleges that trial counsel was ineffective during the penalty phase of the trial because they failed to adequately investigate and present mitigation evidence to show that Williams should not have been sentenced to death.  The mitigating evidence that Petitioner contends was not adequately investigated includes failure to (1) hire a mitigation expert; (2) collect documentary evidence; (3) conduct interviews of family and friends; (4) present evidence of Petitioner's history of abandonment, neglect, poverty, alcohol and sexual abuse; (5) investigate his mental illness; (6) show how Williams's background related to his committing capital murder; and (7) present redeeming characteristics and call certain witnesses to testify regarding his extraordinary affection for children.

These claims are similar to those presented on direct and collateral appeal.  In the amended habeas petition, however, Petitioner combined them into one claim and expanded them by presenting new factual allegations.  The new factual assertions alleged for the first time in the amended habeas petition are procedurally defaulted and are, therefore, not before this court for review.

The state courts addressed Williams's mitigation claims separately.  This court will do likewise.

### III.B.i.   Trial counsel ineffective because he failed to collect documentary evidence and hire a mitigation specialist.

First, Petitioner's entire claim in the amended habeas petition alleges that, "[u]nder prevailing professional norms, to have properly prepared for the penalty-phase of Mr. Williams' capital trial, counsel should have, *at a minimum*, collected documentary evidence chronicling Mr. Williams' life . . . ."[22]   (Doc. 5, p. 40).   This claim is similar to its direct appeal predecessor, where the Petitioner alleges a slightly expanded version of this claim:

> A neutral person, one not an immediate family member, could have been an effective way to provide information in the form of documentary evidence on behalf of Marcus Williams.
> As it was, the jury only heard statements from family members that had to have sounded unbelievable to them.  With people evidence at the sentencing phase of the trial, the jury could have seen a documentary presentation to supplement the testimony that told an interesting and compelling picture.  The result would have been a fair chance at a life sentence.

(Tab R. 28, p. 85-86).

Williams's amended habeas petition also asserts that trial counsel was ineffective for failing to hire a mitigation expert. (Doc. 5, pp. 42, 52).  This claim is essentially the same as its direct appeal predecessor, where he states:

> Defense counsel did not engage the services of any expert to assist in mitigation, and did not do anything to effectively prepare for the mitigation part of the trial.  There are a number of professionals available who could have gathered information, interviewed witness[es], prepared a strategy recommendation and testified at trial in a coherent and organized manner.  It could have been possible to present a sufficient amount of information in a credible manner that the jury could have understood, and more importantly

---

[22]  This sentence is the only reference to collecting documentary evidence in the amended habeas petition.

believed probative and relevant information about Marcus Williams. The information would have been delivered in the form of evidence and testimony from experts who were not biased, who had no personal interest in the outcome of the case. This is the kind of professional assistance that a number of experts routinely deliver. The trial Court had been reasonably liberal in allowing expenditures for Defense Counsel when requested.

The failure to properly prepare for the sentencing phase of the trial amounted to ineffective assistance of counsel.

(Tab R. 28, pp. 84-85).

In examining both trial counsel's failure to collect documentary evidence and to hire a mitigation expert on direct appeal, the Court of Criminal Appeals wrote:

After reviewing the appellant's claims, we conclude that he has not satisfied his burden of proving that his counsel's performance was deficient and that that deficient performance prejudiced him. Although [Williams] makes broad allegations, he has not supported them factually. For example, although he contends that counsel should have presented a mitigation expert and documentary evidence during the penalty phase of his trial, he has not alleged what additional evidence an expert could have presented or what documentary evidence existed that counsel did not present. . . . Thus, although he has made several allegations, the appellant has not shown that his attorneys performed in a deficient manner and that their allegedly deficient performance prejudiced him.

*Williams*, 795 So. 2d at 784, *aff'd*, 795 So. 2d 785 (Ala. 2001), *cert. denied*, 534 U.S. 900 (2001).

Respondent argues that these claims were addressed on the merits by the state court, and that Williams cannot show that the state court's adjudication is either contrary to or an unreasonable application of federal law, or an unreasonable determination of the facts in light of the evidence. (Doc. 14, pp. 38-39). This court's own review of the record persuades it that the state court's assessment of the evidence and conclusions drawn from it are not

contrary to or an unreasonable application of federal law, or not an unreasonable determination of the facts in light of the evidence.

For trial counsel to fail to present in documentary form the same evidence that was given as testimony was not unreasonable. Petitioner did not present any facts that would suggest a different outcome based on a different presentation of the same evidence. Further, no facts support that trial counsel's failure to hire a mitigation expert would have provided a different outcome. In fact, Williams's trial counsel did gather information and interview and present witnesses, much of the same things that Williams complains should have been done by an expert. These empty allegations are devoid of factual support. The *Strickland* decision very clearly mandates that courts are to presume that the actions of counsel were reasonable, and that court review of counsel's representation should be "highly deferential." *Strickland*, 466 U.S. at 689; *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). Absent some clear explanation by Petitioner about how his attorneys were deficient in presenting mitigation evidence and how the defendant was prejudiced, the court may not speculate about the facts of the case. As such, these claims do not allege facts that support a *Strickland* claim and, therefore, lack merit..

### III.B.ii.    Trial counsel ineffective for failing to thoroughly investigate Williams's history.

Williams also contends in his amended habeas petition that trial counsel was ineffective in failing to investigate Williams's history, including his family life, home life, drug, alcohol and sexual abuse, mental issues, and abandonment. (Doc. 5, pp. 41-45, 46-53).

91

Addressing this assertion, the court has compared the allegations made in the second amended Rule 32 petition (Tab R. 41, Claim VIB., pp. 220-225), with the expanded legal and factual allegations proffered in support of this claim in the instant amended habeas petition.[23] In applying the proper standards of habeas review, this court must view the state courts' disposition of the claim as Petitioner presented it to the state courts in the second amended Rule 32 petition, not as he more fully fleshed it out in the instant amended habeas petition.

In examining the claim during collateral appeal, the Rule 32 court wrote:

In paragraphs 54-57 of his second amended Rule 32 petition, Williams summarizes what, he contends, trial counsel could have discovered if they had conducted a proper mitigation investigation.  Williams contends trial counsel would have discovered that he lived with different family members during his life and did not meet his father until he was 14 years old.  Williams contends that he felt abandoned by his mother and father.  According to Williams, trial counsel failed to discover that several of Williams' family members suffered from mental illnesses.  Trial counsel did not discover that a serious knee injury ended Williams' high school basketball career and that the death of his grandfather caused him to become depressed.  Williams contends he attempted to better himself by joining the Job Corp, but he was thrown out because he got into a fight.  According to Williams, his battle with psychological effects of child abuse and excessive drinking exacerbated his problems.  (Amended petition at pp. 37-39)(FN4 In his pretrial mental evaluation, "[Williams] denied [a] history o[f] childhood sexual, emotional, or physical abuse."  (Pre-trial Mental Evaluation at p. 2)

Williams appears to completely ignore what his trial counsel **did** present in mitigation at the penalty phase of the trial.  During the penalty phase of Williams' trial, trial counsel called Williams' mother, Charlene Williams, and his aunt, Eloise Williams, to testify.  Charlene testified she was unmarried and 16 years old when Williams was born.  (R. 553)  Charlene said that

_____

[23]  The amended habeas petition provides a more detailed discussion of Williams's childhood, early home life, sexual abuse, psychological issues, abandonment and alcohol and drug use.  (Doc. 5, pp. 41-65).

Williams had to live with her mother and aunt part of the time because she was too young to care for him. (R. 554) Charlene said that Williams lacked a male figure growing up and that Williams' father did not support him or have any kind of relationship with him. Id. Charlene indicated that Williams attended church growing up. Charlene stated that a serious knee injury ended Williams' high school sports career and that he quit school before graduating. After he hurt his knee, Charlene said that Williams "lost all hope." (R. 555) According to his mother, Williams was unable to find a job and started hanging out with "a rough crowd." (R556) Charlene stated Williams tried to "straighten up" by joining the Job Corp, but he was kicked out after he got into a fight. (R. 556, 557) Charlene said that when he returned from Job Corp that he lived with her, that he started "hanging out a lot" and that he slept all day and stayed up all night. (R. 558) Charlene indicated that Williams had never been a problem child. Id.

Williams other mitigation witness was his aunt, Eloise Williams. Eloise stated she had known Williams all his life and indicated that Williams' home life "was not very good." (R. 561) Eloise described Williams spending time with family members and stated that "[h]e did not have a stable home." Id. Eloise said that Williams' father "was never around" and that his mother did not visit very often. (R. 562) Eloise described Williams as being "not very happy" as a child, that he was "sad and withdrawn" because he wanted to be with his mother. Id. Eloise described Williams as being a "fairly good student" that could have done better, but that he did not apply himself because "he was unhappy." (R. 564) Eloise said Williams was close to his grandfather and uncle, but that they died. Eloise stated Williams had hopes of a basketball career but a serious knee injury ended those hopes. Id. Eloise said not long before Williams murdered the victim that she noticed him change – drinking and possibly doing drugs. (R. 565) Eloise said she had talked to Williams about the murder and that he said he was sorry, had repented, and "asked the Lord to forgive him." (R. 566)

The testimony elicited by Williams' trial counsel from his mother and aunt during the penalty phase, plus Williams' statements during his pre-trial mental evaluation completely destroy Williams' allegations that "[t]rial counsel's ineffectiveness deprived [Williams] of his constitutionally protected right to put any relevant evidence before the sentencing body during a capital proceeding." (Second amended petition at p. 40) Trial counsel clearly presented substantially the same evidence that Williams now contends should have been presented in mitigation. Trial counsel is not ineffective for failing

93

to present cumulative evidence.  See Boyd v. State, 2003 WL 22220330, at *19 (holding that Boyd trial counsel was not ineffective for not presenting more testimony during the penalty phase because it would have been cumulative of "testimony that was actually elicited by Boyd's counsel during the penalty phase of trial").  The Court finds that Part VI.B of Williams' second amended Rule 32 petition fails to state a claim or establish that a material issue of law or fact exists as required by Rule 32.7(d); therefore, it is without merit and is denied.

(Tab R 59, p. 250).

The Respondent asserts that the state court's decision is entitled to a presumption of correctness and deference, unless it is contrary to, or an unreasonable application of federal law.  (Doc. 14, p. 37).  This court agrees and concludes that the state court's adjudication on the merits is not contrary to *Strickland*.  Nothing indicates further cumulative evidence regarding Williams's family life, home life, problems with drugs, alcohol, mental issues, sexual abuse, and abandonment would have lead to a different outcome. In fact, during the sentencing hearing, the trial judge stated: "I have quite a bit of evidence concerning the defendant's background, his home life, and in fact, some of his family members testified to that."  (Tab R. 25, p. 602).

Furthermore, courts have noted that evidence of drug and alcohol abuse "often has little mitigating value and can do as much or more harm than good in the eyes of the jury." *Crawford v. Head*, 311 F. 3d 1288, 1321 (11th Cir. 2002); *see also Haliburton v. Secretary for the Dep't of Corr.*, 342 F.3d 1233 (11th Cir. 2003).  Because of the double-edged sword such evidence presents, courts give counsel great deference in the decision whether to resort to it. The state court's conclusion that counsel cannot be faulted for failing to further

94

investigate Petitioner's family background is not an objectively unreasonable application of *Strickland*. This claim, therefore, is due to be denied.

### IIIBiii. Trial counsel ineffective for failing to interview Allister Cook

In both his amended habeas petition and his second amended Rule 32 petition, Williams alleges that trial counsel was ineffective for failing to interview Alister Cook, Williams's friend, because Cook could have testified regarding Williams's alcohol consumption on the days leading up to the offense. (Doc. 5, p. 49; Tab R. 41, Claim VI.C., p. 225). The Rule 32 court does not specifically address this factual assertion. Therefore, this court must determine whether the implicit rejection of the claim was an unreasonable application of Supreme Court law.

This issue has been raised in several forms, all amounting to the same contention that Williams's use of alcohol and drugs on the night of the offense negated the intent required for capital murder. No one disputed that Williams had consumed illegal substances in the hours leading up to the offense. This court has already determined that trial counsel was not ineffective for failing to hire an expert to testify regarding the combined effects of alcohol, marijuana and cocaine. (Claim II.B.iii). Likewise, this same testimony would serve no greater purpose if presented by a friend. Additionally, as stated above in Claim III, courts have noted that evidence of drug and alcohol abuse is a double-edged sword and trial counsel are given great deference in the decision about presenting such evidence. *See Crawford v. Head*, 311 F. 3d 1288, 1321 (11th Cir. 2002); *see also Haliburton v. Secretary for the Dep't*

*of Corr.*, 342 F.3d 1233 (11th Cir. 2003).  Petitioner has presented no facts that demonstrate that trial counsel was deficient in failing to interview and present testimony from Alister Cook.

Therefore, this court finds that trial counsel's failure to present testimony from Alister Cook regarding Williams's drug habits on the night on the offense was not objectively unreasonable.  This claim is due to be denied.

### IIIBiv.    Trial counsel ineffective for failing to adequately interview and prepare the penalty phase witnesses

In both the amended habeas petition and the second amended Rule 32 petition, Williams also asserts that trial counsel was ineffective for failing to adequately interview and prepare Williams's mother, Charlene, and aunt, Eloise, to testify in the penalty phase.  (Doc. 5, pp. 57-59; Tab R. 40, Claim VI.C.i., p. 226).  These are virtually the same claims, with the exception that the amended habeas petition is expanded to include more factual allegations and legal arguments.  In applying the proper standards of habeas review, this court must view the state courts' disposition of the claim as it was presented to the state courts in the second amended Rule 32 petition, not in its expanded form in the instant amended habeas petition. In his second amended Rule 32 petition, Williams states:

> In preparation for the mitigation phase of Mr. Williams' trial, trial counsel
> unreasonably failed to familiarize themselves with what information the
> witnesses could testify to and failed to discuss lines of questioning with the
> witnesses.  Collectively, trial counsel billed the court for less than ten hours of
> time that conceivably could have been spent conducting mitigation interviews
> and witness preparation.  Mr. Williams does not suggest that trial counsel
> should have behaved unethically by coaching witnesses.  But there is a

fundamental distinction between putting words in a witness' mouth – which must not be done – and throughly interviewing a witness to learn what words will come out of the witness' mouth – which must be done. There is simply no tactical justification for trial counsel's failure to adequately interview and prepare mitigation witnesses. *See Cunningham*, 928 F.2d at 1018-19. This failure deprived Mr. Williams of his right to effective assistance of counsel, as provided by Article I, § 6 of the Alabama Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.

(Tab R. 41, Claim VI.C.i., p. 224).

Respondent argues that this claim is procedurally defaulted because it failed to meet the requirements of Rule 32.6(b) according to the state court, but *Borden* compels this court to find that the claim has not been procedurally defaulted. Thus, the court will address the reasonableness of the Rule 32 court's decision.

In examining this claim during the Rule 32 appeal process, the Rule 32 court wrote:

The allegation . . . is vague and non-specific. Williams fails to argue in his second amended Rule 32 petition specifically how trial counsel's preparation of his mother and aunt was deficient or indicate what questions they could have been asked that would have elicited additional mitigating evidence that would have been so compelling it could have made a difference in the outcome of the penalty phase of the trial or in his sentence. Further, Williams fails to identify . . . any additional mitigation witnesses that his trial counsel could have interviewed or could have called to testify at the penalty phase of trial. The Court finds that the allegation . . . fails to comply with the specificity and full factual pleading requirements of Rule 32.6(b), Ala.R.Crim.P.; therefore, it is summarily dismissed.

(Tab R. 59, p. 254).

This court finds that the decision of the Rule 32 court was reasonable under *Strickland*. Petitioner does not present any evidence that tends to demonstrate that trial counsel fell below an objective standard of reasonableness, or that Petitioner was prejudiced by trial counsel's

performance.  Simply stating that the testimony from the mitigation witnesses was inadequate is insufficient.   The burden is on the Petitioner to allege facts to support his claim. Additionally, the information that Williams contends was not presented during the penalty phase is cumulative.  Petitioner's mother and aunt testified regarding Williams's unstable home life as a child, the disappointment he faced when his basketball career ended with knee injury, how he was ineligible to graduate from high school, that he joined the job corps but was dismissed from the program due to a fight, that he returned home, could not find employment, hung out with the wrong crowds, did not seem to be himself, and was drinking alcohol.  Petitioner has not been able to demonstrate why additional facts regarding these same life altering events would have changed the outcome.  Petitioner has not overcome that presumption that counsel performed reasonably based on the evidence presented.  Therefore, Petitioner is denied relief on this claim.

### III.B.v.        Trial counsel failed to compile Williams's history of abuse and neglect

In his amended habeas petition, Williams also claims that trial counsel failed to discover and present material details that would have supported a mitigation theory based on Williams's history of abuse and neglect.  (Doc. 5, p. 60; *see also* pp. 45, 53).   This claim included a list of family members that Williams contends were willing to testify at the penalty phase regarding Williams's history of abuse and neglect.  A similar claim was presented on collateral appeal.  (Tab R. 41, pp. 226-27).

Respondent answers that this claim is procedurally barred because it was dismissed on

an independent and adequate state law ground.  (Doc. 14, p. 40).  A decision based on Rule

32.6(b) is a decision on the merits for purposes of federal habeas review, so in the absence of

procedural default, this court will now examine the reasonableness of the Rule 32 court's

decision.

In response to Williams' claim, the Rule 32 court wrote:

> In Waters v. Thomas, 46 F. 3d 1506, 1514 (11th Cir. 1995) (en banc), the
> Eleventh Circuit held that "[t]he mere fact that other witnesses might have been
> available or that other testimony might have been elicited from those who
> testified is not a sufficient ground to prove ineffectiveness of counsel."
> Further, in Thomas v. State, 788 So. 2d 860, 893 (Ala.Crim.App. 1998), the
> Alabama Court of Criminal Appeals held that "[a] claim of failure to call
> witnesses is deficient it if does not show **what** the witnesses would have
> testified to and **how** that testimony might have changed the outcome")
> (emphasis added).  Williams fails to proffer in his second amended Rule 32
> petition what specific facts a particular witness could have testified about or
> argue how much testimony would have been mitigating.  Indeed, Williams does
> not identify a single specific instance of abuse inflicted on him by a specific
> family member in his second amended petition.  Further, even if members of
> Williams' family would have been willing to testify about alleged instances of
> abuse, the State would have been able to rebut them with Williams' own words.
> In his pre-trial mental evaluation report, Dr. Vonceil Smith stated that
> "[Williams] denied [a] history of childhood sexual, emotional, or physical
> abuse."  Trial counsel cannot be ineffective for not presenting mitigating
> evidence that either does not exist or that would have been directly refuted by
> Williams' own statements to a mental health professional.  The Court finds that
> the allegation . . . fails to meet the specificity and full factual pleading
> requirements of Rule 32.6(b), Ala.R.Crim.P.; therefore, it is summarily
> dismissed.

(Tab R. 59, pp. 255-56).

The court finds the decision of the Rule 32 court reasonable under *Strickland*; the facts

of this claim fail to demonstrate a *Strickland* claim.  The Rule 32 court correctly identified the

inherent problems in Petitioner's claim.  In his amended habeas petition, Williams spends a considerable amount of time discussing what facts regarding abuse and neglect trial counsel could have revealed had trial counsel performed an adequate investigation.  However, Petitioner does not even attempt to explain how presenting those additional cumulative facts would have changed the outcome.  Even if the evidence had been fully presented to the court and jury during the sentencing phase, it is at least debatable, and therefore, objectively reasonable, that it would not have swayed the sentencing decisions.

Furthermore, evidence of childhood abuse, like that of drug and alcohol abuse, often can be a double-edged sword, perhaps doing good or perhaps doing harm.  For example, in *Haliburton v. Secretary for the Dep't of Corr.*, the Eleventh Circuit Court of Appeals quoted the testimony of an attorney on the difficulty of the decision to present such evidence:

> At the state evidentiary hearing, Bailey testified that he chose not to present evidence about Haliburton's abusive background in part because such evidence "can paint an appealing picture of how your client was abused and all those factors lead up to him doing what [he] did and you may convince the jury of that absolutely; but you may also convince them that, paint a picture of Frankenstein."

342 F.3d 1233, 1244, n. 30 (11th Cir. 2003).  Although *Haliburton* presented a different case with different issues, involving a different petitioner, the difficulty in deciding whether to present childhood-abuse evidence remains the same.  The effect such evidence might have on the jury cannot be determined to be universally favorable.  That being the case, the court cannot simply assume that if counsel had presented such evidence, it would have had a mitigating effect; it might have had just the opposite effect.  Thus, counsel's failure to present

in full detail and from numerous witnesses' testimony regarding Petitioner's childhood abuse and neglect was not objectively unreasonable.  Petitioner is not due relief on this claim.

### II.B.vi.   Trial counsel failed to investigate Williams's history of mental illness.

Williams also asserts that trial counsel failed to adequately investigate his history of mental illness as a mitigating factor.  (Doc. 5, pp. 60-62; *see also* p. 45).  This same claim was presented in Williams's second amended Rule 32 petition, with the exception that the Rule 32 petition was very abbreviated and alleged this claim in two sentences, as follows:

> Trial counsel failed to investigate the mental illness that pervades Mr. Williams' family.  Lacking this background information, trial counsel was unable to explore the likely connection between Mr. Williams' mental health and his involvement in Ms. Rowell's death.

(Tab R. 41, Claim VI.C.iii., p. 227).  In applying the proper standards of habeas review, this court must view the state courts' disposition of the claim as it was presented to the state courts in the second amended Rule 32 petition, not as it is more fully fleshed out in the instant amended *habeas* petition.

Respondent incorrectly asserts that this claim is barred from federal habeas review because the state court found it to be insufficiently pled under independent and adequate state law ground.  (Doc. 14, p. 41). The court, therefore, will consider the reasonableness of the Rule 32 court's decision under federal law. The Rule 32 court stated:

> Williams has failed to identify . . . , a single member of his family that has ever suffered from any form of mental illness or argue how such a fact, even if true, might have been mitigating.  Further, the pre-trial mental evaluation performed by Dr. Voceil Smith "failed to disclose signs consistent with [a] diagnosis of

> formal thought disorder, major affective disturbance, or severe cognitive impairment." Smith also stated that, in his opinion, the "specific acts engaged in [by Williams] required planning, forethought, and were inconsistent with acts typically attributed to individuals with severe psychiatric disturbance." (State's Exhibit B at p. 7) The Court finds that the allegation . . . fails to meet the specificity and full factual pleading requirement of Rule 32.6(b); therefore, it is summarily dismissed.

(Tab R. 59, pp. 256-57).

The decision by the Rule 32 court was reasonable. No evidence in the record supports the allegation that Williams suffered from a serious mental illness. In fact, the evidence in the record supports the opposite finding. Williams was found competent to stand trial in the pretrial mental evaluation. Further, in the sentencing order the trial judge found "by a preponderance of the evidence that the defendant was not under the extreme mental or emotional disturbance at the time of the offense." (Tab R. 55, p. 108). No reasonable probability exists that an investigation into Williams's or his family's mental history would have changed the outcome of the penalty phase.

Under these circumstances, it was not unreasonable for trial counsel to fail to present a mental illness as a mitigating factor. This claim is without merit and due to be denied.

### III.B.vii.    Trial counsel failed to show that Williams's background contributed to him committing capital murder

Williams also contends that trial counsel failed to show that Williams's background contributed to his committing capital murder. (Doc. 5, p.61). This claim is very similar to its Rule 32 predecessor (Tab R. 41, p. 227), except that the amended habeas petition included additional factual allegations that are not properly before this court. In his second amended

Rule 32 petition, Williams states:

> It is well known in the mental health profession that a person who commits a homicide in connection with a sexual assault typically fits a pattern. *See, e.g.*, Carl P. Malmquist, *Homicide, A Psychiatric Perspective* ch. 10 (American Psychiatric Press, 1996). According to Malmquist, many mental health professionals have suggested that three formative events are present in someone with a propensity to commit a homicide in connection with sexual assault: (1) direct physical or sexual trauma; (2) blocking of attachments that should have taken place between child and primary caretaker; (3) failure of an adult to serve as a role model. *Id.*

> Not everyone with those characteristics goes on to commit a homicide in connection with a sexual assault, but the point is that someone like Mr. Williams, who had all three factors present, is put at a distinct disadvantage by events that happened during his formative years. By failing to bring forth all relevant facts relating to Mr. Williams' formative years, trial counsel presented the jury with an incomplete and out-of-context picture of Mr. Williams. Trial counsel's failure resulted in the jury making its sentencing determination based on the State's unrebutted guilt-phase evidence and the brief testimony of two defense witnesses during the penalty phase. Trial counsel's unreasonable failures prejudiced Mr. Williams by depriving him of his rights under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, Article I, § 6 of the Alabama Constitution, and Alabama law.

(Tab R. 41, Claim VI.C.iv., pp. 227-28).

Respondent again incorrectly asserts that this claim is precluded from federal review because it was denied on an independent and adequate state law ground. (Doc. 14, p. 40). In the absence of procedural default, the court will address the reasonableness of the Rule 32 court's decision under federal law.

In denying this claim, the Rule 32 court wrote:

> The crux of Williams' allegation . . . appears to be that his trial counsel were somehow ineffective for not presenting a mental health expert. Williams' only support . . . is to cite the Court to a 1996 article in the <u>American Psychiatric</u>

Press and argue that trial counsel were ineffective for failing to present evidence that Williams meets "a pattern" associated with people that commit murder during sexual assault.

In Horsley v. Alabama, 45 F.3d 1486, 1495 (11th Cir. 1995), the Eleventh Circuit held:

> To prove prejudice by failure to investigate and failure to produce a certain kind of expert witness, a habeas petitioner must demonstrate a reasonable likelihood that an ordinary competent attorney conducting a reasonable investigation would have found an expert similar to the one eventually produced.

Similarly, the Alabama Court of Criminal Appeals has held that:

> claims of failure to investigate must show with specificity what information would have been obtained with investigation, and whether, assuming the evidence is admissible, its admission would have produced a different result.

Thomas v. State, 766 So.2d 860, 892 (Ala. Crim. App. 1998), citing, Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993).

Williams fails to identify to the Court . . . by name or field of expertise **any** expert in **any** field that would have testified at trial to the purported "facts" he now alleges. . . . See Boyd v. State, 2003 WL 22220330, at *13 (holding that Boyd's claim his trial counsel failed to procure expert assistance failed to state a claim because "Boyd's petition [did] not disclose what type of expert counsel should have obtained"). The Court finds that the allegation . . . fails to meet the specificity and full factual pleading requirement of Rule 32.6(b), Ala.R.Crim.P.; therefore, it is summarily dismissed.

(Tab R. 59, pp. 42-43[24]).

This court finds the decision of the Rule 32 court reasonable; this claim is without

---

[24] Page 42 of the Rule 32 court's opinion is missing from the official record. Therefore, the page numbers found on the bottom of the page are used in this reference instead of the page numbers used for the record, which are at the top right-hand corner of the page.

merit, and is no different than the claim regarding trial counsel's failure to investigate Williams's mental history.  This claim is another unsubstantiated allegation that cannot be the basis of habeas relief.  Further, had such evidence been presented to the jury during the sentencing phase, nothing even suggests that it would have altered the outcome.  Without more, this claim is due to be denied.

### III.B.viii.   Trial counsel failed to present Williams's redeeming characteristics

Williams also contends that trial counsel failed to develop and present his redeeming characteristics, including that he was a likeable kid, participated in competitive sports, attended church, and had an extraordinary affection for children. (Doc. 5, pp. 62-63). Williams asserts that trial counsel failed to adequately investigate potential mitigating factors, and that his "death sentence was the damning consequence of trial counsel's failure to conduct a constitutionally adequate mitigation investigation." *Id*. at p. 64.   This claim is virtually the same as its second amended Rule 32 predecessor, which states:

> Trial counsel also failed to develop and present evidence about any of Mr. Williams' redeeming personal characteristics.  Capital defendants are entitled to present as mitigation evidence "any aspect of a defendant's character or record."  *Lockett v. Ohio*, 438 U.S. 586, 604 (1978).  Despite having this constitutionally-afforded opportunity, trial counsel failed to investigate and present any of Mr. Williams' redeeming characteristics.  This failure denied Mr. Williams the right to effective assistance of counsel under Article I, § 6 of the Alabama Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.
>
> Mr. Williams was a successful athlete and [a] popular student during his time at Ashville High School, and people accessible to trial counsel possessed a wealth of information about Mr. Williams' redeeming characteristics.  Those

105

people included the individuals listed above at ¶ 61 and the following: Larry Touart[25] (coach), Brad Williams (friend), Bernard Bozeman (friend), Alister Cook[26] (friend), Tamika Brewster[27] (friend), Susan Reynolds (friend), Terry Jones[28] (minister), and other friends and former teammates. These witnesses, and others, could have testified to the details discussed in ¶¶ 54-57 above. In addition, relatives such as Crystal Thomas and Gwen Davis would have testified about Mr. Williams extraordinary affection for children. Such testimony would have been crucial in this case, where young children were found at the crime scene. Trial counsel talked to neither Ms. Thomas or Ms. Davis even [though] they were living in Ragland and Gadsden, respectively, during counsels' representation of Mr. Williams. Therefore, counsel decided against presenting evidence of Mr. Williams' normally high affection for children without first investigating whether such evidence was available.

(Tab R. 41, p. 228).

The Rule 32 court held that at least part of this claim was procedurally defaulted because it failed to meet the specificity and full factual pleading requirements under Rule 32.6(b) (Tab R. 258-59). However, under *Borden*, the Rule 32 court's decision constituted a decision on the merits, and the claim is not procedurally defaulted. Therefore, the court will address the reasonableness of the state court's decision under *Strickland*.

---

[25] Respondent asserts that this claim, as it relates to Larry Touart, is procedurally defaulted because he was not mentioned in any of the previous pleadings. (Doc. 14, p. 45). That assertion is incorrect. *See* Tab R. 41, ¶ 66, p. 229.

[26] Respondent asserts that this claim, as it relates to Alister Cook, is procedurally defaulted because he was not mentioned in any of the previous pleadings. (Doc. 14, p. 43). That assertion is incorrect. *See* Tab R. 41, ¶ 66, p. 229.

[27] Respondent asserts that this claim, as it relates to Tamika Brewster, is procedurally defaulted because she was not mentioned in an of the previous pleadings. (Doc. 14, p. 43). That assertion is incorrect. *See* Tab R. 41, ¶ 66, p. 229.

[28] Respondent asserts that this claim, as it relates to Alister Cook, is procedurally defaulted because he was not mentioned in any of the previous pleadings. (Doc. 14, p. 45). That assertion is incorrect. *See* Tab R. 41, ¶ 66, p. 229.

In denying this claim, the Rule 32 court wrote:

Concerning his assertion his trial counsel should have presented testimony that he was a popular student and successful athlete in high school, Williams merely refers the Court to paragraphs 54-57 of his second amended petition and then lists the names of individual that, he contends, were willing to testify during the penalty phase. Further, Williams fails to proffer in his second amended Rule 32 petition specifically what a particular witness could have testified about or argue how such testimony would have been so mitigating it could have caused a different result at trial. See Thomas v. State, 766 So. 2d 860, 893 (Ala.Crim.App. 1998) (holding that "[a] claim of failure of call witnesses is deficient if it does not show **what** the witnesses would have testified to and **how** that testimony might have changed the outcome") (emphasis added). The Court finds that this allegation in Part VI.C.(v) of Williams' second amended Rule 32 petition fails to meet the specificity and full factual pleading requirements of Rule 32.6(b), Ala.R.Crim.P; therefore, it is summarily dismissed.

. . . Williams contends that [Crystal] Thomas and [Gwen] Davis would have testified to "[his] extraordinary affection for children." Second petition at p. 44) Williams argues that "[s]uch testimony would have been crucial in this case, where young children were found at the scene." Id.

In Chandler v. United States, 218 F.3d at 1322, the Eleventh Circuit observed the "every reasonable trial lawyer knows, character witnesses that counsel called could be cross-examined by the Government." In Brooks v. State, 695 So. 2d 176, 181 (Ala. Crim. App. 1996), the Alabama Court of Criminal Appeals held that:

[Brooks'] trial counsel's decision not to put on any character evidence was a strategic decision and one that was probably wise in this case – in light of the fact that there was evidence at the hearing that the state would have produced a lit [sic] of victim impact evidence had [Brooks] presented his character witnesses.

Further, in Jackson v. State, 791 So. 2d 979, 1026 (Ala. Crim. App. 2000), the Alabama Court of Criminal Appeals found that:

To rebut Jackson's claim of good character, the State cross-examined one of Jackson's character witnesses regarding

107

Jackson's prior misdemeanor assault conviction and his suspension from school for[m] carrying a gun. This cross-examination was proper both to test the witness's credibility as to his knowledge of Jackson's character and to rebut the mitigating evidence offered by [] Jackson.

The Court is aware that if Williams' trial counsel had offered evidence he had some "extraordinary" affection for children that the jury and the trial court would have been required to give it consideration. The Court is also aware that the jury and trial court would not have been required to find such evidence was actually mitigating. To state the obvious, character evidence is a two-edge sword. The same evidence that might be considered mitigating in one case could be devastating in another. Williams knew that the victim's two young children were in the house. Despite that, he entered the victim's bedroom and proceeded to rape and murdered her. Had trial counsel offered evidence that Williams had an extraordinary affection for children, this Court is confident beyond any reasonable doubt that the prosecution would have, at a minimum, vigorously argued to the jury that, under these circumstances of this case, it was not mitigating. Testimony in this vein would have also allowed the State to introduce victim impact evidence, including evidence of the possible psychological effects that the victim's children might suffer in the future due to being present at the same time [their] mother was brutally murdered. Williams was in no way prejudiced because this evidence was not presented to the jury during the penalty phase. The court finds this allegation is without merit; therefore, it is denied. Rule 32.7(d), Ala.R.Crim.P.

(Tab R. 59, pp. 258-59).

This court finds the decision of the Rule 32 court reasonable under federal law. Even viewing the facts sympathetically for Petitioner, Williams has not carried his burden to show that his trial counsel was deficient or how testimony regarding his high school popularity might have changed the outcome. Petitioner's aunt and mother gave testimony similar to that testimony Williams claims was not presented. Williams's mother, Charlene, testified that Williams regularly attended church as a child (Tab R 19, p. 554, line 22-24 – p. 555, line 1), played football in junior high school and basketball in high school (Tab R. 19, p. 555, lines 7-11), and that he was not a problem child (Tab

108

R. 19, p. 558, lines 21-23).  Williams's aunt, Eloise, testified that Williams did not have a significant

criminal history (Tab R. 19, p. 563, lines 1-2) and was not a trouble maker growing up (*Id.*, lines 4-8).

All of the information Williams complains should have been presented was presented.  At best,

Williams argues that the same evidence should have been presented through different witnesses.

Under no circumstances can he satisfy the *Strickland* standard.  Therefore, trial counsel's decisions

regarding mitigating witnesses was not objectively unreasonable.  This portion of this claim is without

merit.

        The state court's finding that trial counsel was not ineffective for failing to present to the jury

Williams's extraordinary affection for children is entitled to a presumption of correctness under 28

U.S.C. § 2254.  Nowhere has Petitioner attempted to show that these findings and conclusions are

contrary to or an unreasonable application of *Strickland*, or that he suffered any prejudice based on

counsel's failure to present such testimony.  Indeed, this court finds that it was objectively reasonable

that trial counsel did not present such testimony, as its mitigating value, if any, would have been

greatly diminished by the State's response.  This claim is due to be denied.

        In summary, Petitioner is entitled to no habeas relief on the claim that he received ineffective

assistance of counsel based on their failure to investigate or present mitigation evidence.  Petitioner

has not shown "cause *and* prejudice" to excuse the procedural defaults.  This claim is meritless and

due to be denied.

**CLAIM IV.      APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN VIOLATION OF THE
            FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
            CONSTITUTION, THEREBY DEPRIVING PETITIONER OF A MEANINGFUL APPEAL**

        Claims for ineffective assistance of appellate counsel are analyzed under the same *Strickland*

standard as is applicable to claims of ineffectiveness at trial.  *Johnson v. Alabama*, 256 F.3d 1156

(11th Cir. 2001); *Clark v. Crosby*, 335 F.3d 1303 (11th Cir. 2003).  In *Johnson*, the Eleventh Circuit observed:

> It is difficult to win a *Strickland* claim on the grounds that appellate counsel pressed the wrong legal arguments where the arguments actually pursued were reasonable in the circumstances.  We have emphasized that even in a death penalty case, counsel must be "highly selective about the issues to be argued on appeal . . . ."  *United States v. Battle*, 163 F.3d 1, 1 (11th Cir. 1998).  The district court, having considered the record and [counsel's] testimony during the state post-conviction proceeding, found that [counsel] had carefully considered many of the claims now raised in appeal, but ultimately chose to pursue the claims he felt were most likely to prevail and winnow out the arguments he thought were less persuasive.

*Id.* at 1188.

Thus, keeping in mind the presumption of reasonableness favoring the decisions of counsel, a claim of ineffective assistance of appellate counsel will fail unless the Petitioner can establish that counsel's choice of issues to raise on appeal was unreasonable under the circumstances.  The fact that potentially meritorious issues were not raised on appeal does not establish, by itself, ineffectiveness.  Rather, the court must assess whether any reasonable attorney would have chosen the issues raised in lieu of the omitted issues.  If so, counsel's choice of issues cannot be second-guessed.  Likewise, issues lacking merit cannot establish the requisite prejudice under the *Strickland* standard.

Turning to the allegations of this case, Petitioner contends that his appellate counsel was ineffective for failing to raise the ineffective assistance of counsel claims above.  (Doc. 5, pp. 65-66).  Petitioner alleged this same claim in his second amended Rule 32 predecessor (Tab R. 41, p. 239), with the exception that the amended habeas petition is expanded to include that appellate counsel was ineffective for failing to raise a *Batson* claim.  (Doc. 5, p. 66).

The Rule 32 court addressed Petitioner's allegation of ineffective assistance of appellate counsel as follows:

110

In Part VII, paragraph 67 on pages 44-45 of Williams second amended Rule 32 petition, he alleges that his appellate counsel were ineffective for not raising on direct appeal the allegations of ineffective assistance of trial counsel he has pleaded in his second amended Rule 32 petition.  The Court has reviewed the allegations of ineffective [assistance] of trial counsel in Williams' second amended Rule 32 petition and finds that these allegations fail to contain specific facts that, if true, would establish trial counsel's performance was deficient and caused Williams to be prejudiced as required by <u>Strickland</u>.  Williams' allegations he received ineffective assistance from his trial counsel either fail to meet the pleading requirement of Rule 32.6(b) or fail to state a claim as required by Rule 32.7(d), Ala.R.Crim.P.  <u>See Colbert v. State</u>, 733 SO. 2d 901, 903 (Ala. Crim. App. 1997)(holding that "[If trial counsel was not ineffective, then appellate counsel could not have been ineffective for failing to challenge on appeal trial counsel's effectiveness"); <u>see also</u> <u>Gibby v. State</u>, 753 So. 2d 1206, 1208 (Ala.Crim. App. 1999)(holding that "[c]ounsel cannot be ineffective for failing to raise nonmeritorious claims").  The Court finds that the allegation in Part VII fails to state a claim or establish that a material issue of fact or law exists as required by Rule 32.7(d); therefore, it is denied. [The] Court further finds that Williams has failed to plead facts in his second amended Rule 32 petition sufficient to state a meritorious claim of ineffective assistance of trial or appellate counsel. Rules 32.6(b) and 32.7(d), Ala.R.Crim.P.; *see also Boyd v. State*, 2003 WL 22220330, at *6 (holding that "a Rule 32 petitioner is not automatically entitled to an evidentiary hearing on any and all claims raised in the petition").

(Tab R. 59, p. 261-62).

Respondent asserts that this claim should be denied on several grounds: (1) the state court dismissed this claim because it failed to establish a material issue of fact or law, pursuant to Rule 32.7(d), which is entitled to a presumption of correctness; (2) it was raised in the second amended Rule 32 petition, but then abandoned on appeal because Petitioner either did not brief this issue or address the court's holding; and (3) it was dismissed pursuant to Rule 32.6(b), which is an "independent and adequate" state law ground.  (Doc. 14, pp. 47-48).        In his brief to the Alabama Court of Criminal Appeals on denial of the second amended Rule 32 petition, Williams did include in the heading of Claim VI.A.1. that appellate counsel was ineffective, but with absolutely no

argument accompanying it.[29]  *See* Tab R. 50, p. 14.  Williams mentioned his claim of ineffective

assistance of appellate counsel in his appeal brief to the Alabama Court of Criminal Appeals in the

discussion of claims that were defaulted under Rule 32.6(b), but made no specific argument regarding

this claim.[30]  (Tab R. 50, p. 45, n. 13).  Williams mentioned in his appeal brief to the Alabama Court

of Criminal Appeals that he received ineffective assistance of appellate counsel in his conclusion at

VII, but again, with absolutely no argument.  (Tab R. 50, p. 63).[31]  In light of the above, the Alabama

Court of Criminal Appeals stated that "Williams does not challenge the trial court's ruling as to the

claims of ineffective assistance of appellate counsel" and did not address it further.  (Tab R. 60, p.

7, n. 2).[32]  Alabama Rule of Appellate Procedure 28(a)(7) states, in part, that a brief must contain "[a]

---

[29]  At page 14 of his appellate brief, the following heading appears, but with absolutely no ineffective assistance of appellate counsel argument accompanying it:

1.    The Facts Pled in the Second Amended Petition Establish that Mr. Williams was Denied the Effective Assistance of Trial Counsel and **Appellate Counsel**, Therefore, Summary Dismissal Was Error.
(Tab R. 50, p. 14) (emphasis added)

[30]  On page 45 of his brief to the Alabama Court of Criminal Appeals, footnote 13 reads, "The Court dismissed the following claims in Mr. Williams's Second *Amended Petition*, in part or in whole, for lack of specificity:  . . . **Claim VII (ineffective assistance of appellate counsel)**, (C.230)." (Tab R. 50, p. 45, n. 13) (emphasis added).

[31]  Page 63 of his appellate brief conclusion states:  "For these reasons, Mr. Williams respectfully requests that this Court reverse the Circuit Court's denial of relief, **and find that he received ineffective assistance of counsel both at trial an on direct appeal** in violation of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments for the Federal Constitution, the Alabama Constitution and Alabama law." (Tab. R. 50, p. 63) (emphasis added).

[32]  In his brief to the Alabama Supreme Court, Williams includes his ineffective assistance of *appellate* counsel claim in his argument that all of his ineffective assistance of counsel claims were erroneously dismissed by the Court of Criminal Appeals.  (Tab R. 54, pp. 12-13).  At page 12 of his brief to the Alabama Supreme Court, it states, "At part VII of both the first and second Amended Petitions, Mr. Williams described a claim of ineffective assistance of appellate counsel's performance on the direct appeal of his trial.  This claim referred to the

full statement of the facts relevant to the issues presented for review, with appropriate references to the record...."[33]   Williams's brief on this issue failed to comply with the requirements of Rule 28(a)(7), Ala. R. App. P.  As such, this claim has not been exhausted in state court.  Therefore, the only state court that has ever expressly addressed the claim is the Rule 32 court, which denied the claim on the merits, and alternatively, on procedural grounds.

If a federal claim has not first been exhausted in state court, this court may also find that it is "procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile."  *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (citing *Picard v. Connor,* 404 U.S. 270, 276 (1971) and *Snowden v. Singletary*, 135 F.3d 732, 737(11th Cir. 1998)).  Until recently, this claim would have been deemed procedurally defaulted because it had not been exhausted, and any attempts to exhaust the claim would be futile because of the state's procedural bars on successive petitions and the statute of limitations. Rules 32.2(b) and (c), Ala. R. Crim. P.  However, the Supreme Court recently held in *Martinez v. Ryan*:

> when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-

---

seventeen prior claims of ineffective assistance of counsel and specifically noted that **none** of them had been raised in the direct appeal."  (Tab R. 54, p. 12).  The Alabama Supreme Court affirmed the Alabama Court of Criminal Appeals decision without an opinion.

[33]  In *U.S. v. Gupta*, 463 F.3d 1182, 1195 (11th Cir. 2006), the Eleventh Circuit has also stated, "[w]e may decline to address an argument where a party fails to provide arguments on the merits of an issue in its initial or reply brief. Without such argument the issue is deemed waived. *See Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570, 1573 n. 6 (11th Cir.1989) (deeming issue waived where party fails to include substantive argument and only makes passing reference to the order appealed from)."

> review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. *Cf. Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Cr. 1029, 154 L. Ed. 2d 931 (2003) (describing standards for certificates of appealability to issue).

*Martinez*, 2012 WL 912950 at *8. Therefore, under the Court's ruling in *Martinez*, Williams has demonstrated cause to overcome any procedural default of this ineffective assistance claim.

However, *Martinez* also requires that a habeas petitioner demonstrate prejudice, or that his claim has merit; Williams has not made such a demonstration. As the Rule 32 court noted, and this court further explained above, all of Williams's ineffective assistance of counsel claims were non-meritorious, procedurally defaulted, or both. Appellate counsel's failure to raise these ineffective assistance of counsel claims, even if not the product of a strategic choice, caused no prejudice to the defense. Consequently, this claim is due to be denied.

## CLAIM V.   PROSECUTOR DENIED PETITIONER A FAIR TRIAL AND SENTENCING DETERMINATION BY ENGAGING IN A CONSISTENT PATTERN OF GROSS MISCONDUCT

In his amended habeas petition, Williams combines several allegations of prosecutorial misconduct that were first presented either on direct or collateral appeal. Because the state courts addressed them separately, each claim will be discussed as it was presented to the state courts.

### V.A.   Prosecutor's improper comments regarding aggravating circumstances.

Petitioner first contends that the prosecutor's improper comments during guilt-phase closing arguments denied him his right to a fair trial. (Doc. 5, p. 68). This claim is

substantially similar to Claim XIII, that was presented on direct appeal, which states in

pertinent part:

> The State Prosecutor argued:
>
> These are the kinds of things you can see on TV that happens somewhere else-not in Ashville, Alabama.  This is a **horrendous** case and it deserves a capital-murder verdict.
>
> Marcus Williams contends that this statement in the closing argument of the State Prosecutor was more than mere argument.  This argument was an invitation for the jury to go outside the law and the facts of this case.  This was an invitation for the jury to find more aggravating circumstances than the jury was authorized by law to find.
>
> The law provides in 13A-5-49 (8) Code of Alabama, 1975 that an aggravating circumstance is:
>
> (8) The capital offense was especially heinous, atrocious, or cruel compared to other capital offenses.
>
> It has been held that "heinous" refers to a crime or act that is extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; cruel means designed to inflict a high degree of pain with utter indifference of others. *Johnson v. State*, 399 So.2d 859 (Ala.Cr.App. 1979), aff'd in part and reversed in part 399 So. 2d 873 (Ala. 1981).

(Tab R. 28, pp. 65-66) (emphasis added).

> In its examination of the claim on direct appeal, the Court of Criminal Appeals wrote:
>
> The appellant argues that the prosecutor's comment encouraged the jury to find as an aggravating circumstance that the crime was especially heinous, atrocious, or cruel compared to other capital offenses.  *See* § 13A-5-49(8), Ala.Code 1975.  Because he did not object to the prosecutor's comment at trial, we review this argument for plain error. *See* Rule 45A, Ala.R.App.P.
>
>> FN During the rebuttal portion of the State's penalty phase instructions, the prosecutor referred to the crime as "horrible."

115

(R. 579.) At the close of the trial court's instructions, the appellant asked for a curative instruction, alleging that the use of the word "horrible" implied that the especially heinous, atrocious, or cruel aggravating circumstance was present. However, the appellant subsequently withdrew the request and announced that he was satisfied with the trial court's instruction. (R. 595.)

In reviewing a prosecutor's closing argument, the standard is whether the argument "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

> "In reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract. *Whitlow v. State*, 509 So. 2d 252, 256 (Ala.Crim.App. 1987); *Wysinger v. State*, 448 So. 2d 435, 438 (Ala.Cr.App. 1983); *Carpenter v. State*, 404 So. 2d 89, 97 (Ala.Cr.App. 1980), *cert denied*, 404 So. 2d 100 (Ala. 1981). Moreover, this Court has also held that statements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict. *Orr v. State*, 462 So. 2d 1013, 1016 (Ala.Cr.App. 1984); *Sanders v. State*, 426 So. 2d 497, 509 (Ala.Cr.App. 1982)."

*Bankhead v. State*, 585 So. 2d 97, 106-07 (Ala.Cr.App. 1989), aff'd in relevant part, 585 So. 2d 112, 127 (Ala. 1991), rev'd on other grounds, 625 So. 2d 1146 (Ala. 1993).

> " ' During closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference.' *Rutledge v. State*, 523 So. 2d 1087, 1100 (Ala.Cr.App. 1987), rev'd on other grounds, 523 So. 2d 1118 (Ala. 1988) (citation omitted). Wide discretion is allowed the trial court in regulating the arguments of counsel. *Racine v. State*, 290 Ala. 225, 275 So.

116

> 2d 655 (1973).  'In evaluating allegedly prejudicial remarks by
> the prosecutor in closing argument, . . . each case must be judged
> on its own merits, *Hooks v. State*, 534 So. 2d 329, 354
> (Ala.Cr.App. 1987), aff'd, 534 So. 2d 371 (Ala. 1988), cert.
> denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989)
> (citations omitted) (quoting *Barnett v. State*, 52 Ala. App. 260,
> 264, 291 So. 2d 353, 357 (1973)), and the remarks must be
> evaluated in the context of the whole trial, *Duren v. State,* 590
> So. 2d 369 (Ala. 1991).  'In order to constitute reversible error,
> improper argument must be pertinent to the issues at trial or its
> natural tendency must be to influence the finding of the jury.'
> *Mitchell v. State*, 480 So. 2d 1254, 1257-58 (Ala.Cr.App.
> 1985)(citations omitted).  'To justify reversal because of an
> attorney's argument to the jury, this court must conclude that
> substantial prejudice has resulted.'  *Twilley v. State*, 472 So. 2d
> 1130, 1139 (Ala.Cr.App. 1985) (citations omitted)."

*Coral v. State*, 628 So. 2d 954, 985 (Ala.Cr.App. 1992), aff'd, 628 So. 2d 1004
(Ala. 1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61
(1994).

> "There is no impropriety in a prosecutor's appeal to the jury for
> justice and to properly perform its duty.  '"We view the
> comments as a call for justice, not sympathy, and, thus, conclude
> that they are within the wide latitude allowed prosecutor's in
> their exhortation to the jury to discharge its duty."  *Ex parte
> Waldrop*, 459 So. 2d 959 (Ala. 1984), cert. denied, 471 U.S.
> 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985); *Rutledge v. State*.'
> *Gentry v. State*, 689 So. 2d 894, 906 (Ala.Ct.App. 1994),
> reversed on other grounds, 689 So. 2d 916 (Ala. 1996)."

*Price v. State*, 725 So. 2d 1003, 1033 (Ala.Cr.App. 1997), aff'd, 725 So. 2d
1063 (Ala. 1998), cert. denied, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d
1012 (1999).  Finally, we presume that the jury followed the trial court's
instructions.  *See Taylor v. State*, 666 So. 2d 36 (Ala.Cr.App. 1994), aff'd, 666
So. 2d 73 (Ala. 1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d
856 (1996).

After reviewing the prosecutor's comment in context, we conclude that the
comment was no more than a permissible appeal for justice.  *See Price*, supra.

Furthermore, during the penalty phase of the trial, the State informed the jury that the only aggravating circumstance it would rely on would be that the appellant committed the murder during the commission of a rape or an attempted rape. (R. 546-47, 569.) Additionally, the trial court instructed the jury as follows:

> "The aggravating circumstance that is relied upon by the State in this case is the following: That the capital offense was committed while the defendant was engaged in commission of or attempt to commit rape, robbery, burglary, or kidnaping. You may not consider any other aggravating circumstance other than the one that I have just read to you."

(R. 584) We presume the jury followed the trial court's instructions. *See Taylor*, supra. Therefore, we do not find any plain error in this regard.

*Williams*, 795 So. 2d at 776-77, *aff'd*, 795 So. 2d 785 (Ala. 2001), *cert. denied,* 534 U.S. 900 (2001).

Respondent asserts that this claim is due to the denied because Williams cannot show that the state court's adjudication of the claim was contrary to or an unreasonable application of federal law, or resulted in an unreasonable determination of the facts in light of the evidence. (Doc. 14, p. 50). This court agrees.

In light of the pleading requirements of § 2254 and the reasoning of the Alabama Court of Criminal Appeals, the court finds that Williams has failed to show that the state court's decision was contrary to or an unreasonable interpretation of federal law, or an unreasonable interpretation of the facts in light of the evidence before it. Furthermore, reviewing the trial court's jury instruction in its entirety, this court finds that the trial court properly instructed the jury that the aggravating circumstance on which the State relied was rape, which the jury

found to exist beyond a reasonable doubt.  Continuing from the quoted jury instructions above, the trial judge stated:

> You may not consider in your deliberation any other aggravating circumstance other than the one that I have just read to you.  The fact you have heretofore found the defendant guilty beyond a reasonable doubt of the capital offense of intentional murder during rape in the first degree establishes for the purpose of this hearing the existence beyond a reasonable doubt of the aggravating circumstance relied on by the State.  Because that circumstance that the State relies on for aggravation, is the capital offense was committed while the defendant was engaged in the commission of or attempt to commit rape.  By your verdict yesterday, you have found beyond a reasonable doubt that that circumstance does exist.  So the State has proven beyond a reasonable doubt the existence of one aggravating circumstance, and that is the circumstance they rely on.

(Tab. R. 23, pp. 584-85).  The jury instructions cured any improper argument.  The prosecutor's closing argument did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181, 106 S.Ct. at 2471.  The state court's decision was not an unreasonable application of United States Supreme Court law and thus Petitioner's claim lacks merit and is due to be denied.

### V.B.   Prosecutor's improper comments regarding the evidence presented

Williams argues in both his amended habeas petition and his second amended rule 32 petition that the prosecutor made improper statements that suggested that Williams should have presented evidence that someone else committed the crime and made comments that were unduly burdensome to Williams.  (Doc. 5, p. 67; Tab R. 41, p. 230).   Specifically, during closing arguments, the prosecutor stated, "[i]f Marcus Williams did not commit this crime, who did?  What evidence is there of any other person before you that indicates

someone else did it?  There is none." (Tab R. 10, p. 493).  The prosecutor also commented,
"[h]e wants you to say it can't be capital murder because she didn't get raped until she was
a corpse.  That is the most – the worst thing I can think of for a man to sit down and say he
raped her for fifteen or twenty minutes." (Tab R. 12,  p. 508).  This substantive claim was
presented as Claim VIII in Williams's second amended Rule 32 petition, (Tab R. 41, p. 230).[34]
The Rule 32 court did not issue an opinion on substantive Claim VIII.

Respondent contends that this claim is procedurally defaulted because it was not raised
at trial or on direct appeal, and it was abandoned during the Rule 32 appeal.  (Doc. 14, p. 52).
Contrary to his contention that these claims were exhausted (Tab R. 21, p. 38), Williams failed
to exhaust this substantive claim in his brief to the Alabama Court of Criminal Appeals and
on writ of *certiorari* review to the Alabama Supreme Court.  Williams incorrectly asserts that
he exhausted this claim by presenting it in the brief to the Alabama Court of Criminal Appeals
(Doc 21, p. 38; *See* Tab R. 50, pp. 6, 16).  However, the page cited by Williams refers only
to the claim that trial counsel gave ineffective assistance for failing to object to improper
comments of the prosecutor, not the substantive claim that Williams was prejudiced by the
prosecutor's improper arguments.  On page 6 of his brief to the Alabama Court of Criminal
Appeals, Williams states, "[d]uring the State's guilt phase closing argument, counsel failed
to object to the prosecutor's comment on Mr. Williams' decision not to testify on his own

---

[34] Rule 32 substantive Claim VIII  alleging that the prosecutor denied Williams a fair trial
due to improper comments contains the same grounds for relief as Rule 32 ineffective assistance
of counsel Claims VD and VE, for failing to object to the same alleged improper prosecutorial
comments.

behalf." (Tab R. 50, p. 6). On page 16 of the brief to the Alabama Court of Criminal Appeals, he states, "Trial counsel failed to conduct adequate cross-examinations of the State's witnesses, failed to object to irrelevant and prejudicial evidence introduced by the State, and failed to object when the prosecutor commented on Mr. Williams' decision not to testify." (Tab R. 50, p. 16). Further, Williams incorrectly asserts that he exhausted this claim by presenting it in his brief on writ of *certiorari* to the Alabama Supreme Court. (Doc 21, p. 38). However, the page cited by Williams refers only to the claim of ineffective assistance of counsel for failing to object to the prosecutor's improper comments. On page 24 of the brief to the Alabama Supreme Court, it states, "During the State's guilt phase closing argument, counsel failed to object to the prosecutor's comment on Mr. Williams' decision not to testify on his own behalf." (Doc. 21, p. 38; *See* Tab R. 54, pp. 24-25).

If a federal claim has not first been exhausted in state court, this court may also find that it is "procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile." *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (citing *Picard v. Connor,* 404 U.S. 270, 276 (1971)) and *Snowden v. Singletary*, 135 F.3d 732, 737(11th Cir. 1998)). This claim has not been exhausted and is, therefore, procedurally defaulted as any attempts to exhaust the claim would be futile because of the state's procedural bars on successive petitions and the statute of limitations. Rules 32.2(b) and (c) Ala. R. Crim. P.

The only "cause" asserted by Petitioner for failing to raise these substantive claims on

direct appeal is ineffective assistance of trial counsel Claim IID (trial counsel were ineffective in failing to object to improper testimony and physical evidence presented by the State), ineffective assistance of trial counsel Claim IIE (trial counsel prejudiced Williams by failing to object to the State's impermissible closing argument), and ineffective assistance of appellate counsel Claim IV. (Doc. 21, p. 24). The arguments are unavailing, however, because these ineffective assistance of counsel claims are themselves without merit and thus cannot be cause to excuse the default of the substantive claim.

Even if this claim were exhausted, it is without merit. Much the same issue was addressed above as Claim IIE, where Williams alleged that trial counsel were ineffective for failing to object to the prosecutor's comments when he stated, "[i]f Marcus Williams didn't commit this crime, who did? What evidence is there of any other person before you that indicates someone else did it? There is none." (*See* Doc. 5, p. 28.) This court already has concluded, in that context, that the Rule 32 court's resolution of the issue of whether the comments ran afoul of *Griffin v. California,* 380 U.S. 609, 615 (1965), was not contrary to, or an unreasonable application of Supreme Court precedent. The same is true here. The State's argument was not improper. Thus, because the Rule 32 court's resolution of this claim was neither contrary to, nor an unreasonable application of Supreme Court law, this claim is meritless and due to be denied.

Likewise, the court finds that prosecutor's comments regarding raping a corpse and that the crime was "the worst thing" did not "so infect[] the trial with unfairness as to make

the resulting conviction [or sentence] a denial of due process." *Darden v. Wainwright*, 477

U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). *See* (Tab

R. 12,  p. 508, lines 6-11).  These comments were consistent with the defense trial strategy.

During the guilt phase closing arguments, trial counsel stated,

> You got his statements.  She died.  She quit breathing and didn't move.  It is in
> his statements, but in that third statement, the order somehow reverses or they
> try to reverse it.  You know, you can't commit rape on someone already dead.
> They figured that out.  That is why they went back for that other statement.  If
> they get [it] in the order it was argued to you, rape and then murder, it changes.
> But that is not the way it is in those first two statements and the testimony you
> heard.

(Tab R. 11, p. 502).

Finally,  had the Rule 32 court addressed this claim, this court can say with reasonable

certainty that the Rule 32 court would have found it to be procedurally barred because it could

have been raised at trial or on direct appeal. *See* Ala.R.Crim.P. 32.2(a)(3) and (a)(5).  This

claim cannot overcome any of the above hurdles and is, therefore, due to be denied.

This claim also asserted that Williams was prejudiced by the prosecutor's opening

argument during the sentencing phase in which the prosecutor asserted aggravating factors

of burglary and robbery, which were not at issue in this case.  (Doc. 5, p. 68).  This same

argument is presented in Claim XIV, (Doc. 5, p. 88), that the trial court denied Williams a fair

trial by allowing the prosecutor's improper opening arguments on the aggravating factors of

burglary and robbery, and will be discussed *infra*.

CLAIM VI.   THE TRIAL COURT VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS BY SENTENCING HIM IN VIOLATION OF THE UNITED STATES CONSTITUTION

VI.A.   The trial court relied on a grossly inadequate pre-sentence report to sentence Petitioner

Williams asserts the following claim in both his amended habeas petition and his second amended Rule 32 petition, with the exception that the amended habeas petition contains an additional United State Supreme Court case quotation.  The following appears, *verbatim*, in both the habeas and second amended Rule 32 petitions:

> Use of a "perfunctory" presentence investigation report that "impl[ies] little, if any attempt to subjectively evaluate" the defendant "hamstr[ings] the court's consideration of the full mosaic of [the defendant's] background and circumstances before determining the proper sentence." *Guthrie v. State*, 689 So.2d 935, 947 (Ala. Crim. App. 1996). Reliance on a perfunctory report that failed to convey the full range of Mr. Williams' employment and school history denied Mr. Williams his right to individualized sentencing that embraces the objectives of consistency and humane, focused attention to the "uniqueness of the individual." *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982). In relying on a pre-sentence report with factual misrepresentations, omissions and error, the court violated the demands of due process, *Townsend v. Burke*, 334 U.S. 736 (1948), and disregarded the "fundamental respect for humanity underlying the Eighth Amendment ... [which] requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976) (emphasis added).

(Doc. 5, pp. 69-79; Tab R. 40, p. 189).

The Rule 32 court found that this claim was procedurally barred from postconviction review because it could have been but was not raised at trial and on appeal.  Rules 32.2(a)(3) and (a)(5), Ala.R.Crim.P.  (R Tab 59, p. 220).  The Alabama Court of Criminal Appeals

124

affirmed the ruling of the Rule 32 court.  (R Tab 60, p. 17).  The Alabama Supreme Court denied certiorari review.  (Tab R. 61).

Respondent argues, and this court agrees, that this claim is procedurally defaulted under independent and adequate state procedural grounds, which will preclude this court's review, absent a showing of cause and prejudice to excuse the default. (Doc. 14, p. 17).  Petitioner has not offered "cause and prejudice" to excuse the procedural default.  This claim is, therefore, procedurally barred from this court's review.

Furthermore, Petitioner has pointed to no specific part of, or information contained in, the pre-sentence report that is erroneous or that the court can say undermines confidence in the outcome of the sentencing hearing.  No evidence demonstrates that the information contained in the pre-sentence report had any illegal detrimental effect on sentencing.  In fact, during the sentencing hearing before the trial judge, trial counsel asked to have information stricken from the record and the trial judge obliged:

Ms. Wilson:       Your Honor, in the Pre-Sentence report by the probation officer, there is a comment that states Mr. Williams was a confessed drug dealer.  We would ask that be stricken as not being any evidence to be considered.

The Court:        The Court will strike that from consideration because I don't really find anywhere to plug that in other than lack of prior criminal activity.  I don't think that would be a proper way to prove that, just by a statement of the probation officer.  I will not consider that.

(Tab R. 25, p. 627-28).  Trial counsel reviewed the pre-sentence report to determine if information was erroneous or prejudicial to Williams, and the judge struck and disregarded improper information.  This claim lacks merit and cannot serve as the basis for habeas relief.

**VI.B.   Alabama's sentencing scheme is unconstitutional.**

**VI.B.i.      Judicial imposition of the death sentence denied Petitioner his Sixth Amendment right to a jury trial.**

At pages 71 through 74 of the amended habeas petition, Williams contends that his death sentence is unconstitutional under *Ring v. Arizona*, 536 U.S. 584 (2002), because certain predicate facts necessary for the imposition of the death sentence were found by the trial judge and not the jury.  (Doc. 5, p. 71).  This claim is presented, *verbatim*, in the second amended Rule 32 predecessor.  (Tab R. 40, pp. 190-93).  The Rule 32 court held that this claim was procedurally barred, and in the alternative, without merit:

> While the Court is aware that *Ring* was not decided until after Williams' conviction had become final, nothing in the record indicates that Williams was limited in any way from raising any claim or motion before or during trial.  Further, because Williams was sentenced to death, he could have raised any issue, whether or not it was preserved at trial, on direct appeal.  Thus, the Court finds that the allegation in Part II.(B)(I) is procedurally barred from postconviction review because it could have been but was not raised at trial and because it could have been but was not raised on appeal; therefore, it is summarily dismissed.  Rules 32.2(a)(3) and (a)(5), Ala.R.Crim.P.

> Moreover, Williams concedes in his second amended Rule 32 petition that in *Ex parte Waldrop*, 859 So. 2d 1181 (Ala. 2002), the Alabama Supreme Court "interpreted *Ring* as not affecting Alabama's capital sentencing statute." (Second amended petition on p. 8 n.3) Further, on June 24, 2004, the United States Supreme Court specifically held that *"Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review." *Schriro v. Summerlin*, 2004 WL 1402732, at *7 (June 24, 2004) Thus, in addition to being procedurally barred from postconviction review, the Court finds that the allegation in Part II.B.(I) of Williams' second amended Rule 32 petition is without merit.  Rule 32.7(d), Ala.R.Crim.P.

(Tab R 59, pp. 221-22).

The Alabama Court of Criminal Appeals affirmed the Rule 32 court's decision regarding the procedural bar, and in the alternative, denied the claim on the merits:

> Williams' claims that . . . his death sentence was unconstitutionally imposed because the jury and judge did not have to find that the aggravating circumstance outweighed the mitigating circumstances beyond a reasonable doubt were also properly dismissed because they presented no material issue of fact or law which would have entitled Williams to relief.  Rule 32.7(d), Ala. R. Crim. P. *Ex parte Waldrop*, 859 So. 2d 1181, 1186-90 (Ala. 2002)(rejecting the claims Williams now raises).

(Tab R 60, p. 17).

Respondent contends that this claim is procedurally defaulted because it was not raised at trial or on direct appeal, pursuant to Rule 32.2(a)(3) and (5), and because it was abandoned on appeal of the denial of the second amended Rule 32 petition.  Respondent also argues that this claim is meritless because it relies on the application of *Ring*, which was decided after Williams's conviction became final.  (Doc. 14, p. 54).  Petitioner replied that this claim was raised at trial (*see Motion to Strike and Quash as Unconstitutional the Alabama Statutes Providing for the Imposition of the Death Penalty, and Their Application to This Case*, Tab R. 27, C. 66-67), as well as on appeal (*see* Appellant's Brief to the Court of Criminal Appeals - Tab R. 28, pp. 63-64; Appellant's Petition for Writ of Certiorari in the Alabama Supreme Court, Tab R-54, pp. 54-57). (Doc. 21, pp. 26, 40).

This court agrees that *Ring* does not apply retrospectively to Petitioner's amended habeas petition.  In *Schriro v. Summerline*, 542 U.S. 348, 358 (2004), the Supreme Court flatly held: "*Ring* announced a new procedural rule that does not apply retroactively to cases already

final on direct review." Petitioner's conviction became final on direct appeal when the United

States Supreme Court denied his petition for writ of *certiorari* on October 1, 2001. *See*

*Williams v. Alabama*, 122 S. Ct. 226 (2001). The United States Supreme Court announced

*Ring* in 2002, after Williams's direct appeal was completed. Consequently, the holding in and

rationale of *Ring* cannot be applied to Petitioner's case. *See Battle v. United States*, 419 F.3d

1292 (11th Cir. 2005) (*Ring* does not apply retroactively to cases final before it was decided);

*Sibley v. Culliver*, 377 F.3d 1196 (11th Cir. 2004)(same).

      Although *Ring* had not been announced at the time of Petitioner's trial and direct

appeal, habeas petitioners are required to present their claims fairly to the state courts, and

failure to do so in violation of a state procedural rule can result in the procedural default of a

claim. To assert now the argument that Alabama's capital sentencing scheme violates due

process, Petitioner was required to present that argument to the state courts according to the

state's procedural requirements. The fact that *Ring* was announced later does not relieve the

Petitioner of the obligation to allege and exhaust the essential nature of the claim.

      For example, in *Turner v. Crosby*, 339 F.3d 1247 (11th Cir. 2003), the court of appeals

rejected as procedurally defaulted a *Ring* claim made by a petitioner whose conviction was

final ten years before *Ring* was decided. The court wrote:

>       Although *Ring* was decided several years subsequent to the termination of
> [petitioner's] state post-conviction proceedings, he was free, prior to *Ring*, to
> make a federal constitutional challenge to Florida's capital sentencing structure
> in the state courts but failed to do so. "If a defendant perceives a constitutional
> claim and believes it may find favor in the federal courts, he may not bypass the
> state courts simply because he thinks they will be unsympathetic to the claim.

Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid."
*Engle v. Isaac*, 456 U.S. 107, 130, 102 S. Ct. 1558, 1573, 71 L. Ed. 2d 783 (1982) (internal footnote omitted).

\* \* \*

Furthermore, to the extent that [petitioner] argues that he cannot be held to have forfeited his claim because settled law pre-*Ring* did not provide a legal basis for the claim, *see e.g., Barclay*, 463 U.S. 939, 103 S. Ct. 3418, 77 L. Ed. 2d 1134 (upholding Florida's capital sentencing structure), we disagree. The United States Supreme Court has held that "cause" to excuse a procedural default may exist "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16, 104 S. Ct. 2901, 2910, 82 L. Ed. 2d 1 (1984). However, where an argument is not novel, and the "Federal Reporters [are] replete with cases involving [similar] challenges," the default is not excused. *Bousley v. United States*, 523 170 U.S. 614, 622-23, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998). As discussed above, there have been repeated constitutional challenges to Florida's capital sentencing structure. [Petitioner's] Sixth Amendment or *Ring* claim is not novel, and, therefore, he cannot show the "cause" required to overcome the procedural bar to bringing the claim in this case.

*Turner v. Crosby*, 339 F.3d 1247, 1281-82 (11th Cir. 2003).

The same is true of the instant case. Petitioner remained free, prior to *Ring*, to timely make the same Sixth Amendment argument that ultimately prevailed in *Ring*, but he did not. Because he failed to preserve the claim on direct appeal, it is now procedurally defaulted, and he has not shown cause and prejudice to excuse the default.

Petitioner cannot argue that the cause for his procedural default of this claim was the ineffective assistance of either trial or appellate counsel. Although not a novel claim, *Ring* was not announced until after Petitioner's trial and direct appeal were finished. Under the *Strickland* standard, counsel are not required to anticipate changes in law to avoid being ineffective. The *Strickland* standard does not require counsel to be clever or inventive, or to

129

advocate a claim not yet announced in the law. Rejecting an argument that it was ineffective assistance for counsel to fail to anticipate the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Eleventh Circuit wrote: "While an attorney's failure to anticipate a change in the law does not constitute ineffective assistance of counsel, attorneys routinely make arguments based on reasonable extensions of existing Supreme Court case law." *United States v. Levy*, 391 F.3d 1327, 1334 n. 3 (11th Cir. 2004). Thus, even though Petitioner was required to preserve his claim to avoid procedural default, his attorneys were not constitutionally ineffective in failing to do so under these circumstances.

Even if *Ring* could be applied to this case, Petitioner's claim is procedurally defaulted because it was not raised at trial or on direct appeal.[35] Contrary to his contention, Williams did not present this specific claim at trial or on direct appeal. The Motion to Strike and Quash and Claim XI referenced in Williams's response argue a substantially different claim; instead it asserts that Alabama's sentencing statute §13A-5-40(a)(15) is unconstitutional because Williams's sentence was applied in an arbitrary and capricious manner, in violation of *Godfrey v. Georgia*, 446 U.S. 420, 427-428, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398, 406 (1980). Petitioner has not alleged "cause and prejudice" to overcome the procedural default. Because this claim is both procedurally defaulted and meritless, it is due to be denied.

---

[35] Williams did exhaust this claim during the Rule 32 appeal. *See* Appellant's Brief in the Court of Criminal Appeals, Tab R.50, pp. 49-50; *see also* Appellant's Petition for Writ of Certiorari in the Alabama Supreme Court, Tab R. 54, pp. 54-57.

**V.B.ii.     The aggravating factors were not charged in Petitioner's indictment.**

On pages 74-75 of the amended habeas petition, Williams alleges that Alabama's capital sentencing scheme is unconstitutional because it allows a capital defendant's sentence to be increased from life to death based on facts not charged in the indictment, and thus not found by the jury beyond a reasonable doubt.  (Doc. 5, p. 74).  Williams asserts, therefore, that his sentence was a violation of the well-established rule of criminal pleading, which held that "the indictment must contain an allegation of every fact that is legally essential to the punishment to be inflicted." *Apprendi v. New Jersey*, 530 U.S. 466, 490 n.15 (2000) (quoting with approval Justice Bishop's "succinct" statement of "pedigree[d]" rule in his separate opinion in *United States v. Reese*, 92 U.S. 214, 232-233 (1875)).  Williams alleged this same claim, *verbatim,* in his second amended Rule 32 petition. (Tab R 40, p. 193).  The Rule 32 court held that the claim was procedurally barred because it could have been, but was not, raised at trial or on appeal, pursuant to Rule 32.2(a)(3) and (a)(5), and, in the alternative, denied the claim on the merits:

> Moreover, under the facts of the Williams' case, the Court finds that the allegation in Part II.B.(ii) of Williams' second amended Rule 32 petition is without merit.  The indictment returned against Williams charged him with intentional murder during the course of a rape or an attempted rape in violation of Section 13A-5-49(4) of the <u>Code of Alabama</u> (1975).  (C.R. 7-8) Section 13A-5-45(e) of the Code of Alabama (1975), states in pertinent part that "any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for the purposes of the sentencing hearing."  The only aggravating circumstance relied on by the State and considered by the jury and the trial court was that Williams committed intentional murder during the course

of a rape or an attempted rape.  Thus, the jury's guilt phase verdict established beyond a reasonable doubt the existence of the only aggravating circumstance considered in sentencing Williams to death.  *See Ex parte Waldrop*, 859 So. 2d at 1188 (holding that "[b]ecause the jury convicted Waldrop of two counts of murder during a robbery in the first degree, Ala. Code 1975, § 13A-5-40(a)(2), the statutory aggravating circumstance of committing a capital offense while engaged in the commission of a robbery, Ala. Code 1975, § 13A-5-49(4), was 'proved beyond a reasonable doubt.' Ala. Code 1975, § 13A-5-45(e); Ala. Code 1975, § 13A-5-50").

(Tab R 59, p. 8).  The Alabama Court of Criminal Appeals affirmed the Rule 32 court's holding.  (Tab R 60, p. 17).  The Alabama Supreme Court denied *certiorari* review. (Tab R 61).

Respondent asserts that this claim is procedurally barred and without merit on several grounds:  (1) because it was not raised at trial or on direct appeal; (2) because Williams cannot overcome the presumption of correctness in the state court's denial of the claim on the merits; and (3) because the claim was abandoned during the Rule 32 appeal.  (Doc. 14, pp. 58-59).  Williams erroneously counters that this claim was raised at trial[36] (Tab. R. 27, p. 72) and on direct appeal (Tab R. 28, pp. 58-59; 71-72; 60-61).[37]  Williams correctly argues that this claim

---

[36] This motion to dismiss the indictment asserted reasons that do not relate to the allegation that aggravating factors must be charged in the indictment.  (Tab R. 27, p. 72).

[37] Appellant's Brief on direct appeal to the Court of Criminal Appeals, Tab R. 28,  Issue VII, pp. 58-59 refers to Williams's contention that no evidence proved rape; Issue XVII, pp. 71-72 refers to the prosecutor's alleged improper argument regarding the aggravating factors of robbery and burglary; Issue IX, pp. 60-61 refers to the allegation that the evidence is not sufficient to sustain a capital murder conviction because the Government failed to prove rape and particularized intent.

was not abandoned during the Rule 32 appeal. (Doc. 21, p. 40).[38]

However, this claim is procedurally barred from this court's review because it could have been, but was not, raised at trial or on direct appeal.  Petitioner has not alleged "cause and prejudice" to excuse the procedural default.

Furthermore, Williams cannot show that the state court's decision is contrary to, or an unreasonable application of Federal law, or that it is an unreasonable application of the facts in light of the evidence.  The Supreme Court in *Apprendi* explained:

> In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in *Jones*. Other than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." 526 U.S. at 252-253, 119 S.Ct. 1215 (opinion of STEVENS, J.); see also *id.,* at 253, 119 S.Ct. 1215 (opinion of SCALIA, J.).
>                                       * * * *
> Finally, this Court has previously considered and rejected the argument that the principles guiding our decision today render invalid state capital sentencing schemes requiring judges, after a jury verdict holding a defendant guilty of a capital crime, to find specific aggravating factors before imposing a sentence of death. *Walton v. Arizona,* 497 U.S. 639, 647-649, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990); *id.,* at 709-714, 110 S.Ct. 3047 (STEVENS, J., dissenting). For reasons we have explained, the capital cases are not controlling:
>
>> "Neither the cases cited, nor any other case, permits a judge to
>>
>> determine the existence of a factor which makes a crime a capital

---

[38]  *See* Appellant's Opening Brief in the Court of Criminal Appeals, Tab R. 50, pp. 49-50; *see also* Appellant's Petition for Writ of Certiorari in the Alabama Supreme Court,  Tab R. 54, pp. 57-59.

> *offense*. What the cited cases hold is that, once a jury has found
> the defendant guilty of all the elements of an offense which
> carries as its maximum penalty the sentence of death, it may be
> left to the judge to decide whether that maximum penalty, rather
> than a lesser one, ought to be imposed.... The person who is
> charged with actions that expose him to the death penalty has an
> absolute entitlement to jury trial on all the elements of the
> charge." *Almendarez-Torres,* 523 U.S., at 257, n. 2, 118 S.Ct.
> 1219 (SCALIA, J., dissenting) (emphasis deleted).

*Apprendi v. New Jersey*, 530 U.S. 466, 490 (emphasis added) (2000).

Williams's argument is without merit.  The state court's decision is not contrary to *Apprendi*.  The indictment charged Williams with murder made a capital offense during a rape or attempted rape.  The jury, not the trial court, found Williams guilty beyond a reasonable doubt of all the elements of the crime of murder made a capital offense because committed during a rape or attempted rape.  Further, the penalty imposed did not exceed the prescribed statutory maximum.  Williams, therefore, received a jury trial on all the elements that exposed him to the death penalty.  This claim is due to be denied.

> **VI.B.iii.   Any finding that aggravating factors outweighed mitigating
> factors is invalid because such findings were not subject to the
> most stringent 'beyond a reasonable doubt' standard as
> required for conviction of criminal offenses**

Next, Petitioner argues that Alabama's capital murder sentencing scheme is unconstitutional because "[n]either the judge nor the jury is required to find that the aggravating circumstances outweigh the mitigating circumstances beyond a reasonable doubt, as required by *Apprendi*." (Tab R. 40, pp. 10-11).  Petitioner asserted this same claim *verbatim* in his second amended Rule 32 petition.

The Rule 32 court held:

> While this Court is aware that *Apprendi* and *Ring* were not decided until after Williams's conviction had become final, nothing in the record indicates that Williams was limited in any way from raising any claim or motion before or during his trial. Further, because Williams was sentenced to death, he could have raised any issue, whether or not it was preserved, on direct appeal. The Court finds that the allegations in Part II.B.(iii) are procedurally barred from postconviction review because they could have been but were not raised at trial and because they could have been but were not raised on direct appeal; therefore, they are summarily dismissed. Rules 32.2(a)(3) and (a)(5), Ala. R. Crim. P.

(Tab R 59, p. 9).

The Alabama Court of Criminal Appeals affirmed the Rule 32 court's decision regarding the procedural bar, and added the following:

> Williams' claims that . . . his death sentence was unconstitutionally imposed because the jury and judge did not have to find that the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt were also properly dismissed because they presented no material issue of fact or law which would have entitled Williams to relief. Rule 32.7 (d), Ala. R. Crim. P. *Ex parte Waldrop*, 859 So. 2d 1181, 1186-90 (Ala. 2002)(rejecting the claims Williams now raises).

(Tab R 60, p. 17).

The State argues that this claim is procedurally defaulted from this court's review because the state courts correctly found that it was barred under Rules 32.2(a)(3) and (5). (Doc. 14, p. 61). This court agrees. Alternatively, the Alabama Court of Criminal Appeals addressed the claim on the merits. Petitioner has not alleged "cause and prejudice" to excuse

the default.[39]

Even assuming no procedural bar, this claim lacks merit.  As explained in *Ex parte*

*Waldrop,* 859 So. 2d at 1187:

> Waldrop also claims that *Ring* and *Apprendi* require that the jury, and not
> the trial court, determine whether the aggravating circumstances
> outweigh the mitigating circumstances. Ala.Code 1975, §§ 13A-5-46(e),
> 13A-5-47(e), and 13A-5-48. Specifically, Waldrop claims that the
> weighing process is a "finding of fact" that raises the authorized
> maximum punishment to the death penalty. Waldrop and several of the
> amici curiae claim that, after *Ring,* this determination must be found by
> the jury to exist beyond a reasonable doubt. Because in the instant case
> the trial judge, and not the jury, made this determination, Waldrop claims
> his Sixth Amendment rights were violated. Contrary to Waldrop's
> argument, the weighing process is not a factual determination. In fact, the
> relative "weight" of aggravating circumstances and mitigating
> circumstances is not susceptible to any quantum of proof. As the United
> States Court of Appeals for the Eleventh Circuit noted, "While the
> existence of an aggravating or mitigating circumstance is a fact
> susceptible to proof under a reasonable doubt or preponderance standard
> ... the relative *weight* is not." *Ford v. Strickland,* 696 F.2d 804, 818 (11th
> Cir.1983). This is because weighing the aggravating circumstances and
> the mitigating circumstances is a process in which "the sentencer
> determines whether a defendant eligible for the death penalty should in
> fact receive that sentence." *Tuilaepa v. California,* 512 U.S. 967, 972,
> 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). Moreover, the Supreme Court
> has held that the sentencer in a capital case need not even be instructed
> as to how to weigh particular facts when making a sentencing decision.
> See *Harris v. Alabama,* 513 U.S. 504, 512, 115 S.Ct. 1031, 130 L.Ed.2d
> 1004 (1995) (rejecting "the notion that 'a specific method for balancing
> mitigating and aggravating factors in a capital sentencing proceeding is
> constitutionally required' " (quoting *Franklin v. Lynaugh,* 487 U.S. 164,
> 179, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988)) and holding that "the
> Constitution does not require a State to ascribe any specific weight to

_____

[39]  Petitioner incorrectly assert that he raised this claim at trial and on appeal. (Doc. 21, p.
27-28).  However, those references are to assertions that do not correspond with this particular
claim.

particular factors, either in aggravation or mitigation, to be considered by the sentencer"). Thus, the weighing process is not a factual determination or an element of an offense; instead, it is a moral or legal judgment that takes into account a theoretically limitless set of facts and that cannot be reduced to a scientific formula or the discovery of a discrete, observable datum. *See California v. Ramos*, 463 U.S. 992, 1008, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) ("Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty, ... the jury then is free to consider a myriad of factors to determine whether death is the appropriate punishment."); *Zant v. Stephens,* 462 U.S. 862, 902, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (Rehnquist, J., concurring in the judgment) ("sentencing decisions rest on a far-reaching inquiry into countless facts and circumstances and not on the type of proof of particular elements that returning a conviction does").

In *Ford v. Strickland, supra,* the defendant claimed that "the crime of capital murder in Florida includes the element of mitigating circumstances not outweighing aggravating circumstances and that the capital sentencing proceeding in Florida involves new findings of fact significantly affecting punishment." *Ford*, 696 F.2d at 817. The United States Court of Appeals for the Eleventh Circuit rejected this argument, holding that "aggravating and mitigating circumstances are not facts or elements of the crime. Rather, they channel and restrict the sentencer's discretion in a structured way after guilt has been fixed." 696 F.2d at 818. Furthermore, in addressing the defendant's claim that the State must prove beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances, the court stated that the defendant's argument seriously confuses proof of facts and the weighing of facts in sentencing. While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard, see *State v. Dixon,* 283 So.2d 1, 9 (Fla.1973), *cert. denied,* 416 U.S. 943, 94 S.Ct. [1950], 40 L.Ed.2d 295 (1974), and *State v. Johnson,* 298 N.C. 47, 257 S.E.2d 597, 617-18 (1979), the relative *weight* is not. The process of weighing circumstances is a matter for judge and jury, and, unlike facts, is not susceptible to proof by either party." 696 F.2d at 818. Alabama courts have adopted the Eleventh Circuit's rationale. See *Lawhorn v. State,* 581 So.2d 1159, 1171 (Ala.Crim.App.1990)("while the *existence* of an aggravating or mitigating circumstance is a fact susceptible to proof, the relative *weight*

of each is not; the process of weighing, unlike facts, is not susceptible to proof by either party"); see also *Melson v. State,* 775 So.2d 857, 900-901 (Ala.Crim.App.1999); *Morrison v. State,* 500 So.2d 36, 45 (Ala.Crim.App.1985).

Thus, the determination whether the aggravating circumstances outweigh the mitigating circumstances is not a finding of fact or an element of the offense. Consequently, *Ring* and *Apprendi* do not require that a jury weigh the aggravating circumstances and the mitigating circumstances.

*Ex parte Waldrop,* 859 So. 2d at 1187 (footnote omitted).

The last court to address this claim was the Court of Criminal Appeals. It affirmed the procedural default and addressed the claim on the merits, citing *Ex parte Waldrop.* This ruling is entitled to a presumption of correctness. The state court's ruling is neither contrary to, nor an unreasonable interpretation of, Federal law. This claim is barred from federal review and is due to be denied.

### VI.B.iv.   The jury's recommendation of a death sentence is invalid

#### VI.B.iv.a.   The jury was told they only made a recommendation

On page 77 of his amended habeas petition, Williams asserts that Alabama's sentencing scheme is unconstitutional because jurors were informed that their penalty phase verdict was a recommendation; a "recommendation" puts jurors at risk of "not properly engaging [ ] in the evidence and bearing the responsibility of [their] decision," in violation of *Caldwell v. Mississippi*, 472 U.S. 320 (1985).[40]  (Doc. 5, p. 77).  This same claim was raised *verbatim* in

---

[40]  The Supreme Court has never ruled that Alabama's advisory jury system is unconstitutional.  *See Harris v. Alabama*, 513 U.S. 504 (1995).

138

Williams's second amended Rule 32 petition. (Tab R 40, pp. 11-12). The Alabama Court of Criminal Appeals affirmed the Rule 32 court, holding that the claim was procedurally defaulted because it could have been, but was not, raised at trial or on appeal. (Tab R. 59, p. 225; Tab R. 60, p. 17). The Alabama Supreme Court denied *certiorari* review. (Tab R. 61).

Respondent correctly asserts that this claim is barred from federal review because it was not raised at trial or on direct appeal. (Doc. 14, pp. 63-64). Because Williams failed to raise this claim at trial or on direct appeal, this claim is barred from federal review. Williams does not allege "cause and prejudice" for the procedural default, but instead erroneously asserts that this issue was raised at trial and on appeal.[41]

Furthermore, "habeas corpus review exists only to review errors of constitutional dimension," and a habeas corpus petition must meet the "heightened pleading requirements [of] 28 U.S.C. § 2254 Rule 2c." *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (citations omitted.)) The Petitioner must specify all the grounds for relief available to him, state the facts supporting each ground, and state the relief requested. 28 U.S.C. § 2254 Rule 2(c)(1)(2)(3).

---

[41] Williams states that this issue was raised at trial at pages 598-629 of the trial transcript. After careful review of the record, these pages of the transcript were the sentencing before the trial judge, out of the presence of the jury, and, therefore, cannot support his contention that the jury was told that they made a recommendation. (Tab R. 28). Williams also asserts that this issue was raised on appeal in his Appellant's Brief to the Alabama Court of Criminal Appeals, Tab R. 28, Claim XV, pp. 67-69, which relates to the jury being improperly charged regarding the aggravating circumstances of robbery and burglary; Claim XVII, pp. 71-72, which relates to the prosecutor's alleged improper argument regarding the aggravating circumstance of robbery and burglary; and Claims XIX - XXI, pp. 74-83, which relate to ineffective assistance not to abandon the mental disease or defect plea, that the voluntary intoxication charge was in error, and that the trial court erred when it refused the manslaughter charge – none of which raise this issue.

139

The burden of proof is on the habeas petitioner to establish a factual basis for the relief he seeks. *Hill v. Linahan*, 697 F.2d 1032, 1034 (11th Cir. 1983); *Corn v. Zant*, 708 F.2d 549, *reh'g denied*, 714 F.2d 159 (11th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984).  That burden requires demonstrating at least *prima facie* evidence establishing the alleged constitutional violation. The mere assertion of a ground for relief, without factual support, does not satisfy Petitioner's burden of proof or the  requirements of 28 U.S.C. § 2254(e)(2) and Rule 2(c), *Rules Governing § 2254 Cases in the United States District Courts*. Williams provides no identifying or contextual description of the jury being instructed as such or how many times these actions purportedly occurred.  In fact, he does not even attempt to cite various pages in the record to support his contention. This claim is due to be denied as procedurally barred and without merit.

### VI.B.iv.        Jury's recommendation of a death sentence invalid.

#### VI.B.iv.b.        The verdict is incapable of review as the jury's verdict form failed to specify which aggravating and mitigating factors were found

In one sentence followed by a string cite of United States Supreme Court cases, Williams alleges that, "[i]nability to review which aggravating and mitigating factors were considered violates well-established Eighth Amendment requirements that sentencing determinations are individualized in death penalty cases." (Doc. 5, p. 78).  This same claim was raised *verbatim* in Williams's second amended Rule 32 petition.  (Tab R. 40, p. 12).  On appeal from the denial of the second amended Rule 32 petition, the Alabama Court of Criminal

Appeals affirmed the Rule 32 court's holding, concluding that the claim was procedurally defaulted because it could have been, but was not, raised at trial or on appeal.  (Tab R. 59, p. 225; Tab R. 60, p. 17).

Respondent asserts, and this court agrees, that this claim is barred from federal review because it was not raised at trial or on direct appeal.  (Doc. 14, pp. 63-64).  Williams has not pled "cause and prejudice" to overcome the procedural default.

This claim is procedurally defaulted because it was denied under independent and adequate state law grounds and lacks merit.  Williams fails to make any argument based on federal law that supports his claim.  Instead, Petitioner simply cites *Zant v. Stephens*, 462 U.S. 862, 879 (2000) in support of his contention that the jury's verdict form violated his Eighth Amendment right.  *Zant* specifically states:

> Our cases indicate, then, that statutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty. But the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death.  What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime. See *Eddings v. Oklahoma,* 455 U.S. 104, 110-112, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 601-605, 98 S.Ct. 2954, 2963-2965, 57 L.Ed.2d 973 (1978) (plurality opinion); *Roberts (Harry) v. Louisiana,* 431 U.S. 633, 636-637, 97 S.Ct. 1993, 1995, 52 L.Ed.2d 637 (1977); *Gregg, supra,* 428 U.S., at 197, 96 S.Ct., at 2936 (opinion of STEWART, POWELL, and STEVENS, JJ.); *Proffitt v. Florida,* 428 U.S., at 251-252, 96 S.Ct., at 2966 (opinion of STEWART, POWELL, and STEVENS, JJ.); *Woodson v. North Carolina,* 428 U.S. 280, 303-304, 96 S.Ct. 2978, 2990-2991, 49 L.Ed.2d 944 (1976) (plurality opinion).

*Zant v. Stephens*, 462 U.S. at 878 (footnote omitted).

Petitioner has pointed to no facts in the record that suggest that Williams's sentence was not based on an "individualized" determination of his character, as presented during both the guilt and penalty phases, or the facts regarding the circumstances of his crime. Petitioner has failed to establish a factual basis for this claim. *See Hill v. Linahan*, 697 F.2d 1032, 1034 (11th Cir. 1983); *Corn v. Zant*, 708 F.2d 549, *reh'g denied*, 714 F.2d 159 (11th Cir. 1983), *cert. denied*, 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984). This claim is due to be denied.

**CLAIM VII.   IT WAS A VIOLATION OF PETITIONER'S CONSTITUTIONAL RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS NOT TO CONDUCT INDEPENDENT DNA TESTING OF ALL SUSPECTS BY THE DEFENDANT**

Petitioner argues that the trial court violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments by not allowing the defense to perform independent DNA tests on blood samples taken from other suspects. (Doc.5, p. 78). In denying this claim on the merits during the direct appeal, the Court of Criminal Appeals stated:

> At a pretrial hearing, the State indicated that, during the course of the investigation in this case, law enforcement officials had gathered blood samples from approximately 14 other suspects and had DNA tests performed on those samples. The appellant requested funds to perform an independent analysis of each of those samples. The trial court granted the defense's request for funds to have independent tests performed on his own blood, but denied the request to independently test the samples from the other suspects. The trial court explained its ruling as follows:
>
> > "I will allow you to re-run the matching sample of the defendant to the sample found on the victim. I don't believe I'm going to let you run all the other potential samples unless you show me some strong evidence. Normally, evidence that another person may

142

have committed the offense is not admissible in the defense of an individual.

The appellant did not subsequently present this request to the trial court again.

"In [*Ex parte*] Moody, [684 So. 2d 114 (Ala. 1996),] the Alabama Supreme Court defined the standard by which a trial court must assess an indigent defendant's request for expert assistance.

" 'Although the [United States] Supreme Court has not specifically stated what "threshold showing" must be made by the indigent defendant with regard to the need for an expert, the Court refused to require the state to pay for certain experts when the indigent defendant "offered little more than undeveloped assertions that the requested assistance would be beneficial." *Caldwell v. Mississippi*, 472 U.S. 320 at 323, 105[,] S.Ct. 2633 at 2637, 86 L.Ed.2d 231 (1985). As we stated in *Dubose [v. State*, 662 So. 2d 1189 (Ala. 1995)] the Supreme Court cases of *Ake [v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)] and *Caldwell*, viewed together, seem to hold that an indigent defendant must show more than a mere possibility that an expert would aid in his defense. "Rather, the defendant must show a reasonable probability that an expert would aid in his defense and [must show that] a denial of an expert to assist at trial would result in a fundamentally unfair trial." *Dubose*, 662 So. 2d at 1192, citing *Moore v. Kemp*, 809 F.2d 702 (11th Cir.), cert denied, 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987).

" ' . . . .

" 'Based on the foregoing, we conclude that for an indigent defendant to be entitled to expert assistance at public expense, he must show a reasonable probability that the expert would be of assistance in the defense and that the denial of

143

expert assistance would result in a fundamentally unfair trial.   To meet this standard, the indigent defendant must show, with reasonable specificity, that the expert is absolutely necessary to answer a substantial issue or question raised by the state or to support a critical element of the defense.   If the indigent defendant meets this standard, then the trial court can authorize the hiring of an expert at public expense.'

"684 So. 2d at 119, *See also Burgess v. State*, [723] So. 2d [742] (Ala.Cr.App.1997); *MacEwan v. State*, 701 So. 2d 66 (Ala.Cr.App.1997);   *Ex parte Dobyne*, 672 So. 2d 1354, 1357 (Ala. 1995), cert. denied, 517 U.S. 1169, 116 S.Ct. 1571, 134 L.Ed.2d 670 (1996)."

*Finch v. State*, 715 So.2d 906, 910-11 (Ala.Cr.App.1997).   In this case, the trial court gave the appellant an opportunity to make such a showing, but the appellant did not satisfy his burden of proof.   After independently testing his own blood, he did not show that there was a reasonable probability that independent DNA testing of the samples from the other suspects would aid his defense and that a denial of the opportunity to have independent DNA testing performed would result in a fundamentally unfair trial.   He did not specifically show that independent testing was absolutely necessary to answer a substantial issue or question raised by the State or to support a critical element of the defense.   In fact, throughout the trial, his defense was that he entered the victim's apartment with the intent to have sex with her, but that he did not intend to kill her.   Therefore, the trial court did not err in denying the appellant's request to have the samples from the other suspects independently tested.

*Williams*, 795 So. 2d at 763.

The Petitioner did not allege, and cannot show, that the decision of the Alabama Court of Criminal Appeals was contrary to, or an unreasonable application of Federal law, or an unreasonable determination of the facts in light of the evidence.   For this reason, the Petitioner is not due any relief.

144

**CLAIM VIII. THE TRIAL COURT VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS TO A FAIR TRIAL UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS BY ALLOWING DNA EVIDENCE.**

Petitioner next asserts that "[b]ecause the DNA analysis in this case was fraught with error, the jury's consideration of the evidence violated the Eighth Amendment."  (Doc. 5, p. 80).

The Court of Criminal Appeals denied this claim on direct appeal:

Initially, we note that

"[a]t the time of the appellant's trial, § 36-18-30, Ala. Code, 1975, not *Perry*, governed the admissibility of DNA evidence.  That section provides:

" ' Expert testimony or evidence relating to the use of genetic markers contained in or derived from DNA for identification purposes shall be admissible and accepted as evidence in all cases arising in all courts of this state, provided, however, the trial court shall be satisfied that the expert testimony or evidence meets the criteria for admissibility as set forth by the United States Supreme Court in Daubert, ex ux., et al., v. Merrell Dow Pharmaceuticals, Inc., decided on June 28, 1993."

"For DNA evidence to be admissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 2795-97, 125 L.Ed.2d 469 (1993), it must be reliable and relevant.  Some factors that are germane in determining whether evidence is reliable include testimony 1) that the technique has been tested, 2) that the technique has been subjected to peer review and publication, 3) about the known or potential rate of error and quality controls associated with the technique, and 4) that the technique is generally accepted in the

> relevant scientific community.  *Daubert*, 509 U.S.
> at 594-95, 113 S.Ct. At 2797.   In determining
> whether DNA evidence is relevant, the trial court
> should decide whether the evidence will help the
> factfinders understand the evidence or decide a fact
> that is in issue.  *Daubert*, 509 U.S. at 591, 113 S.Ct.
> At 2795.   Thus, to be admissible, the DNA
> evidence must relate to some issue in the case."

*Maples v. State*, 758 So. 2d 1, 47 (Ala.Cr.App. 1999).  Therefore, we will assess the admissibility of the DNA evidence under the *Daubert* standard.

In this case, Larry Huys, a forensic scientist employed by the Alabama Department of Forensic Sciences in its Birmingham laboratory, testified for the State as an expert in the field of DNA analysis.  He testified about both polymerase chain reaction (PCR) matching and population frequency statistics.

Regarding the PCR method, Huys testified that his laboratory uses a three-step process to perform DNA testing.  First, scientists extract the DNA from the sample and purify, or clean it.  Second, they amplify, or make copies of, ten portions of the DNA molecule that have variation.  Third, they perform a visualization, using dots or blots, to read or interpret the DNA molecule.  Huys also testified that, before it started using the PCR method, the department performed a series of validation steps.  In fact, he testified that the scientists probably worked with the method for one year before they started using it on actual cases.

Huys testified that other forensics laboratories throughout the United States use the PCR testing method, and added that the scientists "are constantly exchanging ideas, having meetings, going to various seminars to be sure everyone in the forensic community is on the same wavelength."  ( R. 367.)  He stated that this type of testing is also widely used in areas other than forensics.

Regarding peer review and publication, Huys testified that the National Research Council (NRC) has performed two studies about the PCR method and that its conclusions have been very complimentary.  He also testified that the Technical Working Group on DNA analysis sets forth guidelines for each laboratory to follow so it will be in compliance with other forensics laboratories throughout the world.  He added that one of the department's scientists is a member of the board of the Technical Working Group on DNA analysis and that the department

146

complies with that group's guidelines. He further testified that the department has published its data in various publications and that several agencies and scientists have scrutinized the department's testing process. Finally, he testified that the department's laboratory is accredited by the National Forensic Science Training and Research Center.

Regarding the known rate of error, Huys testified that he was not aware of any errors that had occurred in any of the DNA testing performed in the department's laboratory. He further stated that the department undergoes proficiency testing every 180 days, and added that, on nationwide proficiency tests, the results the department has obtained have been in 100 percent agreement with those obtained by other laboratories. He also testified that the department uses several quality controls to assure that the tests are performed properly, including testing blanks and known samples to detect contamination. Additionally, scientists duplicate the procedures on unknown samples to assure that they obtain the same results every time. They also process known and unknown samples on different days to avoid cross-contamination, and they use additional clean-up techniques to test for contamination. He testified that, to safeguard a sample, the sample is submitted in a sealed condition, maintained in a dry environment, and placed in a locked storage area. Finally, he testified that, in this case, the controls did not indicate that any errors had occurred during the testing process.

Finally, Huys testified that the PCR testing procedures used by the Alabama Department of Forensic Sciences are widely accepted in the scientific community as being reliable. Also, he noted that the department complies with the guidelines the DNA Advisory Board sets forth for the entire forensics community to follow.

Regarding population frequency statistics, Huys testified that, once a scientist has a match, he looks at a series of ten genetic traits or characteristics. Using between 100 and 150 samples from the Alabama population, he determines in what proportions those traits occur. He then multiplies those proportions to determine how rare the combination of traits is in the general population. When doing such an analysis, the scientist also factors in a number that accounts for situations in which close relatives may reproduce.

Huys testified that the department compiled a database from the population within the state of Alabama, including samples from approximately 100 Caucasians and 100 black people. He explained that scientists have compared the Alabama database to other databases around the country and determined that

the Alabama population is very consistent with those other populations. Regarding controls, Huys testified that the analyst who is in charge of the case would not produce the statistics independently. Rather, two analysts would calculate the statistics independently and compare their results. He stated that the resulting statistics could be published only if the two analysts independently obtained the same result. In this case, these controls did not indicate that any error occurred in calculating the population frequency statistics. Finally, Huys testified that the statistical methods the department uses to estimate the significance of a match have been used for years, are used by other laboratories that comply with NRC requirements, and are generally accepted in the scientific community.

At the conclusion of the hearing on the admissibility of the DNA evidence, the trial court stated:

> "The court finds that the PCR testing process is reliable and generally accepted by the scientific community and the results of those tests are relevant to this case. As to the population frequency statistics, the court finds overwhelmingly throughout the country these statistics are accepted. The court takes judicial knowledge of caselaw from states all over the country-Massachusetts, Arizona, and Mississippi-that allow these results in. The question that needs to be focused on is whether these statistics are generally accepted in the scientific community. The court finds that whereas in the early '90's, there was some general debate as indicated by the report that the attorney for the defendant referred to, based on the caselaw around the country as of today's date, there is no debate as to the use of these statistics. For this court to reject the use of those population statistics would be in itself a decision that would probably be a vast minority of the cases. The court finds these statistics are based on valid scientific principles. The court further finds that these statistics are generally accepted principles in the community. The court finds that, based on both literature and caselaw, these are accepted by experts in the field and that the interpretation of these statistics and what they mean and the weight and credibility to be given to them are certainly jury questions. The court finds that the DNA evidence in this case and the population frequency statistics are relevant to the issues in this case based upon the location of the stains involved and the proximity to the crime scene in this case. Based upon that, the

court will allow this expert to testify as to the DNA test results under the PCR system as used and the court will further allow this expert to testify as to the population frequency statistics."

(R. 423-25.)

Based on the evidence presented, we conclude that the trial court did not err in admitting into evidence testimony regarding the PCR testing method and population frequency statistics. In this case, the State presented sufficient evidence to establish the reliability of the theory and techniques used in the PCR testing method and in the population frequency statistical analysis. Furthermore, in *Simmons v. State,* [Ms. CR-97-0768, September 17, 1999] --- So.2d ---- (Ala.Cr.App.1999), this court took judicial notice of the reliability of the theory and techniques used in the PCR method of DNA analysis. Additionally, the DNA evidence was relevant to establishing the appellant's identity as the perpetrator of the murder, to corroborating the appellant's statements to police, and to supporting the State's theory that the appellant raped or attempted to rape the victim. Therefore, the trial court did not err in admitting into evidence testimony about the results of DNA testing.

*Williams*, 795 So. 2d at 769-772.

Respondent contends that this claim was not fairly presented as a federal claim in state court and is, therefore, not for review, or alternatively, that the state court's decision was not contrary to, or an unreasonable application of federal law. (Doc. 14, p. 14). The Respondent's assertion that this claim is procedurally defaulted because it was not fairly presented as a federal claim in state court and because the Alabama Court of Criminal Appeals addressed the claim in terms of state law is clearly erroneous. In his direct appeal brief, Petitioner states, "[h]is rights to due process were violated, which rights are guaranteed under the Fifth and Fourteenth Amendments of the United States [C]onstitution and of Article 1, Section 6, constitution of Alabama of 1901." Tab R-28, p. 25. Although Petitioner erroneously cites *Perry v. State*, 586 So. 2d 254 (Ala. 1991) as the controlling legal authority on the admissibility of DNA evidence, the Court of Criminal Appeals correctly cites

149

§ 36-18-30, Ala. Code 1975, which in turn cites *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S. Ct. 2786, 2795-97, 125 L.Ed.2d 469 (1993) as its controlling legal authority on DNA admissibility.  Petitioner sufficiently presented this claim as a federal claim.

Regardless of whether Petitioner appropriately presented his federal claim in state court, this court finds that the state court's decision is not contrary to, nor an unreasonable application of federal law, nor an unreasonable determination of the facts in light of the evidence.  Further, Petitioner did not provide any evidence tending to demonstrate that the DNA evidence was inaccurate, unreliable or not widely accepted in the scientific community, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 2795-97, 125 L.Ed.2d 469 (1993).  This claim is due to be denied.

**CLAIM IX.**    **THE TRIAL COURT VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS BY LIMITING CROSS EXAMINATION OF AN EXPERT WITNESS FOR THE STATE**

Petitioner asserts that the trial court improperly limited his cross examination of the State's witness, Larry Huys, in violation of the Sixth Amendment Confrontation Clause guarantees.  (Doc. 5, p. 80).

During cross examination of Larry Huys, the following exchange occurred:

Q [Trial counsel]    Are you familiar with the case of [*Cauthen v.] Yates*, [716 So. 2d 1256 (Ala. Civ. App. 1998)] that came out last year concerning DNA testing?

A[Larry Huys]    No.

Q[Trial counsel ]    You are not familiar with a lab in Birmingham having a probability of paternity in a case, and getting independent tests run and it -

Prosecutor    Judge, I object to this line of questioning.  He is testifying before the jury

the results of some case holding such and such.  If he wants to offer a copy of that-

Court                         I'll sustain as to the form of that question.

Q[Trial counsel ]      Are you familiar with people getting up and testifying concerning DNA evidence when it can change the next week or next month or next year-new testing could be developed?

A[Larry Huys]          Certainly.

Q[Trial counsel ]      And these probabilities aren't accurate, are they?

A[Larry Huys]          They either go up or they go to zero.  Every test you add, you would either get a much rarer statistic or it becomes an exclusion.

On direct appeal, the Alabama Court of Criminal Appeals denied his claim:

> " ' "The scope of cross-examination in a criminal proceeding is within the discretion of the trial judge and it is not reviewable except for the trial judge's prejudicial abuse of discretion....
>
> " 'While rather wide latitude is allowed on cross-examination, the court has reasonable discretion in confining the examination to prevent diversion to outside issues.'

*Steeley v. State,* 622 So.2d 421, 423-24 (Ala.Cr.App.1992), cert. quashed, 622 So.2d 426 (Ala.1993) (quoting *Beavers v. State,* 565 So.2d 688, 690 (Ala.Cr.App.1990)) (other citations omitted). Based on the record before us, we conclude that the trial court did not abuse its discretion in sustaining the State's objection to defense counsel's question. Huys stated that he was not familiar with the case to which defense counsel was referring. Thus, rather than limiting defense counsel's right to cross-examine Huys, the trial court simply prevented defense counsel from testifying as to, and questioning Huys about, the facts of a case with which Huys was not familiar. Furthermore, although the trial court sustained the prosecutor's objection as to the form of defense counsel's question, it did not prevent defense counsel from pursuing that line of questioning. In fact, defense counsel subsequently elicited testimony that DNA evidence may change over time and that the probabilities could change as the testing procedures become more advanced. Therefore, we do not find any plain error in this regard.

*Williams v. State,* 795 So. 2d at 772-73, *aff'd*, 795 So. 2d 785 (Ala. 2001), *cert. denied*, 534
U.S. 900 (2001).

The Supreme Court has explained how cross-examination relates to the Confrontation
Clause:

> The Sixth Amendment's Confrontation Clause provides: "In all criminal
> prosecutions, the accused shall enjoy the right . . . to be confronted with the
> witnesses against him." This right is secured for defendants in state as well as
> in federal criminal proceedings. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065,
> 13 L.Ed.2d 923 (1965). The Court has emphasized that "a primary interest
> secured by [the Confrontation Clause] is the right of cross-examination."
> *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934
> (1965). The opportunity for cross-examination, protected by the Confrontation
> Clause, is critical for ensuring the integrity of the fact-finding process.
> Cross-examination is "the principal means by which the believability of a
> witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308,
> 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). . . .

> "The primary object of the constitutional provision in question was to prevent
> depositions or *ex parte* affidavits . . . being used against the prisoner in lieu of
> a personal examination and cross-examination of the witness in which the
> accused has an opportunity, not only of testing the recollection and sifting the
> conscience of the witness, but of compelling him to stand face to face with the
> jury in order that they may look at him, and judge by his demeanor upon the
> stand and the manner in which he gives his testimony whether he is worthy of
> belief."

> *Mattox v. United States*, 156 U.S. 237, 242-243, [15 S.Ct. 337, 839, 39 L.Ed.
> 409 (1895). See also *Kirby v. United States*, 174 U.S. 47, 53, 19 S.Ct. 574, 576,
> 43 L.Ed. 890] (1899).

> * * * *

> [T]he Confrontation Clause guarantees only "an *opportunity* for effective
> cross-examination, not cross-examination that is effective in whatever way, and
> to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S.,
> at 20, 106 S.Ct., at 294 (emphasis in original). This limitation is consistent with
> the concept that the right to confrontation is a functional one for the purpose of
> promoting reliability in a criminal trial.

*Kentucky v. Stincer,* 482 U.S. 730, 736-739, 107 S.Ct. 2658, 2662-64, 96 L.Ed.2d 631 (1987).

The Eleventh Circuit has further elaborated:

"A defendant's confrontation rights are satisfied when the cross-examination permitted exposes the jury to facts sufficient to evaluate the credibility of the witnesses and enables defense counsel to establish a record from which he can properly argue why the witness is less than reliable." *U.S. v. Baptista-Rodriguez,* 17 F.3d 1354, 1371 (11th Cir. 1994).  Once a defendant has engaged in sufficient cross-examination to satisfy the Confrontation Clause, further questioning is within the trial court's discretion.

*Mills v. Singletary*, 161 F.3d 1273, 1288 (11th Cir. 1998).

The record makes clear that the defense had an opportunity for effective cross-examination.  The fact that the trial court sustained an objection as to the form of a question does not in and of itself establish a violation of Williams's right to confrontation. Williams was not deprived of an opportunity for an effective cross examination of Huys. The evidentiary rulings did not affect the fundamental fairness of the trial.  The state court's decision was not based on an unreasonable application of United States Supreme Court law.[42] Therefore, Williams has not established a right to habeas relief on this claim.

---

[42]  Respondent asserts that this claim was not fairly presented as a federal claim in state court.  The court disagrees. In his direct appeal brief, Petitioner states: "[s]hutting off and limiting cross-examination of the State's witness is violative of the Fifth and Fourteenth Amendments, Constitution of the United States, and of Article 1, Section 6, Constitution of Alabama 1901."  Tab R-28, p. 56.

**CLAIM X.**     **THERE WAS INADEQUATE EVIDENCE TO SUPPORT PETITIONER'S CAPITAL MURDER CONVICTION.**

**CLAIM XI.**    **PETITIONER'S CONVICTION IS IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BECAUSE THERE WAS NO PARTICULARIZED INTENT AND THUS NO CAPITAL MURDER.**

**CLAIM XII.**   **THE TRIAL COURT VIOLATED PETITIONER'S RIGHT TO A FAIR TRIAL UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION BY DENYING A MOTION FOR VERDICT OF ACQUITTAL.**

In Claims X, XI and XII, Petitioner in essence alleges that the evidence was insufficient to support his capital conviction. Claim X asserts that the evidence was insufficient to prove rape or attempted rape based on Williams's statements of the sequence of events on the night of the offense and testimony of the medical examiner. Claim XI asserts that the evidence was insufficient to demonstrate that he had the required particularized intent for murder. (Doc. 5, p. 84). Claim XII alleges that the trial court violated Williams's due process rights by denying his motion for verdict of acquittal. (Doc. 5, p. 86). These claims were presented on direct appeal as Claims VI, VII, IX and X (Tab R. 28, pp. 56- 62) and were addressed by the state courts.

On direct appeal, the Alabama Court of Criminal Appeals wrote:

The appellant also argues that the trial court erred in denying his motion for a judgment of acquittal because the evidence was allegedly insufficient to support his conviction for capital murder. (Issues VI, VII, IX, and X in the appellant's brief to this court.) Specifically, he contends that the State did not prove that he committed a rape or an attempted rape and did not prove that he had a particularized intent to kill the victim.

"Intentional murder becomes capital murder when the killing

154

occurs during a rape. Section 13A-5-40, Code of Alabama 1975. 'During' is defined in the Code as meaning 'in the course of or in connection with the commission of, or in immediate flight from the commission of the underlying felony or attempt thereof.' Section 13A-5-39(2), Code of Alabama 1975. An accused is not guilty of a capital offense where the intent to commit the accompanying felony, in this case rape, was formed only after the victim was killed. *Connolly v. State,* 500 So.2d 57, 62 (Ala.Crim.App.1985), *aff'd,* 500 So.2d 68 (Ala.1986). An accompanying felony committed as a 'mere afterthought' and unrelated to the murder will not sustain a conviction of capital murder; the question of the defendant's intent at the time of the commission of the crime is usually a jury question. *See Smelley v. State,* 564 So.2d 74, 86-87 (Ala.Crim.App.1990), *cert. denied, Ex parte Green,* 564 So.2d 89 (Ala.1990); *Connolly,* supra at 63."

*Padgett v. State,* 668 So.2d 78, 83 (Ala.Cr.App.), cert. denied, 668 So.2d 88 (Ala.1995).

Nevertheless, "[e]ven if we were to concede that the death occurred before the rape, another doctrine stands in the way of the appellant. This court has held that if an accused had the intent to commit the underlying offense at the time he murdered and the offense is committed immediately after the murder, he is guilty of murder while committing the underlying offense, and the capital murder statute still applies. *Hallford v. State,* 548 So.2d 526, 534 (Ala.Cr.App.1988), *aff'd,* 548 So.2d 547 (Ala.), *cert. denied,* 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989). It seems to be generally understood that it is impossible to say with certainty whether intercourse immediately preceded or immediately followed the murder of a female victim."

*Thompson v. State,* 615 So.2d 129, 133 (Ala.Cr.App.1992), *cert. denied,* 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 418 (1993). It is not necessary to show an injury to prove that a rape or an attempted rape occurred. *See Greathouse v. State,* 650 So.2d 599 (Ala.Cr.App.1994). Additionally, " '[i]ntent, ... being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.' " *French v. State,* 687 So.2d 202, 204 (Ala.Cr.App.1995), rev'd on other grounds, 687 So.2d 205 (Ala.1996) (quoting *McCord v. State,* 501 So.2d 520, 528-29 (Ala.Cr.App.1986)).

"'The question of intent is hardly ever capable of direct proof. Such questions are normally questions for the jury. *McMurphy v. State,* 455 So.2d 924 (Ala.Crim.App.1984); *Craig v. State,* 410 So.2d 449 (Ala.Crim.App.1981), cert. denied, 410 So.2d 449 (Ala.1981).' *Loper v. State,* 469 So.2d 707, 710 (Ala.Cr.App.1985). 'Where one assaults another by the use of a deadly weapon, the law will infer from that fact that he designed to accomplish the probable and natural results of his act, in the absence of proof to the contrary.' *Snipes v. State,* 364 So.2d 424, 426 (Ala.Cr.App.1978)."

*Oryang v. State,* 642 So.2d 989, 994 (Ala.Cr.App.1994). Further, "[i]ntent may be inferred from the use of a deadly weapon, the character of the assault, or other attendant circumstances." *DeRamus v. State,* 565 So.2d 1167, 1171 (Ala.Cr.App.1990). Finally,

" '[i]n determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.' *Faircloth v.State,* 471 So.2d 485, 489 (Ala.Cr.App.1984), affirmed, *Ex parte Faircloth,* [471] So.2d 493 (Ala.1985).

" '....

" ' ' "The role of appellate courts is not to say what the facts are. Our role, ... is to judge whether the evidence is *legally* sufficient to allow submission of an issue for decision to the jury." *Ex parte Bankston,* 358 So.2d 1040, 1042 (Ala.1978). An appellate court may interfere with the jury's verdict only where it reaches "a clear conclusion that the finding and judgment are wrong." *Kelly v. State,* 273 Ala. 240, 244, 139 So.2d 326 (1962). "The rule is clearly established in this State that a verdict of conviction should not be set aside on the ground of the insufficiency of the evidence to sustain the verdict, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it was wrong and unjust." *Bridges v. State,* 284 Ala. 412, 420, 225 So.2d 821 (1969).... A verdict on conflicting evidence is conclusive on appeal. *Roberson v. State,* 162 Ala. 30, 50 So. 345 (1909). "[W]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith

and presents a substantial defense." *Fuller v. State,* 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied, *Fuller v. Alabama,* 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960).' *Granger[ v. State* ], 473 So.2d [1137] at 1139 [ (Ala.Cr.App.1985) ].

"... 'Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty.' *White v. State,* 294 Ala. 265, 272, 314 So.2d 857, cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975). 'Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.' *Cochran v. State*, 500 So.2d 1161, 1177 (Ala.Cr.App.1984), affirmed in pertinent part, reversed in part on other grounds, *Ex parte Cochran,* 500 So.2d 1179 (Ala.1985)."

*White v. State,* 546 So.2d 1014, 1017 (Ala.Cr.App.1989).

During the investigation of this case, the appellant made the following statements about his participation in the offense:

"The night started off with a drink and smoking marijuana. I had a lot to drink and smoke this night. I was on the hill at about this time when I decided to leave and go home. It was about 10:30 pm or so. On my way home I stopped off at Russell's trailor and sat in there for a while and time passed by it was about 12:30 or 1 a.m when I left and headed home. When I crossed the ditch going into the apartments I decide to go see Melody but instead I went in through the back window. (This occurs at about 1 or 1:30 a.m.) Once inside I grab an ordinary kitchen knife and headed upstairs. All I wanted was sex that was all I could think about at the time. About 1/3 the way up the stairs I pulled off my pants. When I went into the bedroom and stuck the knife at her neck and started undoing her shorts and by this time she jumps up and the knife I had in my hand cut her and so I panicked and she let out a little scream before she started to get loud so I cover her mouth with my hand but she bit me. So we tussle around and I finally got her to keep still by putting my hand at her neck and proceeded to remove her shorts after I got the shorts off I realized that she had stop breathing so not being in my right state of mind I had sex and ejaculated outside of the vagina. I never meant to kill those were not my intentions. I have a problem and I want help. After I did

what I did I left out of the back door and let the window down. I removed her purse from the apartment there was nothing in it worth anything to me so I throw the knife and purse in the dumpster out front of the apartments this was about 2:30-3:00am. So after I went home and slept on it. I never did anything like this before, I have let drugs, alcohol, and sex ruin my life."

(C.R.124.)

"The couch was at the back window. Took screen off back window laid it on couch. Climb through window onto a kitchen table. Saw and grabbed a knife off the counter. Proceed to go upstairs. First set of stairs. I removed my pants and shoes and went upstairs crossed over a kiddie rail or fence at top of the stairs. Just peeked in at the two kids. Went in to Melody's room stuck the knife at her neck. Proceeded remove her shorts. She awoke and jumped. The knife cut her neck I panicked we tussle off the bed onto the floor then there was no movement from her and no breathing so I had sex with her for about 15 or so minutes no condom I pulled out, shot off. When I panicked and she started to scream I grab her around her throat and proceeded to choke her that is when she stopped moving So I leave as I was leaving I grab her purse and go through it. Found nothing valuable. I leave out the back door putting my clothes back on. I let the window back down shut the door. I had the knife and purse in my hand threw both objects into dumpster in the apartments. The purse was green and black it was a flip top button in front with straps that you could wear like a back pack."

(C.R.126.) In addition, the evidence showed that the appellant left the lower half of the victim's body unclothed and left a semen stain on her stomach area. DNA testing confirmed that blood and semen found at the scene were consistent with the appellant's genetic profile. Other evidence found at the crime scene also corroborated the appellant's statements about the offense. Finally, the medical examiner testified that the cause of the victim's death was asphyxiation, either by smothering or strangulation, and that the other wounds inflicted upon the victim were consistent with a beating but were not the cause of death.

> The appellant's statements showed that he entered the victim's apartment with an intent to rape the victim and that he took a knife upstairs with him to facilitate the rape. Thus, the State presented sufficient evidence from which the jury could have reasonably concluded that the appellant raped or attempted to rape the victim and that he intentionally killed her. Accordingly, the trial court properly denied the appellant's motions for a judgment of acquittal and properly submitted the case to the jury. Finally, the evidence clearly supports the jury's verdict. Therefore, the appellant's arguments in this regard are without merit.

*Williams v. State*, 795 So. 2d 753, 773-77 (Ala. Cr. App. 1999), *aff'd.*, 795 So. 2d 785 (Ala. 2001), *cert. denied,* 534 U.S.900 (2001).

Respondent contends that the state court's decision on the merits is entitled to a presumption of correctness. (Doc. 14). This court agrees.

The Supreme Court explained the constitutional review process to be applied to a challenge based on sufficiency of the evidence:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

*Jackson v. Virginia,* 443 U.S. 307, 318-319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979).

Williams has presented no evidence to negate that he intended to rape and kill Rowell. Williams admitted in his statements that he intended to rape Rowell when he broke into the house, armed himself with a knife, cut and strangled her when she resisted, and proceeded to have intercourse. The evidence in the record reasonably supports Williams's guilt beyond a reasonable doubt. The decision of the Alabama Court of Criminal Appeals was not based on an unreasonable determination of the facts presented at trial nor was it an unreasonable application of *Jackson*. Consequently, this court will deny Williams's amended habeas petition on this claim.

### CLAIM XIII. THE MANNER OF EXECUTION USED BY THE STATE OF ALABAMA CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT

Williams alleges that his execution would be cruel and unusual punishment because Alabama's method of execution does not comport with evolving standards of decency. (Doc. 5, p. 88). This claim was presented only in the context of electrocution on direct appeal, and was not raised in any form on collateral review. Alabama adopted lethal injection as an alternative form of execution effective July 1, 2002, several months before Williams began collateral proceedings in state court. Because Alabama no longer uses electrocution as its primary method of capital punishment, that portion of the claim is moot.

Moreover, regarding the question of procedural default of Williams's attempt to raise lethal injection claim for the first time in his amended habeas petition, this court agrees with the reasoning of a similarly-postured case from the Southern District of Alabama:

[O]n July 1, 2002, the Alabama legislature amended Ala. Code § 15-18-82(a),

to make lethal injection the standard method of execution in Alabama. At the time of the amendment, petitioner's appeal of the denial of his Rule 32 petition was pending in the Alabama Court of Criminal Appeals. (Doc. 10, Vol. 25 at 4866; *McGahee v. State*, 885 So.2d 191, 228 (Ala.Crim.App.2003)). In his previous Rule 32 petition, petitioner had challenged only the constitutionality of electrocution as a method of execution. However, after the amendment, lethal injection became the prescribed method of execution for petitioner; yet, petitioner did not file a second Rule 32 petition in the state court to challenge its constitutionality. *See Ala. R.Crim. P.* 32.1(e) (petition based on newly discovered material facts). Any attempt by petitioner to do so now would be barred. *See Ala. R.Crim. P.* 32.2(c) (one-year, or in some instances six months, limitations period for filing a successive petition on the basis of newly discovered material facts).

*McGahee v. Campbell*, 2007 WL 3025192 *11, n. 6 (S.D. Ala. February 14, 2007).

Accordingly, Williams's Eighth Amendment lethal injection claim is procedurally defaulted: he failed to challenge the current method of execution in a second Rule 32 petition in state court and any attempt to do so now would be futile. Alternatively, the amended habeas petition is devoid of any legal or factual support for the conclusion that such a method of punishment violates the Eighth Amendment. As such, the lethal injection claim is also due to be dismissed for failure to comply with the specificity requirements governing federal pleadings. Therefore, this claim is due to be denied.

### CLAIM XIV. THE TRIAL COURT VIOLATED PETITIONER'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS BY ALLOWING THE STATE TO PRESENT ARGUMENT ON AN AGGRAVATING CIRCUMSTANCE NOT CHARGED

Williams contends that his Fifth, Sixth, Eighth and Fourteenth Amendment rights were violated when, during closing arguments, the prosecutor improperly informed the jury that it could consider burglary and robbery as aggravating circumstances. (Doc. 5, p. 88). Williams

161

conceded the appropriateness of the prosecutor's argument regarding rape as an aggravating circumstance.

Williams presented this same claim on direct appeal. (Tab R. 29, p. 71). In denying the claim, the Court of Criminal Appeals held that, viewed in context, the "prosecutor's comment was not misleading," and that the "trial court properly instructed that the only applicable aggravating circumstance was that the appellant committed the murder during a rape or an attempted rape." *Williams*, 729 So. 2d 753, 781, *aff'd.*, 795 So. 2d 785 (Ala. 2001), *cert. denied,* 534 U.S.900 (2001).

Respondent argues that this claim is procedurally barred from this court's review because it was not fairly presented as a federal claim in state court, and, in any event, Williams cannot overcome the presumption of correctness in the state court findings denying the claim on the merits. (Doc. 14, p. 80).

Prior to seeking relief in federal court from a state court conviction and sentence, a habeas petitioner is first required to present his federal claims to the state court by exhausting all of the State's available procedures. The purpose of this requirement is to ensure that state courts are afforded the first opportunity to correct federal questions affecting the validity of state court convictions. If a federal claim has not first been exhausted in state court, this court may also find that it is "procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile." *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (citing *Picard v. Connor,* 404 U.S. 270,

276 (1971)) and *Snowden v. Singletary*, 135 F.3d 732, 737(11th Cir. 1998)).

Petitioner has not exhausted this claim in state court because he did not make the state court aware of his *federal* allegation that the trial court's allowance of the alleged improper arguments denied him due process of law guaranteed by the Fourteenth Amendment. Dismissal to present this claim in state court would be futile because of the statute of limitation in Rule 32.2(c), Ala. R. Crim. P., and the ban on successive petitions in Rule 32.2(b), Ala. R. Crim. P. The court, thus, finds that this claim is procedurally defaulted and Petitioner has not alleged "cause and prejudice" to excuse the procedural default.

Additionally, much the same issue was previously addressed by this court in Claim VI.B.ii., *infra*, where this court found that the prosecutor's comments regarding aggravating circumstances were not improper, and that the trial court properly charged the jury regarding the existing aggravating circumstance of rape.  A petitioner is entitled to habeas relief based on the improper comments of a prosecutor *only* if the comments "so infected the trial with unfairness as to make the resulting conviction [or sentence] a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The prosecutor's comments did not run afoul of *Darden*.  The trial court did not deny Williams his right to a fair trial under federal standards.  Therefore, this claim is due to be denied.

**CLAIM XV. THE TRIAL COURT VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AND SENTENCING BY PERMITTING OVERLY EMOTIONAL TESTIMONY AT THE SENTENCING HEARING BEFORE THE TRIAL COURT**

Next, Petitioner asserts that the trial court violated Williams's rights to a fair trial and sentencing by permitting overly emotional testimony from Ms. Rowell's mother at the sentencing hearing. (Doc. 5, p. 89). Petitioner presented this same claim on direct appeal. (Tab R. 28, p. 72). The Court of Criminal Appeals denied the claim:

> In *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct 2597, 115 L.Ed.2d 720 (1991), the United States Supreme Court held that victim impact evidence is admissible during the sentencing phase of a capital trial. "[A] prosecutor may present and argue evidence relating to the victim and the impact of the victim's death on the victim's family in the penalty phase of a capital trial." *McNair v. State*, 653 So. 2d 320, 331 (Ala. Cri. App. 1992), aff'd, 653 So. 2d 353 (Ala. 1994), cert. denied, 513 U.S. 1159, 115 S.Ct. 1121, 130 L.Ed.2d 1084 (1995). The State did not present victim impact evidence to the jury during the guilt or penalty phases of the trial. Furthermore, the record does not indicate that the victim's mother was overly emotional when presenting victim impact evidence to the trial court. Finally, the appellant concedes that his argument is contrary to current law. (Appellant's brief at p. 74.) Therefore, we do not find any plain error in this regard.

*Williams*, 795 So. 2d 753, 782, *aff'd.*, 795 So. 2d 785 (Ala. 2001), *cert. denied,* 534 U.S.900 (2001).

The Respondent contends that this claim was not fairly presented as a federal claim in state court and, in the alternative, that the Petitioner cannot overcome the presumption of correctness of the state court decision. (Doc. 14, p. 84). Respondent erroneously alleges that this claim is procedurally barred because it was not fairly presented as a federal claim in state court. (Doc. 14, p. 84). Petitioner states in his brief on direct appeal: "[s]uch statement is

violative of the Fifth, Eight[h], and Fourteenth Amendments to the United States Constitution and of Article 1, Section 6, Constitution of Alabama of 1901" (Tab R-28, p. 74), and the Alabama Court of Criminal Appeals addressed this claim as a constitutional issue.

In *Payne,* as discussed by the Alabama Court of Criminal Appeals, the Supreme Court recognized that only where victim impact evidence or argument is unfairly prejudicial may a court prevent its use through the Due Process Clause of the Fourteenth Amendment. 501 U.S at 825, 111 S. Ct. at 2608 (citing *Darden v. Wainwright,* 477 U.S. 168, 179-183, 106 S. Ct. 2464, 2470-2472, 91 L. Ed. 2d 144 (1986)). The question then is whether the victim impact evidence introduced "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden,* 477 U.S. at 181, 106 S.Ct. at 2471 (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)).

Williams complains about the testimony of Donna Rowell, the victim's mother:

Q      . . . . Did Melanie have children?

A      Yes, sir.

Q      And those children are where now?

A      They are living with us.

Q      Have they been living with you since Melanie's death?

A      With the exception of nine months when they were with their father.

Q      How old are they now?

A      Three and a half and four and a half.

Q      And they are with you now?  They are in your custody?

A      Yes, sir.

Q      They are at your home?

A      Yes, sir.

Q      I guess I would like to ask you how the death of Melanie – the crime that Marcus Williams has been convicted of – has impacted Melanie's family – you, the children, and her father and sister?

A      I have had to go see a therapist because I have flashbacks of finding my daughter.  I don't get a lot of sleep.  My one daughter keeps all her windows locked and she blocks them with sticks because she is afraid.  My other daughter won't go to bed at night without the t.v. on.  Holidays just aren't the same.  The children have also been to counseling.  Kristin, the little girl, has a lot of anger.  She doesn't understand a lot of things.  She does understand that her mommy is gone.  She cries for her almost every night.  She wakes up in her bed between the hours of three and five wanting to know where we are.  She has to have someone beside her.  Little William loves his mama and misses her a lot.  We are like a puzzle that was once complete, and now there is a piece missing.  My husband carries a picture of Melanie around with him.  He has an I.D. bracelet with her name on it.  The baby will not go to bed at night without her mama's picture and William has to wear an I.D. bracelet.  On holidays, they know their mommy is in heaven, but they can't understand why she can't come down and visit.  I let them pick out balloons for holidays with helium in them.  Little William just started learning how to print so he wrote her a letter on the balloon and they sent it up to their mommy.  They put, "We love you mommy and we miss you."  On the one for Easter this year, he wrote, "Please come down and see us."  They are okay when they first send it up, but when it is out of sight, Kristen will cry and cry and cry and say, "I miss mommy."  We love those babies.  We are doing the best we can to raise them.  It is just it is a little harder on us because we are older now, and I have to take a break in the middle of the day or I just can't make it.  One thing we will always have of Melanie is her memories.  Nothing or nobody can ever take that from us.  That's all.

(Tab R. 25, pp. 604-606).

       This court agrees with the Court of Criminal Appeals that the victim impact evidence

did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due

process." *Darden*, 477 U.S. at 181, 106 S. Ct. at 2471.  The Petitioner admitted in his

statements, and, therefore, was well aware that Ms. Rowell's children were present in her

house during the offense, and that those children would wake the next morning to find their

mother's lifeless body.  The Alabama Court of Criminal Appeals' decision that the limited

testimony regarding Ms. Rowell's children and the impact of Ms. Rowell's death on her family

did not operate to deny Williams a fair trial or to prejudice his substantial rights was not an

unreasonable application of clearly established federal law as determined by the Supreme

Court in *Payne* and *Darden*.  This claim is due to be denied.

## CLAIM XVI. THE TRIAL COURT'S CHARGE ON VOLUNTARY INTOXICATION VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

On page 89 of the petition, Williams alleges that the trial court's charge on voluntary

intoxication violated his Fifth, Sixth, Eight, and Fourteenth Amendment rights. Specifically,

he argues that the trial court's statement was confusing and misleading that, for intoxication

to negate the specific intent required for a murder conviction, the intoxication must be "so

great as to amount to insanity." (Doc. 5, p. 91).  Petitioner first presented this claim on direct

appeal. (Tab R. 28, pp. 67, 77).  In denying the claim, the Alabama Court of Criminal Appeals

stated:

> We rejected a similar claim in *Williams v. State*, 710 So. 2d 1276, 1332 (Ala. Cr.
> App. 1996), aff'd, 710 So. 2d 1350 (Ala. 1997), cert denied, 524 U.S. 929, 118
> S.Ct 2325, 141 L.Ed.2d 699 (1998), stating as follows:
>
> > "'Bankhead contends that the court's instruction requiring that the
> > jury, in order to find a drunkenness defense applicable, had to find

> Bankhead insane due to intoxication, was prejudicial.   We
> disagree.  In an assault and battery case, voluntary intoxication is
> no defense, unless the degree of intoxication amounts to insanity
> and renders the accused incapable of forming an intent to injure.
> *Lister v. State*, 437 So. 2d 622 (Ala. Cr. App. 1983).  The same
> standard is applicable in homicide cases.  *Crosslin [v. State,* 446
> So. 2d 675 (Ala. Cr. App. 1983), appeal after remand, 489 So. 2d
> 680 (Ala. Cr. App. 1986)].  Although intoxication in itself does
> not constitute a mental disease or defect within the meaning of §
> 13A-3-1, Code of Alabama (1975), intoxication does include a
> disturbance of mental or physical capacities resulting from the
> introduction of any substance into the body.  § 13A-3-2.  The
> degree of intoxication required to establish that a defendant was
> incapable of forming an intent to kill is a degree so extreme as to
> render it impossible for the defendant to form the intent to kill.  A
> jury is capable of determining whether a defendant's intoxication
> rendered it impossible for the defendant to form a particular
> mental state.

*Ex parte Bankhead*, 585 So. 2d 112, 121 (Ala. 1991).

> Furthermore, the appellant concedes that his argument is contrary to current law.
> Therefore, we do not find any plain error in the trial court's voluntary
> intoxication instruction.

*Williams*, 795 So. 2d 753, 779, *aff'd.*, 795 So. 2d 785 (Ala.  2001), *cert. denied,* 534 U.S.900

(2001).

Respondent argues that the state court's decision was not contrary to, or an

unreasonable application of federal law, or and unreasonable determination of the facts in light

of the evidence.  (Doc. 14, p. 87).  This court agrees.

The Eleventh Circuit Court of Appeals has set forth the habeas review standard when

jury instructions are challenged:

Federal habeas relief is unavailable "for errors of state law." *Estelle v. McGuire*,

> 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990)). A jury instruction that "was allegedly incorrect under state law is not a basis for habeas relief," *Id*. at 71-72, 112 S.Ct. at 482, because federal habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 68, 112 S.Ct. at 480. Unlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, " 'so infected the entire trial that the resulting conviction violate[d] due process.' " *Id*. at 72, 112 S.Ct. at 482 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400-01, 38 L.Ed.2d 368 (1973)).

*Jamerson v. Secretary for Dept. of Corrections*,  410 F.3d 682, 688 (11th Cir. 2005).

Even if the instructions were erroneous, in the context of the whole charge and trial record, it did not so infect the trial so as to result in a conviction that violated due process. Further, the state court's decision was not an unreasonable application of the facts in light of the evidence.  The evidence of voluntary intoxication was not great enough to warrant a finding that Petitioner was incapable of forming the necessary intent to commit a capital crime. His clear recollection of the events as recounted in the statements he made to the police belies a level of intoxication profound enough to prevent him from forming an intent to commit the murder.  In the absence of evidence establishing such extreme intoxication, the trial court's charge on voluntary intoxication did not result in a conviction that violated due process. Petitioner is not entitled to relief on this claim.

CLAIM XVII.      THE TRIAL COURT VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY REFUSING TO GIVE A MANSLAUGHTER CHARGE

At page 91 of the petition, Williams alleges that the trial court violated his

constitutional rights by not instructing the jury on manslaughter as a lesser included offense. Petitioner argues that the evidence, including his statements and the fact that he was intoxicated at the time of the crime, supported giving the manslaughter charge.  Petitioner presented this same claim on direct appeal.  (Tab R. 28, p.79).

The Alabama Court of Criminal Appeals addressed this claim under the plain error standard because the defense did not object to it at trial.  The court found that the evidence did not support a charge of manslaughter.  The Alabama Court of Criminal Appeals wrote:

> Although the prosecutor, defense counsel, and the trial court discussed whether the trial court should give such a charge, defense counsel did not object when the trial court stated that it would not instruct the jury on manslaughter. Likewise, counsel did not object after the trial court had given its oral charge. Therefore, we review this contention for plain error.  *See* Rule 45A, Ala. R. App. P.
>
> > "No error occurs in not giving a charge on a lesser included offense when there is no reasonable theory to support the lesser offense . . . .  '"A trial judge may refuse to charge on a lesser included offense when it is clear to the judicial mind that there is no evidence to support the jury's being charged on the lesser included offense." ' "
>
> *Williams v. State*, 601 So.2d 1062, 1075 (Ala. Cr. App. 1991), aff'd, 662 So. 2d 929 (Ala.), cert. denied, 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (Ala. Cr. App. 1991), aff'd, 600 So. 2d 372 (Ala. 1992), cert denied, 507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993), and *Gurganum v. State*, 520 So. 2d 170, 174 (Ala. Cr. App. 1987)).  When it refused to give the instruction on manslaughter, the trial court acknowledged that there was no basis for giving such an instruction because the appellant's statements showed that he entered the victim's apartment with the intent to rape her.  Furthermore, during his guilt-phase closing argument, defense counsel admitted that, when the appellant entered the victim's apartment, he intended to rape her.  (R. 498).  However, he contended that the appellant did not intend to kill the victim.  Accordingly, he argued that the appellant was guilty, at most, of murder.  During its guilt-phase

170

oral charge, the trial court instructed the jury on the lesser included offense of felony murder. Thus, if the jury believed defense counsel's contention that the appellant intended to rape but did not intend to kill the victim, it could have found him guilty of felony murder. However, there was simply no reasonable theory from the evidence to support giving an instruction on manslaughter. Moreover, we have held that it is not plain error for a trial court not to give an instruction on a lesser included offense when that instruction would be inconsistent with the defense's trial strategy. *See Bush v. State*, 695 So. 2d 70, 113 (Ala.Cr.App. 1995), aff'd, 695 So. 2d 138 (Ala.), cert. denied, 522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997).

*Williams*, 795 So. 2d 753, 778-79, *aff'd.*, 795 So. 2d 785 (Ala. 2001), *cert. denied,* 534 U.S.900 (2001). *See also Hopper v. Evans*, 456 U.S. 605, 611 (1982) ("Due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction.") (emphasis in original); *Ritter v. Smith*, 726 F.2d 1505, 1509 (11th Cir. 1984)(same).

Respondent asserts that this claim is procedurally defaulted because it was not fairly presented as a federal claim in state court, and, in the alternative, that Petitioner cannot overcome the state court decision's presumption of correctness. (Doc. 14, pp. 91-92). Respondent erroneously argues that this claim is precluded because it was not fairly presented as a federal claim in state court. (Doc. 14, p. 91.) However, in his brief on direct appeal, Williams states: "[a]s a result, Marcus Williams was wrongfully convicted under the Fifth and Fourteenth Amendments to the United States Constitution and of Article 1, Section 6, Constitution of Alabama 1901." (Tab R.28, pp. 82-83.)

The state court finding is entitled to a presumption of correctness, as it is neither "contrary to," nor an "unreasonable application of" clearly established Supreme Court

171

precedent.  The state court's decision was not objectively unreasonable.  Expressly stated in

the resolution of this issue by the Alabama Court of Criminal Appeals is the finding of fact that

no evidence supported giving the manslaughter charge.  *Williams*, 795 So. 2d at 779.  This

claim is due to be denied.

CLAIM XVIII.     THE TRIAL COURT VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS
                 UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS
                 BY ALLOWING HIS COERCED STATEMENT INTO EVIDENCE

Williams has alleged a claim for relief based upon the admission of certain inculpatory

statements.  He alleges that allowing his involuntary statements into evidence violated his

rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States

Constitution because they were induced by promises from police interrogators and were made

while Williams was sleep deprived and under the influence of alcohol, marijuana and cocaine.

(Doc. 5, pp. 95-96).

Before trial, Petitioner filed a motion to suppress the statements; he asserted as the basis

for suppression that (1) his statements were obtained prior to Williams being informed of his

rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966); (2) the statements were obtained

after Williams requested the presence of an attorney in violation of his rights pursuant to

*Miranda v. Arizona*, 384 U.S. 436 (1966); (3) the warnings given to Williams were not

adequate and the waiver of his rights was not valid; (4) Williams was seized and interrogated

on less than probable cause, in violation of his Fourth and Fourteenth Amendment rights; (5)

Williams did not voluntarily answer questions, but was coerced into responding; and (6)

172

Williams statements were made because of promises of leniency by police investigators, thereby rendering them involuntary.  (Tab R. 27, pp. 95-97).  The trial court conducted a suppression hearing on February 24, 1999. (Tab R. 8, pp. 229-94).

At the hearing, the police investigators and Petitioner testified regarding the circumstances under which Petitioner's statements were taken.  The Petitioner testified that after being arrested on November 24, 1999, as a suspect in another offense, he was informed that he was also a suspect in Ms.  Rowell's case.  Petitioner gave the following testimony on direct examination:

> Q  Who came in and got you?
>
> A  Joe Sweatt came back to the jail and got me and escorted me back over to the Sheriff's Office.
>
> Q  What did he tell you?
>
> A  He didn't say nothing.  When I got inside the Sheriff's office, Tommy Dixon spoke up and told me they feel like I'm a suspect in another case.
>
> Q  Who all was in that room?
>
> A  At that time, Joe Sweatt, Tommy Dixon and another Ashville City cop, Dennis Matthews.
>
> Q  That is all that was present?
>
> A  Yes.
>
> Q  Then what happened?
>
> A  I kept denying it and Tommy Dixon told me it would be best to go on and give a statement because they had

173

evidence against me in another case.  He would draw a picture for the Judge and make it easier on me if I speak now.

Q      What did you understand Mr. Dixon's position to be at that time?

A      He was the chief investigator.

Q      Had he made that fact known to you?

A      Yes.

Q      Were there other officers present when he made those statements to you?

A      Yes.

Q      Did they say anything to confirm or deny the statements he was making to you?

A      No.

Q      What did you understand it to mean when he said he would make it easier on you?

A      I understood that he would talk to the Judge and make it light on my case – a lighter sentence.

Q      How long were you in there with the three of them before you told them about your involvement in this case today?

A      About an hour.

Q      At any point in time did you sign a statement concerning your Miranda Rights?

A      Not at that time, I didn't.  It was after they asked me questions.

Q	How long had they asked you questions before you signed the Miranda Warning?

A	About an hour.

Q	This is State's Exhibit No. 7 that I have a copy of that is dated three-fifty-one p.m., you had already been questioned over an hour before you executed this statement?

A	Yes.

Q	Then did you go through a question and answer session after you signed that document?

A	Not after he asked me to write out – make my own statement – write out my own statement.

Q	Do you ever recall one of the officers writing down what you were telling them?

A	Yes.

Q	When was that?

A	While I was talking.

Q	Before this Miranda?

A	Yes, before this.

Q	Did you later write out a statement of your own?

A	Yes.

Q	That was at five-fifteen?

A	Yes.

Q	Is that your writing?

A       Yes.

Q       That is State's Exhibit No. 12?

A       Yes.

Q       That is your writing and that is your signature?

A       Yes.

Q       But did you sign a Miranda before you gave that written statement at five-fifteen?

A       No.

                               * * * *

Q       On the next day, they came back and asked you for another statement, did they not?

A       Yes

Q       How did that come about?

A       They asked me – they needed to verify some of the statements I had made the day before.

Q       Who all came and told you that?

A       If I recall correctly, it was Joe Sweatt and Randy Wall that came to the cell and got me.

Q       Where did they take you?

A       To the Sheriff's office.

Q       Who all was present at that time?

A       Tommy Dixon, Randy Wall and Joe Sweatt.

Q      At any time either on the 24th or 25th, did anybody threaten you?

A      No.

Q      Threaten to harm you in any way?

A      No.

Q      Coerce you to do these statements?

A      What do you mean coerce?

Q      Did they force you to do it?

A      No.

Q      But now you have told us about some things you were told on the 24th.  Were you promised anything on the 25th about giving that statement?

A      No.

Q      Did Mr. Dixon say anything to you that day or Mr. Wall or Mr. Sweatt before you gave the statement?

A      No.

Q      How did that come about?

A      They just told me I needed to make some more statements to verify certain issues in the case.

Q      Did they ask you questions or did you just sit down and give a statement?

A      They asked me questions first.

Q      Then what happened after they asked you questions?

177

A       I signed another Miranda sheet.

Q       What happened after you signed that Miranda sheet?

A       I wrote out my statement.

(Tab R 8, pp. 263-68).

Chief investigator Thomas Dixon testified that Williams was not told that it would be better or worse for him to make a statement (Tab R 8, p. 282); that Williams was not told that a judge would be made aware of his cooperation (*Id*. at 283); and that Williams was not given any promises before making any of his statements (*Id.* at 284). The trial court denied the motion to suppress as to Petitioner's inculpatory statements made on November 24 and 25, 1999. (Tab R. 8 at 292).

On direct appeal, Williams argued that his statements were coerced by promises made by the police investigator, making his statement involuntary and, therefore, inadmissible, citing *Rincher v. State*, 632 So. 2d 37 (Ala. Crim. App. 1993). (Tab R. 28, p. 50). In resolving this claim, the Court of Criminal Appeals wrote:

Also, "we note that the mere promise to make cooperation known to law enforcement authorities, as opposed to a direct promise of a reduced sentence, generally is not considered an illegal inducement. In *United States v. Nash*, 910 F.2d 749, 752-53 (11th Cir. 1990), the United States Court of Appeals for the Eleventh Circuit held:

"'We find that the district court was not clearly erroneous in accepting [the officer's] testimony that he only promised to make [the defendant's] cooperation known to the United States Attorney's office and gave no guarantee of a reduced sentence. Although [the officer] told [the Defendant] that cooperating defendants generally "fared better time-wise," this statement did

not amount to an illegal inducement: "telling the [defendant] in a noncoercive manner of the realistically expected penalties and encouraging [him] to tell the truth is no more than affording [him] the chance to make an informed decision with respect to [his] cooperation with the government."'

"(Quoting *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978)).  Accord *United States v. Levy*, 955 F.2d 1098, 1105 (7th Cir. 1992)(holding that federal agent's indication to defendant that his cooperation would be reported to the United States attorney did not make defendant's confession involuntary); *United States v. Meirovitz*, 918 F.2d 1376, 1380 (8th Cir. 1990)(holding that confession was voluntary although agents had promised to inform prosecutor of defendant's cooperation); *United States v. Guerrero*, 847 F.2d 1363 (9th Cir. 1988)(holding that agent's promise to inform prosecutor of defendant's cooperation does not render a subsequent confession involuntary); *United States v. Baldachino*, 762 F.2d 170, 179 (1st Cir. 1985)(holding that an officer's promise to bring defendant's co-operation to the attention of the prosecutor did not make confession involuntary)."

*Id*. at 730 n.4.  Finally,

"'"[a]bsent clear error, the [circuit] court's credibility choices at suppression hearings are binding on this court." *Walker v. State*, 551 So. 2d 449, 451 (Ala. Cr. App. 1989).  The standard of review of conflicting evidence at a motion to suppress a confession is whether the trial court's finding was "manifestly contrary to the great weight of the evidence."   *Ex parte Matthews*, 601 So. 2d 52 (Ala. 1992), *cert. denied*, 505 U.S. 1206, 112 S.Ct. 2996, 120 L.Ed.2d 872 (1992).  *See also Ex parte Singleton*, 465 So. 2d 443, 445 (Ala. 1995)(whether the finding was "palpably contrary to the weight of the evidence.").'

"*Thompson v. State*, 611 So. 2d 476, 478 (Ala. Cr. App. 1992)."

*D.M.M. v. State*, 647 So. 2d 57, 61 (Ala. Cr. App. 1994).

Based on the conflicting evidence in the record before us, we

179

conclude that the trial court did not err in admitting the appellant's statements into evidence.   Accordingly, the appellant's argument is without merit.

*Williams v. State*, 795 So. 2d at 768-69, *aff'd.*, 795 So. 2d 785 (Ala.  2001), *cert. denied,* 534 U.S. 900 (2001).

This court finds that the Alabama Court of Criminal Appeals' decision is not contrary to, or an unreasonable application of Supreme Court precedent.   The Supreme Court established a standard for Fifth Amendment "voluntariness" in Colorado v. Springs, 479 U.S. 564 (1987):

A statement is not "compelled" within the meaning of the Fifth Amendment if an individual "voluntarily, knowingly and intelligently" waives his constitutional privilege. *Miranda v. Arizona*, 384 U.S. at 444, 86 S. Ct., at 1612. The inquiry whether a waiver is coerced "has two distinct dimensions." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed. 2d 410 (1986):

> "First *the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.* Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation'  reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Ibid*. (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979)).

There is no doubt that Spring's decision to waive his Fifth Amendment privilege was voluntary. He alleges no "coercion of a confession by physical violence or other deliberate means calculated to break [his] will," *Oregon v. Elstad*, 470 U.S. 298, 312, 105 S. Ct. 1285, 1295, 84 L. Ed. 2d 222 (1985), and the trial court found none. His allegation that the police failed to

> supply him with certain information does not relate to any of the
> traditional indicia of coercion: "the duration and conditions of
> detention ..., the manifest attitude of the police toward him, his
> physical and mental state, the diverse pressures which sap or
> sustain his powers of resistance and self-control." *Culombe v.
> Connecticut*, 367 U.S. 568, 602, 81 S. Ct. 1860, 1879, 6 L. Ed.
> 2d 1037 (1961) (opinion of Frankfurter, J.). Absent evidence
> that Spring's "will [was] overborne and his capacity for self-
> determination critically impaired" because of coercive police
> conduct, *ibid.; see Colorado v. Connelly*, 479 U.S. 157, 163-
> 164, 107 S. Ct. 515, ___, 93 L. Ed. 2d 473 (1986), his waiver of
> his Fifth Amendment privilege was voluntary under this Court's
> decision in *Miranda*.

*Spring*, 479 U.S. at 573-74 (emphasis added).

Williams testified on direct and cross examination that he did not feel that he was

coerced into making his statement.  (Tab R 8, p. 267, lines 23-25, p. 268, line 1; p. 279, lines

9-10).  Thus, the Petitioner's own testimony does not support the only factual assertion raised

concerning the voluntariness of his statement.[43]   The state court's finding that such an

inducement did not occur is entitled to a presumption of correctness unless the Petitioner can

prove otherwise by clear and convincing evidence.  *See* 18 U.S.C. §§ 2254(d) and (e).  This

he failed to do.  Therefore, the Alabama Court of Criminal Appeals' decision is not contrary

to Supreme Court law.  Consequently, the Petitioner is not due any relief.

---

[43] The inducement claim is the only claim actually pled by the Petitioner and considered
by the court concerning Petitioner's statements.

**CLAIM XIX. THE TRIAL COURT VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS BY CHARGING THE JURY REGARDING AN AGGRAVATING CIRCUMSTANCE NOT INDICTED**

Williams argues that the trial court violated his Fifth, Sixth, Eighth and Fourteenth Amendment constitutional rights by erroneously instructing the jury regarding aggravating circumstances. Specifically, Petitioner states that the trial court confused the jury by including in its charge the aggravating circumstances of robbery, burglary and kidnaping, when only rape should have been included. (Doc. 5, p. 100). Petitioner asserted virtually this same claim on direct appeal. (Tab R. 28, p. 67).

Respondent asserts that this claim is procedurally defaulted from this court's review for several reasons: (1) Williams did not fairly present it as a federal claim in state court; (2) dismissal to allow Williams to raise the claim would be futile because the claim would be barred by the state's ban on successive petitions and statute of limitations ( Rules 32.2(b) and (c)); and (3) it could have been, but was not, raised at trial and on appeal (Rules 23.2(a)(3) and(5)). In the alternative, Respondent argues that if this court finds the claim is exhausted, then the Alabama Court of Criminal Appeals addressed the claim on the merits, and Williams cannot show that the denial of the claim on the merits is contrary to, or an unreasonable application of federal law, or an unreasonable determination of the facts in light of the evidence. (Doc. 14, pp. 98-99).

Prior to seeking relief in federal court from a state court conviction and sentence, a habeas Petitioner is first required to present his federal claims to the state court by exhausting

all of the state's available procedures.  The purpose of this requirement is to ensure that state courts are afforded the first opportunity to correct federal questions affecting the validity of state court convictions.  *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).  If a federal claim has not first been exhausted in state court, this court may also find that it is "procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile."  *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (citing *Picard v. Connor,* 404 U.S. 270, 276 (1971)) and *Snowden v. Singletary*, 135 F.3d 732, 737(11th Cir. 1998)).

The court finds that Williams did not present this claim as a *federal* claim in state court.  Therefore, this claim is procedurally defaulted from federal review and dismissal to allow exhaustion of this claim would be futile because of the ban on successive petitions and the statute of limitations.  Rules 32.2(b) and (c), Ala. R. Crim. P.

Alternatively, the court finds that this claim is without merit. During the penalty phase, the trial court instructed the jury:

> The law provides a list of circumstances that may be considered by the jury as aggravating. In this case, the State relies on one aggravating circumstance. Before a jury could find an aggravating circumstance exists, you, the jury, must find beyond a reasonable doubt that aggravating circumstance does exist. The aggravating circumstance that is relied upon by the State in this case is the following: *That the capital offense was committed while the defendant was engaged in the commission of or attempt to commit rape, robbery, burglary, or kidnapping.* You may not consider in your deliberations any other aggravating circumstance other than the one that I have just read to you. The fact you have heretofore found the defendant guilty beyond a reasonable doubt of the capital offense of intentional murder during rape in the first degree establishes for the purpose of this hearing the existence beyond a reasonable

doubt of the aggravating circumstance relied upon by the State. Because the circumstance that the State relies on for aggravation, *is the capital offense was committed while the defendant was engaged in the commission of or attempt to commit rape*. By your verdict yesterday, you have found beyond a reasonable doubt that that aggravating circumstance does exist. *So the State has proven beyond a reasonable doubt the existence of one aggravating circumstance, and that is the circumstance [it relies] on.*

(Tab R. 23, p. 584) (emphasis added).

Read in its entirety, the court instructed the jury first on the underlying statute that provides the authority to charge an aggravating circumstance. Second, the court explained to the jury that the aggravating circumstance of *rape* had already been found beyond a reasonable doubt. Most importantly, the trial court explained to the jury that the *only* aggravating circumstance on which the State relied was *rape*.

Much this same issue was discussed at Claim XIV. There, Petitioner complained that the prosecutor presented improper arguments regarding the aggravating factors in his opening arguments in the sentencing phase. This court concluded that the trial court properly charged the jury regarding the aggravating factor of rape, which was charged in the indictment and found by the jury beyond a reasonable doubt. The same is true here. Even if not procedurally defaulted, this claim is due to be denied as without merit.

**CLAIM XX. THE TRIAL COURT VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS BY GIVING THE JURY AN IMPROPER INSTRUCTION ON THE MEANING OF "REASONABLE DOUBT"**

Next, Petitioner contends that his due process rights were violated because the trial court erroneously instructed the jury on the definition of reasonable doubt. Williams argues

that the trial court used improper phrases such as "to a mathematical certainty" and "beyond a shadow of a doubt," violating the Supreme Court precedent in *Cage v. Louisiana*, 498 U.S. 39 (1990).  (Doc. 5, p. 105).  Petitioner raised this claim for the first time in his second amended Rule 32 petition.  (Tab R. 40, p. 187).  Affirming the Rule 32 court's holding, the Alabama Court of Criminal Appeals held that this claim was procedurally barred from review because it could have been, but was not, raised at trial or on direct appeal.  (Tab R. 59, p. 219; Tab R. 60, p. 17).

Respondent contends that this claim is procedurally defaulted because it was not raised on direct appeal.  (Doc. 14, p. 99).  This court agrees.  Petitioner erroneously asserts that this issue was raised at trial (Tab R.3, p. 534) and on direct appeal (Tab. R. 5, pp. 66-67). However, these references do not relate to a challenge of the trial court's improper reasonable doubt jury instruction.  The trial citation is a discussion with the trial judge when trial counsel considered objecting to the jury instructions regarding rape.  The direct appeal citation refers to Claims XV and XVI, that the jury was improperly charged regarding manslaughter, voluntary intoxication and aggravating circumstances.

This claim is procedurally barred from federal review, because it could have been, but was not, raised at trial or on direct appeal, pursuant to Rule 32.2(a)(3) and (5) of the Alabama Rules of Criminal Procedure.  Rules 32.2(a)(3) and (5) are independent and adequate state law grounds.

Williams contends this court should consider as "cause and prejudice" to excuse the

procedural default  "the ineffective assistance of counsel claims to which they were linked

at the Rule 32 stage." (Doc. 21, p. 29).[44]   This general reference to the Rule 32 brief

"patently fails to comply with Rule 2(c)." *Phillips v. Dormire*, 2006 WL 744387 at *1 (E.D.

Mo. March 20, 2006) (citing *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990)).

Alternatively, this claim is without merit.   The trial court instructed the jury regarding

reasonable doubt as follows:

> When the defendant comes before you ladies and gentlemen of the jury on a plea of not guilty, the defendant is presumed to be innocent.  That presumption follows the defendant throughout the proceedings; and as I have told you before, it is a fact that must be weighed along with all the other evidence in the case.  In this case, the burden of proving that the defendant is guilty as charged rests upon the State of Alabama.  Before a conviction can be had in this case, the State must satisfy each and every juror in this case that the defendant is guilty beyond a reasonable doubt.
>
> If the State fails to satisfy the Jury that the defendant is guilty beyond a reasonable doubt, then the defendant is entitled to an acquittal or verdict of not guilty.
>
> You have heard beyond a reasonable doubt a lot of times in this trial.  It is one of those phrases that everybody probably has some idea in their own mind about what it means.  It is also a phrase that sometime the more you attempt to explain what it means, it gets even worse.  It gets even fuzzier. . . . The Law says I need to make an effort to explain to you what the phrase "beyond a reasonable doubt" means.  It may help you to say the doubt which would justify an acquittal, that is a verdict of not guilty – it must be an actual

---

[44] The court acknowledges the Supreme Court's recent holding in *Martinez*, 2012 WL 912950 at *8 that "counsel's ineffectiveness in an initial-review collateral proceeding qualifies as cause for a procedural default." That narrow rule only applies to provide cause to overcome procedural default in the instance where a petitioner did not raise an ineffective assistance of counsel claim at the fault of post-conviction counsel. The new *Martinez* rule does not apply to overcome procedural default for claims other than ineffective assistance of counsel claims.

doubt and not a mere guess or surmise.  It is not a forced doubt or hypocritical or nitpicking doubt.  The reasonable doubt which would entitle an accused to an acquittal is not some fanciful, vague, conjectural or speculative doubt. It is a doubt which arises from all or part of the evidence, or from a lack of evidence; or it can arise from contradictory evidence. It is a doubt which remains after a careful consideration of the testimony. It is a doubt such as reasonable and fair minded people would entertain under the circumstances. You will observe the State is not required to convince you of the defendant's guilt beyond all doubt. **Or they are not required to convince you of the defendant's guilt to a mathematical certainty. Or they are not required to convince you of the defendant's guilt beyond a shadow of a doubt, as you sometimes here people say.** They are required to convince you of the defendant's guilt beyond a reasonable doubt.

The defendant is entitled to the inferences in the evidence that may be drawn in his favor. Where two inferences may be drawn from the same fact, one being consistent with innocence, one with guilt, the defendant is entitled to the inference of innocence.  The State must prove each and every element of the offense charged beyond a reasonable doubt before you could find the defendant guilty.

(Tab R.13, pp. 520-22 ).

Williams argues that reference to "mathematical certainty" and "beyond a shadow of a doubt" invoked "constitutionally infirmed standard[s]." (Doc. 5, p. 105).  Williams likens the instruction given in the instant case to that at issue in *Cage,* and argues that his conviction should also be reversed.

In *Cage v. Louisiana*, the constitutional concern was equating "reasonable doubt" with a "substantial" doubt creating "grave uncertainty" as to the guilt of the accused.  498 U.S. 39, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990).  Later in *Victor v. Nebraska*, the Supreme Court found nothing wrong with defining "reasonable doubt" in terms of "actual and substantial doubt" when those terms relate to the *existence*, rather than the *quantum,* of doubt.  511 U.S.

1 (1994).

Unlike *Cage*, and even *Victor*, the instruction in this case emphasized the high level of certainty jurors must possess for the state's evidence to meet the reasonable doubt standard of proof.  Rather than undermining the reasonable doubt standard by suggesting that the doubt must be "substantial," or create a "grave uncertainty," the contested instruction  taken as a whole focused the jury's attention on the high level of certainty required before the State's evidence can be said to be sufficient for a conviction.  The court finds no error in the court's definitions of the reasonable doubt standard.  This claim is without merit.

**CLAIM XXI.  PETITIONER'S RIGHT TO A FAIR AND IMPARTIAL JURY WAS VIOLATED BY JURORS' FAILURE TO TRUTHFULLY DISCLOSE ON VOIR DIRE AND A JUROR'S CONSIDERATION OF EXTRANEOUS EVIDENCE DURING DELIBERATIONS**

In his amended habeas petition, Williams contends that his right to a fair and impartial jury was violated because 1) unnamed jurors failed to truthfully respond to multiple questions during voir dire, and 2) jury foreperson A.J. consulted with clergy during the trial.  (Doc. 5, pp. 106-107).  Williams presented the same claim in his second amended Rule 32 petition. (Tab R. 40, pp. 197-99).

**XXI.A.       Juror failing to respond truthfully to *voir dire***

In his amended habeas petition and second amended Rule 32 petition, the only statement of facts regarding this claim was "several jurors' failure to respond truthfully to multiple questions on voir dire."  (Tab R. 40, pp. 197-198).

Respondent contends that this claim is procedurally defaulted because (1) it was

abandoned on appeal from the denial of the Rule 32 petition; (2) it could have been, but was

not, raised at trial or on direct appeal; and (3) it was insufficiently pled in state court,

pursuant to Rules 32.3 and 32.6(b), which are independent and adequate state law grounds.

(Doc. 14, pp. 100-101).

> Regarding jurors failing to respond truthfully, the Rule 32 court wrote:

> The Alabama Supreme Court and the Alabama Court of Criminal Appeals
> have specifically held that postconviction allegations of juror misconduct are
> subject to the procedural bars of Rule 32.2(a), Ala.R.Crim.P. *See DeBruce v.
> State*, 99-1619, 2003 WL 22846752, at *4 (Ala. Crim. App. Dec. 2, 2003)
> (holding that a Rule 32 petitioner "must show that the claim [of juror
> misconduct] is not subject to the procedural default grounds contained in Rule
> 32.2(a)(3) and (a)(5), Ala.R.Crim.P."); *see also Ex parte Pierce*, 851 So. 2d
> 606 (Ala. 2000); *Ex parte Dobyne*, 805 So. 2d 763 (Ala. 2001).  Williams fails
> to identify in his original pleading, in his first amended petition, or in his
> second amended petition a single specific juror by name.  Williams also fails
> to identify in Part III of his second amended petition a single question these
> unnamed jurors failed to truthfully answer.  Paragraphs 21-22 in Part III of
> Williams' second amended petition contains no facts that, if true, would
> establish that the allegations of juror misconduct could not have been raised
> at trial or on direct appeal.  The court finds that these allegations in Part III of
> Williams' second amended Rule 32 petition are procedurally barred from
> postconviction review because they could have been but were not raised at trial
> and because they could have been but were not raised on appeal; therefore,
> they are summarily dismissed. Rules 32.2(a)(3) and (a)(5), Ala.R.Crim.P. The
> Court further finds that these allegations of juror misconduct . . . completely
> fail to meet the specificity and full factual pleading requirements of Rule
> 32.6(b), Ala.R.Crim.P.

(Tab R. 59, p. 227).  The Alabama Court of Criminal Appeals affirmed the Rule 32 court's

holding. (Tab R. 60, p. 17).  The Alabama Supreme Court denied *certiorari* review. (Tab R.

61).

> As a matter of federal law, federal courts will not consider or grant habeas relief

regarding claims procedurally defaulted under "independent and adequate" state procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-86 (1977); *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006). Therefore, this court must determine whether the state's procedural rule qualifies as "independent" and "adequate" state law grounds. The Eleventh Circuit has adopted a three-part test to determine if a state court ruling was based on adequate and independent grounds. *See Judd*, 250 F.3d at 1313. First, "the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim." *Judd*, 250 F.3d at 1313. Second, "the state court's decision must rest entirely on state law grounds and not be intertwined with an interpretation of federal law." *Ward*, 592 F.3d at 1156-57 (citing *Judd*, 250 F.3d at 1313). Third, the state procedural rule must be adequate; that is, "firmly established and regularly followed" and not applied "in an arbitrary or unprecedented fashion." *Judd*, 250 F.3d at 1313 (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984)).

The Rule 32 court below clearly stated that it was relying on procedural rules, citing Rules 32.2(a)(3) and (a)(5), as well as Rule 32.6(b). (Tab R. 59, pp. 226-27). As has been discussed numerous times throughout this opinion, relying on Rule 32.6(b) constitutes a decision on the merits and does not prompt procedural default. The first requirement of the *Judd* test is that not only must the state court have explicitly stated that it was relying on state procedural rules, but it must also have done so without reaching the merits of the claim. See *Judd*, 250 F.3d at 1313. This court finds that the Rule 32 court did, in fact, attempt to reach

190

the merits of William's claim, despite its reliance on Rules 32.2(a)(3) and (5). After stating that William's claim was subject to the procedural bars of Rule 32, it went on to address the merits of William's claim, stating that "Williams fails to identify. . .a single specific juror by name. Williams also fails to identify. . .a single question these unnamed jurors failed to truthfully answer." (Tab R. 59, p. 226). This brief analysis prevents this claim from being procedurally defaulted.

Furthermore, this court questions whether application of Rules 32.2(a)(3) and (5) limitations on collateral relief were firmly established and regularly followed at the time of Petitioner's trial and subsequent proceedings. A rule is not "firmly established" if it is novel, or one that cannot be gleaned from existing law. "Novel procedural requirements or those of whose existence the defendant could not reasonably be deemed to have been apprised, cannot be permitted to thwart review of cases seeking vindication in state courts of federal constitutional rights." *Hansbrough v. Latta*, 11 F.3d 143, 146 (11th Cir. 1994). As noted above, to have a preclusive effect in federal habeas proceedings, the state's procedural requirement must be one that a criminal defendant reasonably could know about, and, more importantly, comply with in having his claim considered.

In this case, that means that it must have been reasonably possible for Petitioner to know in 1999 that he had to present his juror-misconduct claim at trial, or on direct appeal, to comply with Rule 32.2(a)(3) and (5). While the substance of Rule 32.2(a)(3) and (5) predated Petitioner's trial (and provided as a general proposition that claims not presented

at trial and on direct appeal could not be considered in a post-conviction Rule 32 proceeding), these provisions were not *clearly* applied to the claims relating to jurors' failure to answer *voir dire* questions until 2000 — one year after Petitioner's trial. Alabama law did not become reasonably clear on that point until September 1, 2000, when the Alabama Supreme Court handed down its decision in *Ex parte Pierce*, 851 So. 2d 606 (Ala. 2000).

As the Alabama Court of Criminal Appeals subsequently stated:

The Alabama Supreme Court in *Ex parte Pierce*, 851 So. 2d 606 (Ala. 2000), recognized that a juror-misconduct claim may be procedurally barred in a Rule 32 petition. The Supreme Court stated: "Although Rule 32.1(e) [newly discovered evidence] does not preclude [the petitioner's] claim, Rule 32.2(a)(3) and (5) would preclude [the petitioner's] claim if it could have been raised at trial or on appeal." 851 So. 2d at 614.

*Jenkins v. State*, 972 So. 2de 165, 167 (Ala. Crim. App. 2005).

Indeed, all of the cases applying Rule 32.2(a)(3) and (5) preclusion grounds to claims that a juror failed to answer correctly during *voir dire* have been decided since 2000, even though the trials in these cases occurred much earlier. *See Ex parte Dobyne*, 805 So. 2d 763 (Ala. 2001); *Jenkins v. State*, 972 So. 2d 165 (Ala. Crim. App. 2005); *Duncan v. State*, 925 So. 2d 245 (Ala. Crim. App. 2005); *McGahee v. State*, 885 So. 2d 191, 203 (Ala. Crim. App. 2003) *cert. denied*, 885 So. 2d 230 (Ala. 2004).

Further, in each of these instances, unlike the present case, the petitioner was afforded the opportunity to try to prove by a preponderance of the evidence that it was not reasonably possible to assert the claim at trial and on appeal because the underlying facts — *i.e.*, the falsity of the juror's answers — could not be discovered sooner. In the present case,

however, the Rule 32 court *denied* Petitioner's second amended Rule 32 petition without allowing him an evidentiary hearing.

In any event, this court finds that this claim is *not* procedurally defaulted, and will address whether the Rule 32 court's decision was contrary to clearly established federal law.

First,  a petitioner must provide substantial evidence to meet his burden of proof to show why federal post-conviction relief should be awarded. *Douglas v. Wainwright*, 714 F.2d 1532, *reh'g denied*, 719 F.2d 406 (11th Cir. 1983), vacated on other grounds, 468 U.S. 1206 (1984) and 468 U.S. 1212 (1984), on remand 739 F.2d 531 (11th Cir. 1984). That burden is to demonstrate at least *prima facie* evidence establishing the alleged constitutional violation. The mere assertion of a ground for relief, without more factual detail, does not satisfy a petitioner's burden of proof or the requirements of 28 U.S.C. § 2254(e)(2) and Rule 2(c), Rules Governing § 2254 Cases. Williams has pled at best only bare bones facts to support his claim.  Williams does not state which juror was untruthful, what questions were answered untruthfully, and how those answers so prejudiced him as to render his conviction and sentence fundamentally unfair.

Secondly, although criminal defendants certainly have a federal constitutional right to a fair and impartial jury, including the right to receive truthful and complete *voir dire* answers from prospective jurors, the fact that a juror may fail to fully answer a *voir dire* question does not result automatically in a new trial. The United States Supreme Court established the standards to be used in analyzing such a case in *McDonough Power*

*Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984). The Court held:

> to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*Id.* at 556.

As further elaborated by the Eleventh Circuit, the second prong of this test requires a showing of "actual bias" on the part of the juror. The Court of Appeals explained:

> We now turn to the second prong of the *McDonough* test: whether a correct response would have provided a valid basis for a challenge for cause. A party who seeks a new trial because of non-disclosure by a juror during voir dire must show actual bias. *United States v. Tutt*, 704 F.2d 1567, 1569 (11th Cir.), cert. denied, 464 U.S. 855, 104 S. Ct. 174, 78 L. Ed. 2d 156 (1983). Actual bias may be shown in two ways: "by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed." *United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir. 1976) (citations omitted).

*United States v. Perkins*, 748 F.2d 1519, 1532 (11th Cir. 1984).

Even assuming, therefore, that Petitioner could prove that one juror failed to answer a question truthfully, he would still be required to establish that the juror demonstrated an express admission of bias, or "such a close connection to the circumstances at hand that bias must be presumed." *See Perkins*, 748 F.2d at 1532. Because Petitioner has not shown that he was deprived of his right to an impartial jury, his claim that jurors failed to truthfully answer *voir dire* questions is meritless. This claim is due to be denied.

### XXI.B.        Jury foreperson A.J. consulted outside clergy

In the amended habeas petition and the second amended Rule 32 petition, the only statement of facts regarding this claim was the following: "Additionally, the introduction of extraneous information in the deliberations in this case violated Mr. Williams' rights to due process and a fair trial . . . .  For example, A.J. consulted clergy during the trial to discuss his feelings about crime and punishment in general and specifically in relation to murder." (Tab R. 40, pp. 198-99).

Regarding jury foreperson A.J. consulting outside clergy, the Rule 32 court wrote:

> Williams' only support for this allegation is his one-sentence assertion in paragraph 23 that Juror A.J. "consulted clergy during the trial to discuss his feelings about crime and punishment in general and specifically in relation to murder." (Second amended petition at p. 14) This is Williams' entire argument to the Court.

> In Ex parte Dobyne, 805 So. 2d 763, 767-768 (Ala. 2001), the Alabama Supreme Court reaffirmed its holding in Ex parte Pierce, 851 So. 2d 606 (Ala. 2000), regarding the pleading requirements of a postconviction juror misconduct claim.  In Ex parte Pierce, the Supreme Court held that while a claim of juror misconduct brought under Rule 32.1(a), Ala.R.Crim.P., does not have to meet the requirements of newly discovered evidence under Rule 32.1(e), Ala.R.Crim.P., a petitioner does have to establish that "his claim [of juror misconduct] could not have been raised at trial or on direct appeal." Ex parte Pierce, 851 So. 2d at 614.  The Alabama Supreme Court specifically held in Pierce that "Rule 32.2(a)(3) and (5) would preclude Pierce's claim [of juror misconduct] if it could have been raised at trial or on appeal." Id.

> In Ex parte Pierce, the Alabama Supreme Court found that the basis of Pierce's claim of juror misconduct was discovered during postconviction interviews with jurors.  The Supreme Court held that:

>> Pierce's claim was cognizable as long as he established that the information was not known, and could not reasonably have been

195

> discovered, at trial or in time to raise the issue in a motion for
> new trial or on appeal.

Ex parte Pierce, 851 So. 2d at 616.  Williams did not identify Juror A.J., or any other juror, in his original pleading or in his first amended Rule 32 petition. Williams fails to state in any of his postconviction pleadings the source of his information supporting his allegation of juror misconduct against Juror A.J. Williams also does not state in his second amended petition when this instance of alleged juror misconduct was actually discovered.  Williams further fails to proffer any facts to the Court that, if true, would establish that this allegation could not have reasonably been discovered at trial or in time to raise the issue in a motion for a new trial or on direct appeal.  See Apicella v. State, 809 So. 2d 841, 850-851 (Ala.Crim.App. 2000) (capital defendant alleged in his motion for a new trial that, prior to deliberations, a juror talked to an attorney friend about the case).  There is nothing in the record indicating that the trial court prevented Williams' trial counsel from interviewing members of the jury after his trial.  In making this finding, the Court is in no way holding that a defense attorney, whether defending a capital or non-capital defendant, has any duty to conduct post-trial interviews with jurors in order to be effective.  The jury returned its sentencing recommendation on February 25, 1999.  The trial court sentenced Williams to death almost six weeks later on April 6, 1999. Trial counsel then had 30 days from the pronouncement of sentence to file a motion for new trial in which Williams' counsel could have included allegations of juror misconduct.  Williams fails to plead any facts in his second amended petition that, if true, would establish the allegation of juror misconduct against Juror A.J. is not procedurally barred.  See Boyd v. State, 746 So. 2d 346, 406 (Ala. Crim. App. 1999) (holding that "Rule 32.6(b) requires that the **petition** itself disclose **facts** relied upon in the seeking relief") (emphasis in original); see also Ex parte Clisby, 501 So. 2d 483, 488 (Ala. 1986)(holding that the summary dismissal of a death row inmate's postconviction petition was proper because the petition "[was] not sufficient on its face to enable the trial court to determine whether the petitioner is entitled to any relief")[.]  Therefore, this allegation is summarily dismissed. Rules 32.2(a)(3) and (5), Ala .R. Crim. P.

(Tab R. 59, pp. 227-229) (footnote omitted). The Alabama Court of Criminal Appeals

affirmed the finding that this claim was barred from consideration by Rule 32.2(a)(3) and (5).

 (Tab R. 60, p.17).  The Alabama Supreme Court denied *certiorari* review. (Tab R. 61).

Respondent contends that this claim is procedurally defaulted under independent and adequate state law grounds, because it was not raised on direct appeal. (Tab R. 14, p. 102). However, just as this court previously discussed when it analyzed Claim XXI(A), that a petitioner must present a juror-misconduct claim at trial or on direct appeal to comply with Rule 32.2(a)(3) and (5) was not firmly established. Therefore, this court finds that this sub-claim has not been procedurally defaulted from federal review.

Even assuming no procedural default, Williams has failed miserably in providing substantial evidence to meet his burden of proof to show why federal post-conviction relief should be awarded. *See Douglas v. Wainwright*, 714 F.2d 1532, *reh'g denied*, 719 F.2d 406 (11th Cir. 1983), vacated on other grounds, 468 U.S. 1206 (1984) and 468 U.S. 1212 (1984), on remand 739 F.2d 531 (11th Cir. 1984). Williams has again pled only a bare bones allegation without any supporting evidence that is insufficient to support habeas relief.

Petitioner asserts as cause to overcome the procedural default ineffective assistance of appellate counsel. (Doc. 21, p. 25). However, the court found that claim to be without merit and, therefore, it cannot serve as cause for this defaulted claim. Without any evidentiary or documentary support, Williams also alleges that the factual predicate underlying this claim had not presented itself during trial and on appeal. (Doc. 21, p. 26). This mere assertion void of any factual support cannot serve as "cause and prejudice" to excuse the default.

In sum, Williams' claims of juror misconduct as grounds for habeas relief are

procedurally defaulted, and alternatively without merit.  This claim is due to be denied.

**CLAIM XXII.**        **THE STATE FAILED TO COMPLY WITH ITS DISCOVERY OBLIGATIONS UNDER *BRADY V. MARYLAND*.**

In claim XXII of his amended habeas petition, Williams contends that the State failed to comply with its discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).  In Brady, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87.  "Impeachment evidence, [] as well as exculpatory evidence, falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985).  Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id*. at 682.  Further, the *Brady* rule applies in situations "involv[ing] the discovery, after trial of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976).  The Court extended *Brady* to apply to evidence "known to police investigators and not to the prosecutor." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995).

Three components comprise a true *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  A petitioner satisfies the prejudice component if he can show a reasonable probability that his conviction

or sentence would have been different had the evidence been disclosed.  *Id.* at 296.

Williams asserted a *Brady* claim in his second amended Rule 32 petition.  (Tab R. 40, p. 14).  The entire claim is composed of only legal conclusions and is completely void of any factual basis to support a *Brady* claim.  (Tab R. 40, p. 15).  The amended habeas petition is virtually the same claim, with the exception that it contains some factual allegations asserted for the first time: that a statement and DNA evidence from Bothwell, a potential suspect, were not disclosed to trial counsel, in violation of *Brady.*  (Doc. 5, p. 108).  As stated earlier, this court must view the state court's disposition of the claim as it was presented to the state courts in the second amended Rule 32 petition—not as it is more fully fleshed out in the instant amended habeas petition.

The Rule 32 court concluded that this claim was precluded because it 1) failed to meet the specificity and full factual pleading requirement of Rule 32.6(b) because it failed to identify a "single item of exculpatory or impeachment evidence withheld or otherwise suppressed by the State;" and 2) because Williams failed to assert that his *Brady* claim was based on newly discovered evidence, it was procedurally barred because it could have been but was not raised at trial or on appeal, pursuant to 32.2(a)(3) and (a)(5).  (Tab R. 59 p. 230).  The Alabama Court of Criminal Appeals affirmed the procedural dismissal in the Rule 32 appeal.  (Tab R. 60 p. 21).  The Alabama Supreme Court denied *certiorari* review.

In its Answer, Respondent asserts that this claim is defaulted from this court's review because it was decided under Rule 32.6(b), Ala. R. Crim. P., which is an independent and

199

adequate state law grounds. (Doc. 14, p. 103). Further, the State contends that the new facts alleged in the amended habeas petition are precluded from this court's review because they were not first properly presented to the state courts. *Id*. (*citing Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Engle v. Issac*, 456 U.S. 107, 113-14, 117, 124-25 (1982)).

While the Rule 32 court's dismissal of Williams' claim based on Rule 32.6(b)'s pleading requirements will not provide a basis for procedural default, this court finds Williams' claim has been procedurally defaulted for his failure to raise this claim at trial or on direct appeal. This ruling by the Rule 32 court was based on independent and adequate state grounds, namely Rules 32.2(a)(3) and (a)(5) of the Alabama Rules of Criminal Procedure. (Tab R. 59, p. 230).

The court also finds that this claim is insufficiently pled under Rule 2 of the Rules Governing § 2254 Proceedings and can be summarily dismissed on that ground. Although Petitioner conclusorily alleges that the prosecution failed to reveal to him exculpatory evidence, the only evidence he identifies is barred from this court's review because it was not pled until the amended habeas petition. Even assuming the prosecutor withheld evidence regarding Bothwell's DNA, Williams does not explain *how* such evidence would have made a material difference in the outcome of the trial. Stated another way, no reasonable probability arises that the evidence relating to Bothwell would have overcome the great weight of evidence presented at trial, or in any way reduce Williams' culpability in the crime. This claim is procedurally defaulted, and without merit; it is due to be dismissed.

**CLAIM XXIII.**     **THE CUMULATIVE EFFECT OF ALL THE ABOVE LISTED ERRORS ENTITLES PETITIONER TO HABEAS RELIEF**

Petitioner's final claim is that the cumulative effect of all of the errors alleged by him resulted in the denial of his constitutional rights. It cannot be true that, where none of the individual claims asserted amounts to a basis for habeas relief, the sum of them together can create a remedy.

In a somewhat different § 2241 habeas context, involving a federal prisoner's challenge to the United States Parole Commission's denial of parole, the Eleventh Circuit refused to consider the cumulative effect of multiple claims of error when none of the individual claims showed any error. *Shakur v. Wiley*, 156 Fed. Appx. 137 (11th Cir. 2005) (unpublished).  The court said, "Shakur also argues on appeal that his claims of error should be reviewed cumulatively in assessing whether the Commission abused its discretion. Because we find no error as to the individual claims, we do not address his argument as to cumulative effect."  Because § 2241 and § 2254 writs of habeas corpus provide the same remedy, see *Medberry v. Crosby*, 351 F.3d 1049 (11th Cir. 2003), *cert. denied*, 541 U.S. 1032 (2004); *Peoples v. Chatman*, 393 F.3d 1352 (11th Cir. 2004), this reasoning applies with equal weight to the instant action. To conclude that, while none of Petitioner's individual allegations of relief show any constitutionally prejudicial error, in combination they do, would be an incongruous finding.  The law does not support such a conclusion, and Petitioner has not pointed to any authority to justify such a determination.  This claim likewise is due to be denied.

Conclusion

Having now carefully reviewed the entire record, pleadings, briefs, and arguments presented, the court finds that Petitioner is not entitled to relief from his conviction or sentence.  Accordingly, by separate order, the court will deny the Petitioner's request for an evidentiary hearing, and deny his petition for habeas corpus.

DONE AND ORDERED this 12th day of April, 2012.


KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE